UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

National Presto Industries, Inc.,

                              Plaintiff,

                                                    Case No.   _____

v.

                                                    **COMPLAINT**

U.S. Merchants Financial Group, Inc., d/b/a/
Greenmade,

                              Defendant.

**PLAINTIFF NATIONAL PRESTO INDUSTRIES, INC. ORIGINAL COMPLAINT**

Plaintiff National Presto Industries, Inc. ("National Presto"), by and through its

undersigned counsel, and for its Complaint against Defendant U.S. Merchants Financial Group,

Inc., d/b/a Greenmade ("US Merchants") "Defendant," hereby alleges as follows:

**NATURE OF THE CASE**

1.      This is an action for: (I) federal trade dress infringement of the aesthetic

appearance of a product under 15 U.S.C. § 1125; (II) federal trade dress infringement of the

aesthetic appearance of a product at the point of sale under 15 U.S.C. § 1125; (III) federal trade

dress infringement of the aesthetic packaging of a product under 15 U.S.C. § 1125; (IV) federal

trademark infringement under 15 U.S.C. § 1125; (V) false designation of origin under 15 U.S.C.

§ 1125; (VI) federal copyright infringement under 17 U.S.C. § 501(a); (VII) tortious interference

with prospective business relations; (VIII) federal unfair competition under 15 U.S.C. § 1125;

(IX) common law unfair competition under Minnesota common law Minn. Stat. § 325D.44;

(X) deceptive trade practices under Minnesota Uniform Deceptive Trade Practice Act; and (XI)

Unfair Trade Practices under Minn. Stat. § 325D.13.

1

2.     This action is based on Defendant's willful, knowing, persistent, and unauthorized conduct by first adopting a confusingly similar product appearance, utilizing a confusingly similar trademark in connection with the sale of this product, and then misappropriating the advertising presentation employed by National Presto, including through incorporating National Presto's copyrighted material and its unique packing.

## THE PARTIES

3.     Plaintiff National Presto is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business at 3925 N. Hastings Way, Eau Claire, Wisconsin  54703. National Presto's principal place of business is located less than one hundred (100) miles from the District Court in which this matter is filed.

4.     Upon information and belief, Defendant US Merchants is a corporation organized and existing under the laws of the State of California, with its principal place of business at 8737 Wilshire Boulevard, Beverly Hills, California  90211. Upon information and belief, Defendant US Merchants does business under the name Greenmade in connection with the acts complained of herein.

## JURISDICTION AND VENUE

5.     The claims for federal trade dress infringement, trademark infringement, and federal unfair competition asserted in Counts I, II, III, IV, VIII have jurisdiction in this Court pursuant to 15 U.S.C. § 1121. For copyright infringement (Count VI), this Court has jurisdiction pursuant to 28 U.S.C. § 1338.

6.     The claims for common law tortious interference with prospective business relations (Count VII), unfair competition (Count IX), deceptive trade practices under Minnesota law (Count X), and unfair trade practices under Minnesota law (Count XI) are so related to the federal claims asserted in Counts I-VI and VIII, that they form part of the same case or

2

controversy. Therefore, this Court has subject matter jurisdiction over Counts VII, IX-XI pursuant to 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendant pursuant to Minn. Stat. § 543.19(c), because Defendant solicits business within the State of Minnesota (including this judicial district), including, but not limited to, through the use, advertising, marketing, promoting, distribution, offering for sale, and/or sale of products that infringe on the HEATDISH® trade dress and trademark and National Presto's copyrighted material.

8.      Generally, venue is proper in this judicial district because acts of infringement have occurred in this district. Specifically the infringing product is marketed and sold in this district. Venue is proper in this judicial district as to Defendant in Counts I-V and as to Counts VII-XI, pursuant to 28 U.S.C. § 1391(b)(3) because the claims alleged in the Complaint arose, in part, in this district and because this Court has personal jurisdiction over Defendant in this district. Venue is proper in this judicial district as to Defendant in Count VI, pursuant to 28 U.S.C. § 1400(a) because Defendant may be found in this district.

**FACTS RELEVANT TO THE DISPUTE**

9.      National Presto has been selling a unique and distinctive parabolic electric heater for over thirty (30) years in Costco Wholesale Corporation (including Costco Wholesale Warehouses and Costco Business Centers collectively referred to as "Costco"), including in Costco's predecessor Price Club throughout the United States, and has been using the HEATDISH® trademark to identify the source of its parabolic electric heater since its introduction.

10.      Sales of the HEATDISH® have been tremendously successful over the years with National Presto establishing itself as the source of the unique parabolic electric heater. However,

in 2018, in spite of its success, the HEATDISH® was not purchased for resale by Costco in the Costco Business Centers for the 2018-2019 heater season.

11.     Upon information and belief, US Merchants has been selling a nearly identical appearing parabolic electric heater, called the HEAT MACHINE, which replaced the HEATDISH® in at least Costco Business Centers.

12.     Upon information and belief, Costco Business Centers have eighteen locations throughout the country, including in Minnesota.

13.     National Presto, through its extensive promotion and sale of its parabolic electric heater, has successfully established intellectual property rights in the HEATDISH®, including its ornamental appearance, and the trademarks under which it is sold.

14.     The basic design of National Presto's parabolic electric heater has been in use for over thirty (30) years with the design going through minor refreshes over the years.

15.     National Presto has also been successful in trademarking the HEATDISH® name and has obtained two federal trademark registrations issued by the U.S. Patent and Trademark Office for its use in connection with space heaters. *See* TM 87607839 and TM 73791627. (Exs. A-B.)

16.     The appearance of the HEATDISH® product itself is also recognized by consumers as emanating from a single source.

17.     The HEATDISH® and the HEAT MACHINE products are both parabolic electric heaters with nearly identical ornamental appearances that are advertised and packaged in a virtually identical manner in the same retail stores.

18.     The appearance of the HEATDISH® is unique and distinctive and, as shown below, comprises a dish, a grill, a circular center portion from which bars of the grill extend to an

4

outer circumference of the grill, an inner side of the dish having a metal appearance and finish, an electric heating element, and a base. The grill has a specific curvature with the bars spaced apart to create horizontal and vertical openings having a distinctive size and spacing. The heating element is located in the center of this parabola. The center circular portion of the parabolic electric heater has a flat face with an emblem disposed thereon that includes a red and black background and white font with color behind the lettering uniquely styled to depict a parabola. The reflective backing on inner side of the dish is configured to emanate a distinctive orange glow, which fills up the inner side of the parabolic electric heater and conveys an impression of warmth.

19.     The HEAT MACHINE bears a nearly identical design to the HEATDISH® as shown below. The HEAT MACHINE is a parabolic electric heater and comprises a dish, a grill, a circular center portion from which bars of the grill extend to an outer circumference of the grill, an inner side of the dish having a metal appearance and finish, an electric heating element, and a base. The grill has a specific curvature with the bars spaced apart to create horizontal and vertical openings having a distinctive size and shape. The heating element is located in the center of this parabola. The center circular portion of the parabolic electric heater has a flat face with an emblem disposed thereon that includes a red and black background and white font with color behind the lettering uniquely styled to depict a parabola. The reflective backing on inner side of the dish configured to emanate a distinctive orange glow, which fills up the inner side of the parabolic electric heater and conveys an impression of warmth.

20.     As shown below in the side by side comparison of the HEATDISH® and HEAT MACHINE products, they have a virtually identical appearance in both the on and off settings.

5



HEATDISH® On/Off          HEAT MACHINE On/Off

21.     National Presto has been uniquely displaying its HEATDISH® in Costco stores for over thirty (30) years. This unique point of sale display comprises a HEATDISH® positioned on a ramp, such as a faux wood ramp, which is angled forward prominently emphasizing the appearance of the HEATDISH®, which is on the highest setting to attract consumers walking by, who feel the heat, to look up and see the unique look of an orange parabolic dish (e.g. the glow). Surrounding the display are stand up advertisements highlighting the unique features of the HEATDISH®. As shown below, this display is prominently featured adjacent to the HEATDISH® parabolic electric heaters and encompasses the space around them.



22.      As shown below, US Merchants also displays the HEAT MACHINE product in a nearly identical fashion to the National Presto HEATDISH® in Costco. Its point of sale display comprises a HEAT MACHINE positioned on a wood-like display, which is angled forward emphasizing the appearance of the HEAT MACHINE, which when energized on the highest setting attracts consumers walking by, who feel the heat, to look up and see the orange parabolic dish (e.g. the glow). Advertisements highlighting the features of the HEAT MACHINE appear adjacent to the display.



23.      National Presto utilizes packaging for the HEATDISH® that is unique and distinctive. US Merchants similarly utilizes a nearly identical packaging scheme as compared to that of the HEATDISH® when advertising the HEAT MACHINE.

24.     The top portion of the front side of the HEATDISH® packaging features the

HEATDISH® trademark on the left, with the "H" in upper case white letters and the remaining

"eat" of "Heat" in lower case white letters. The words "PARABOLIC ELECTRIC HEATER" in

upper case white letters are also located in the top portion of the front side of the packaging. A

photograph of the parabolic electric heater, with its orange glow, is prominently featured toward

the center-right of the packaging occupying approximately two-thirds of the front side of the

packaging. To the left of the parabolic electric heater, the front side of the packaging lists

features of the HEATDISH® in bullet point format. Further, the overall color scheme of the

packaging employs a red, white, and black appearance. See below for a photograph of the front

side of the HEATDISH® packaging.



25.     The top portion of the front side of the HEAT MACHINE packaging also features the word "Heat," with the "H" in upper case white letters and the remaining letters "eat" of "Heat" in lower case white letters. The words "PARABOLIC HEATER" in white letters are also located in the top portion of the front side of the packaging. A photograph of the parabolic electric heater, with its orange glow, is also prominently featured toward the center-right of the packaging occupying approximately two-thirds of the front side of the packaging. To the left of the parabolic electric heater, the front side of the packaging lists features of the product in bullet point format. Further, the overall color scheme of the packaging employs a red, white, and black appearance. See below for a photograph of the front side of the packaging for the HEAT MACHINE.



26.     The right side view of the HEATDISH® packaging features the trademark (HEATDISH®) on the top portion. Underneath the top portion includes a photograph of the parabolic electric heater with its orange glow and several features of the parabolic electric heater identified as its "advantages." One of the features on the box states that the parabolic electric heater "feels like three times the heat." See below for a photograph of the right side view of the HEATDISH® packaging.



27.     The right side view of the HEAT MACHINE packaging also features its mark ("HEAT MACHINE") on the top portion. Underneath the top portion, a photograph of the parabolic electric heater with its orange glow is included along with a listing of several features of the parabolic electric heater identified as its "advantages." Like the HEATDISH®, the HEAT

MACHINE also similarly states that the parabolic electric heater "feels like three times the heat." See below for a photograph of the right side view of the HEAT MACHINE packaging.



28.     The left side view of the HEATDISH® packaging features the trademark (HEATDISH®) on the top portion, together with the barcode for the product to the right of the trademark. Underneath the top portion are four (4) photographs of features of the product. For example, the photographs include the safety light and logo, the cord storage, and the adjustable temperature switch. See below for a photograph of the left side view of the HEATDISH® packaging.



29.     The left side view of the HEAT MACHINE packaging features the name ("HEAT MACHINE") on the top portion, together with the barcode for the product to the right of the name.   Underneath the top portion are four (4) photographs of features of the product. For example, the photographs include the safety light and logo, the cord storage, and the adjustable temperature switch. See below for a photograph of the left side view of the HEAT MACHINE packaging.



30.    Since its introduction, National Presto has been extremely successful selling its HEATDISH® parabolic electric heater. The HEATDISH® currently retails for $59.99. National Presto's considerable success in its sales is, in part, due to the high quality and uniqueness of the HEATDISH® as well as its point of sale trade dress.

31.    US Merchants sells the HEAT MACHINE in Costco. For example, the HEAT MACHINE currently retails in the Costco in Minneapolis, MN for $49.99.   It is upon information and belief that Defendant is knowingly selling this nearly identical product in a nearly identical advertising method in Costco.

32.    National Presto is already aware of instances of actual confusion as to the source or origin of the HEATDISH® and the HEAT MACHINE products.

33.     Moreover, the HEAT MACHINE product is of a lesser quality than the HEATDISH®. Generally, the HEAT MACHINE suffers from overall durability and performance issues.

34.     Through the extensive use, sale, promotion, and marketing of the HEATDISH® as well as the manner in which it has been promoted at point of sale, the appearance of the HEATDISH® has become uniquely associated in the minds of consumer with a high quality heater from single source thereby generating extensive good will in the product which inures to the benefit of National Presto.

35.     Because of the nearly identical appearance of the products, the advertising, and the channels of trade for which the products are sold, there is a high likelihood that all of the quality defects of the HEAT MACHINE will be inferred onto the National Presto HEATDISH®, thus tarnishing National Presto's brand and causing irreparable harm to the good will it has developed in its HEATDISH® product and mark.

**COUNT I – FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125 FOR THE AESTHETIC APPEARANCE OF THE PRODUCT**

36.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

37.     As discussed above, the HEATDISH® carries a unique appearance and National Presto has established itself in the eyes of consumers in the market as the sole source for parabolic electric heaters having this appearance. This has established a trade dress unique to the HEATDISH® for which Defendant sought to capitalize on by the introduction of the HEAT MACHINE.

38.     As described for example in Para. 18, National Presto has created a unique trade dress for its HEATDISH®. Specifically, the HEATDISH® comprises a dish, a grill, a circular

14

center portion from which bars of the grill extend to an outer circumference of the grill, an inner side of the dish having a metal appearance and finish, an electric heating element, and a base. The grill has a specific curvature with the bars spaced apart and creating horizontal and vertical openings spaced apart from one another by the bars. The heating element is located in the center of this parabola. The center circular portion of the parabolic electric heater has a flat face with an emblem disposed thereon that includes a red and black background and white font with an overall parabolic design reflected in the colored background behind the lettering. The reflective backing on inner side of the dish configured to emanate a distinctive orange glow that fills up the inner side of the parabolic electric heater and conveys an impression of warmth.

39.     The HEAT MACHINE manufactured and sold by US Merchants also utilizes the design implemented by the HEATDISH®. As described in Para. 19, the HEAT MACHINE is a parabolic electric heater that comprises a dish, a grill, a circular center portion from which bars of the grill extend to an outer circumference of the grill to an outer circumference of the circular center portion, an inner side of the dish having a metal appearance and finish, an electric heating element, and a base. The grill has a specific curvature with the bars spaced apart and creating horizontal and vertical openings spaced apart from one another by the bars. The heating element is located in the center of this parabola. The center circular portion of the parabolic electric heater has a flat face with an emblem disposed thereon that includes a red and black background and white font with an overall parabolic design reflected in the colored background behind the lettering. The reflective backing on inner side of the dish configured to emanate a distinctive orange glow that fills up the inner side of the parabolic electric heater and conveys an impression of warmth.

40.    The trade dress used by National Presto is non-functional. For example, the design is ornamental in that the shape, curvature, glow, the design of the grill, the curvature, configuration and relative spacing of the various components, and the logo are all non-functional design elements.

41.    National Presto has become known as the source for a parabolic electric heater having the above-described overall appearance. National Presto has enjoyed significant sales of this product, including to customers in Minnesota. As a result of this distinction, the HEATDISH® has achieved valuable goodwill and secondary meaning in its trade dress.

42.    Due to the significant similarities in the trade dress between the HEATDISH® and The HEAT MACHINE, there is a high likelihood that consumers will be confused and attribute the National Presto goodwill to US Merchants' HEAT MACHINE.

43.    Upon information and belief, with full knowledge of National Presto's ownership and use of the HEATDISH® trade dress, Defendant US Merchants copied and used the distinctive elements of the HEATDISH® trade dress on and in connection with its parabolic electric heater and named that product the HEAT MACHINE, and incorporates the distinctive glow to convey heat for which National Presto has become known.

44.    The HEATDISH® having this trade dress has been sold in Costco stores for at least thirty (30) years.

45.    Defendant US Merchants has been successful in having its HEAT MACHINE, which includes Plaintiff's unique and distinctive trade dress, replace the HEATDISH® product for sale in Costco.

16

46.     Numerous other parabolic electric heaters are manufactured and sold that have significantly different aesthetic appearances, while performing the same function, that do not create the customer confusion that the HEAT MACHINE has created since its introduction.

47.     Upon information and belief, US Merchants primarily sells the infringing products through Costco and at a lower price.

48.     Upon information and belief, the HEAT MACHINE is predominately sold at Costco, including in Minnesota.

49.     Upon information and belief, Defendant has relied on, and will continue to rely on National Presto's existing goodwill, consumer recognition, marketing, promotion, and advertising of the HEATDISH® so that Defendant can enhance the sales of its infringing products.

50.     The actions and conduct of Defendant complained of herein have damaged National Presto and will, unless restrained, further impair, if not destroy, the value of the HEATDISH® trade dress and the goodwill associated with them.

51.     Defendant's trade dress infringement has caused National Presto to sustain monetary damage, loss, and injury, in an amount to be determined at the time of trial.

52.     Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause National Presto to sustain irreparable damage, loss, and injury, for which National Presto has no adequate remedy at law.

**COUNT II – FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125 FOR THE AESTHETIC ADVERTISEMENT OF THE PRODUCT AT THE POINT OF SALE**

53.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

54.     As discussed above, the HEATDISH® carries a unique appearance and National Presto has established itself in the eyes of consumers in the market as the sole source for parabolic electric heaters having this appearance. Moreover, the display of the HEATDISH® at its point of sale also comprises a unique display for which Defendant sought to capitalize on by the introduction of the HEAT MACHINE product in Costco utilizing a nearly identical display.

55.     To advertise the unique glow and appearance of the product at Costco stores, National Presto utilizes a product display placed at an elevated level and slanted downward toward customers walking near the display. The base of the HEATDISH® display includes a faux hardwood floor that is angled upward such that the back of the display is higher than the front of the display so that the HEATDISH® is angled downward when placed on the upper surface of the faux hardwood floor. The HEATDISH® display is placed at an elevated level so that customers walking near the product can more easily see the uniqueness of the product and identify its source. The display also comprises stand up advertising adjacent to the product, which highlights some of the product's features.

56.     The HEAT MACHINE is displayed in a nearly identical manner as the HEATDISH®. Like the HEATDISH®, the HEAT MACHINE is also placed at an elevated level and slanted downward toward the customers walking near the display. The base of the HEAT MACHINE display also includes a faux hardwood floor that is angled upward toward the back of the display so that the HEAT MACHINE is angled downward when placed on the upper surface of the faux hardwood floor. The HEAT MACHINE, like the HEATDISH® is placed at the elevated level so that customers walking near the product can more easily see the product, causing confusion as to its source. The HEAT MACHINE again utilizes the trade dress from the

HEATDISH® display and features stand up advertising adjacent to the product, which highlights the product's features.

57.     In Costco stores, the National Presto point of sale display has become a prominent feature in the sale of the HEATDISH®. Consumers recognize the HEATDISH® display and associate the unique method of display with the HEATDISH®. National Presto has enjoyed significant sales of this product, including to customers in Minnesota. As a result of this distinction, the HEATDISH® product has achieved valuable goodwill and secondary meaning in its trade dress.

58.     Due to the significant similarities in the point of sale manner and display between the HEATDISH® product and the HEAT MACHINE product, there is a high likelihood that consumers will be confused as to the source of the respective products and designate the National Presto goodwill to the US Merchants' HEAT MACHINE.

59.     Upon information and belief, with full knowledge of National Presto's point of sale trade dress, Defendant US Merchants copied and used significant and material elements of this promotional trade dress on and in connection with its product display in connection with the promotion of a product having a virtually identical appearance sold under a confusingly similar name -- HEAT MACHINE.

60.     Retailer Costco sold the HEATDISH® in stores for at least thirty (30) years.

61.     As shown in Paras. 21 and 22, the HEAT MACHINE bears a confusingly similar point of sale display as the HEATDISH®.

62.     Upon information and belief, Defendant sells the infringing product through Costco, including in Minnesota.

63.     Defendant US Merchants has been selling the HEAT MACHINE through Costco with a confusingly similar point of sale display as the HEATDISH®.

64.     Upon information and belief, Defendant has relied on, and will continue to rely on National Presto's existing goodwill, consumer recognition, marketing, promotion, and advertising of the HEATDISH® so that Defendant can enhance the sales of its infringing products.

65.     The actions and conduct of Defendant complained of herein have damaged National Presto and will, unless restrained, further impair, if not destroy, the value of the HEATDISH® trade dress, rights in its distinctive promotional manner and display, and the goodwill associated with them.

66.     Defendant's trade dress infringement has caused National Presto to sustain monetary damage, loss, and injury, in an amount to be determined at the time of trial.

67.     Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause National Presto to sustain irreparable damage, loss, and injury, for which National Presto has no adequate remedy at law.

### COUNT III – FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125 FOR THE AESTHETIC PACKAGING OF THE PRODUCT

68.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

69.     National Presto in packaging the HEATDISH® as described in Paras. 24, 26, and 28 utilizes a unique appearance. Generally, the packaging features a red, white, and black color scheme with large figures of the parabolic electric heater at full orange glow. The packaging also prominently displays features of the product, such as its efficiency, safety features and other convenience features.

20

70.     US Merchants in packaging the HEAT MACHINE, as described in Paras. 25, 27, and 29 also employs the same unique appearance. The box utilizes a box with a red, white, and black color scheme featuring large photographs nearly identical to the National Presto HEATDISH®, parabolic electric heater at full orange glow. The packaging also contains features of the product, such as its efficiency, safety features and other convenience features.

71.     These similarities in the packaging of the products constitute trade dress infringement. The words used to describe the functions of the product have been copied directly from National Prestos packaging.

72.     The trade dress used by National Presto is non-functional. For example, the design of the packaging is solely the unique way for which National Presto has branded the product to be sold to consumers. There is no unique functional features to the packaging as the choices for colors and display of features solely is the ornamental design of the package.

73.     The HEATDISH® has become known for the distinct packaging for which its products are displayed at the point of sale displays in the stores. National Presto has enjoyed significant sales of this product, including to customers in Minnesota. As a result of this distinction, the packaging for the HEATDISH® has achieved valuable goodwill and secondary meaning.

74.     Due to the significant similarities in the packaging between the HEATDISH® and the HEAT MACHINE, there is a high likelihood that consumers will be confused and improperly designate the National Presto goodwill to US Merchants' HEAT MACHINE.

75.     National Presto received a HEATDISH® parabolic electric heater in HEAT MACHINE packaging from Retailer Costco as a returned item by a customer. The return label

lists HEATDISH®, together with the HEATDISH® product number and retail price, even though the packaging is a box for the HEAT MACHINE.

76.     Upon information and belief, with full knowledge of National Presto's ownership and use of the trade dress in the HEATDISH® advertising, Defendant US Merchants copied and used elements of the HEATDISH® trade dress on and in connection with its packaging and called that product the HEAT MACHINE.

77.     Upon information and belief, Defendant willfully sells the infringing product in confusingly similar packaging through Costco, including in Minnesota.

78.     Upon information and belief, Defendant has relied on, and will continue to rely on National Presto's existing goodwill, consumer recognition, marketing, promotion, and advertising of the HEATDISH® so that Defendant can enhance the sales of its infringing products.

79.     The actions and conduct of Defendant complained of herein have damaged National Presto and will, unless restrained, further impair, if not destroy, the value of the HEATDISH® trade dress in its packaging and the goodwill associated with them.

80.     Defendant's trade dress infringement of the packaging has caused National Presto to sustain monetary damage, loss, and injury, in an amount to be determined at the time of trial.

81.     Defendant's trade dress infringement of the packaging, unless enjoined by this Court, will continue to cause National Presto to sustain irreparable damage, loss, and injury, for which National Presto has no adequate remedy at law.

**COUNT IV – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125**

82.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

83.     As discussed above, Plaintiff is the owner of two separate federally registered trademarks for the HEATDISH®, in connection with its parabolic electric heaters. *See* TM 87607839 and TM 73791627. (Exs. A-B.)

84.     Because of Plaintiff's significant advertising and promotion, especially within Costco stores, the HEATDISH® name and mark have become favorably known to the public and those seeking to purchase parabolic electric heaters.

85.     Notwithstanding Plaintiff's prior, registered rights in the HEATDISH® name and mark, at some very recent time, subsequent to Plaintiff's first use and registration, Defendant began offering and promoting a confusingly similar parabolic electric heater in Costco under the name the HEAT MACHINE as discussed above, which is also causing consumer confusion.

86.     The nearly identical design of the HEATDISH® and the HEAT MACHINE has led to instances of actual confusion.

87.     National Presto received a HEATDISH® parabolic electric heater in HEAT MACHINE packaging from Retailer Costco as a returned item by a customer. The return label lists HEATDISH®, together with the HEATDISH® product number and retail price, even though the packaging is a box for the HEAT MACHINE.

88.     Moreover, receipts from Costco stores showing purchases of Defendant US Merchants' HEAT MACHINE list the HEATDISH® trademark as the item being sold. Using the HEATDISH® trademark on receipts for both the HEAT MACHINE and the HEATDISH® products clearly establishes actual confusion. For example, the below receipt on the left includes the purchase of the HEAT MACHINE product at a Costco store in Minnesota, but lists HEATDISH® trademark. The receipt below on the right is from a Costco store in Minnesota for the purchase of the HEATDISH® and also lists the HEATDISH® trademark.



Receipt from Costco store in Minneapolis,   Receipt from Costco store in St. Louis Park, MN for
    MN for one (1) HEAT MACHINE              one (1) HEATDISH®

89.    As shown above, the same name is used for both the HEATDISH® and the HEAT MACHINE, but list different product numbers. The receipt on the left is for the purchase of one HEAT MACHINE product, and are represented by the product number 1257172. The receipt on the right is for the HEATDISH® and bears the product number 2917078. However, both of the receipts list identify the product as National Presto's HEATDISH®.

90.    Upon information and belief, US Merchants had actual, if not constructive, knowledge of Plaintiff's prior and distinctive HEATDISH® product name, and registered HEATDISH® mark, and the extensive advertising and use thereof by Plaintiff, when US

Merchants chose and began using the virtually identical and confusingly similar brand name: HEAT MACHINE.

91.   Defendant's use of the brand name, HEAT MACHINE, in the manner alleged herein is likely to confuse or deceive the consumer into believing, contrary to the fact, that Defendant's heater is sponsored, licensed or otherwise approved by, or is in some way connected or affiliated with, Plaintiff.

92.   Defendant's trademark infringement has caused and, unless enjoined will continue to cause Plaintiff immediate and irreparable injury, in an amount to be determined at the time of trial, and for which it has no adequate remedy at law.

## COUNT V – FALSE DESIGNATION OF ORIGIN ON THE SALES RECEIPTS UNDER 15 U.S.C. § 1125

93.   Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

94.   Defendant US Merchants has engaged in a systematic pattern of utilizing the unique logo and display created by National Presto in connection with the advertising and sale of its virtually identical parabolic electric heater, HEAT MACHINE. From utilizing nearly an identical design, to using the same color in the emblems, the unique method in which the product is showcased, the identical copying of the instruction manuals (as discussed *infra*), and the nearly identical packaging (including similar color schemes), US Merchants' actions are likely to cause confusion, to cause mistake, or to deceive others as to the affiliation, connection, or association of US Merchants and National Presto, or as to the origin, sponsorship, or approval of commercial activities with US Merchant and National Presto. Such acts constitute a violation of 15 U.S.C. § 1125.

95.     At the time of purchase, the receipts for both the HEATDISH® and HEAT MACHINE products both list the name "Heat Dish." This is likely to confuse purchasers as to the potential affiliation, connection, or association of US Merchants and National Presto.

96.     Upon information and belief, such conduct is willful and intentional.

97.     Upon information and belief, such conduct of Defendant is ongoing and will continue to cause irreparable damage to National Presto, unless enjoined by the Court, whereby National Presto is without a full and adequate remedy at law.

### COUNT VI – COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

98.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

99.     Throughout National Presto's materials, including its instruction manuals and packaging, are numerous examples of National Presto's copyrights in and to these works. Each work is a valuable and unique work of art. National Presto has invested, and continues to invest, substantial sums of money, time, effort, and creative talent to make and produce these materials that accompany the HEATDISH®.

100.    National Presto's promotion in relation to its HEATDISH® have been prominently featured through its over thirty (30) year history of being sold at Costco stores and its predecessor stores.

101.    Specifically, National Presto has with great care created wording and phrasing in its instruction manuals that highlight the features of the parabolic electric heater and other verbiage describing how to properly utilize this product.

102.    National Presto's instruction manual provides instructions on how to position the heater. It states: "Point the front of the grille directly towards the area in which heat is desired . . . Place the heater at least three feet, but no more than ten feet, away. The parabolic design of the

26

reflector focuses heat at persons three to ten feet away. Thus, for your entire body to enjoy the heat produced by this heater, it must be positioned at least three feet from you. Placing it closer will turn the heater into a foot warmer, rather than a body warmer. Experiment with various positions until you find one that is right for you."

103.    Similarly, US Merchants, with its HEAT MACHINE instruction manuals copied substantial portions of the language in Para. 102 from the HEATDISH® instruction manual: "Point the front of the grill directly towards the area in which heat is desired. Place the heater at least three feet, but no more than ten feet, away. The parabolic design of the reflector focuses heat at person three to ten feet away. Thus, for your entire body to enjoy the heat produced by this heater, it must be positioned at least three feet from you. Placing it closer will turn the heater into a foot warmer, rather than a body warmer. Experiment with various positions until you find one that is right for you."

104.    National Presto, in discussing how to clean the HEATDISH®, states: "1) unplug the heater and allow to cool; 2) support the heater on its back; 3) slip a soft, lint-free cloth through the grille; 4) move the cloth over the surface of the parabolic reflector by inserting a long thin handle (such as a dowel or the handle portion of a wooden spoon) through the grille, using it to slide the cloth from spot to spot over the surface of the reflector; 5) remove the handle and the cloth when the surface is dust free."

105.    US Merchants, with its HEAT MACHINE instructions for cleaning the heater, copy verbatim (aside from using alphabetical sequencing) the instructions from the HEATDISH®: "a) unplug the heater and allow to cool; b) support the heater on its back; c) slip a soft, lint-free cloth through the grille; d) move the cloth over the surface of the parabolic reflector by inserting a long thin handle (such as a dowel or the handle portion of a wooden

spoon) through the grille, using it to slide the cloth from spot to spot over the surface of the reflector; e) remove the handle and the cloth when the surface is dust free."

106.    The identified portions above from the instructions manuals, and other materials provided by US Merchants in connection with the sale of the HEAT MACHINE, show that US Merchants verbatim copied significant portions of the National Presto instruction manual. US Merchants choose this exact phrasing by solely copying the work and research that National Presto has expended in developing a succinct and descriptive instruction manual. Overall, an ordinary observer would view the entirety of these instructions as being substantially similar and would be confused as to the source of the instruction manual.

107.    US Merchants copied the very specific language "such as a dowel" in its instructions on how to clean the grill instead of, for example, using language for a generic tool. This highlights the willfulness by Defendant US Merchants in blatantly copying National Presto's valid copyrightable material.

108.    The materials mentioned in this count are copyrightable subject matter under 17 U.S.C. § 102(a).

109.    National Presto has obtained a U.S. copyright registration (Reg. No. TXu000803129) on September 16, 1997, for the HEATDISH® instruction manual.

110.    National Presto has filed for an expedited U.S. copyright registration (App. Nos. 1-7170994504 and 1-7170994459) on November 26, 2018, for its updated HEATDISH® instruction manual and packaging.

111.    National Presto's registered and pending copyrights protect the above-quoted material.

112.    By unlawfully using the instruction manual and packaging, US Merchants has unlawfully reproduced, unlawfully distributed, and unlawfully displayed National Presto's copyrighted works.

113.    No agreement exists allowing Defendant's use of National Presto's copyrighted materials, which infringe on National Presto's rights in its copyrightable material.

114.    Upon information and belief, Defendant's acts of infringement are willful and intentional.

115.    Defendant is continuing to, and on information and belief are likely to continue its course of infringement, to the irreparable damage of National Presto, and in consequence thereof, unless Defendant is restrained and enjoined, National Presto will suffer further and irreparable damage for which National Presto has no full adequate remedy at law.

## COUNT VII – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

116.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

117.    National Presto had a reasonable expectation of economic advantage from continued business relations with Retailer Costco as National Presto had been selling the HEATDISH® parabolic electric heater in Costco stores for over thirty (30) years.

118.    US Merchants was aware of National Presto's expected and advantageous economic relations with Retailer Costco as the HEATDISH® has had a constant presence within Costco stores for over thirty (30) years.

119.    US Merchants intentionally, tortuously, and illegally interfered with National Presto's reasonable expectation of continued and/or future economic advantage by engaging in the conduct complained of herein, and National Presto was damaged thereby.

29

120.    Upon information and belief, in the absence of US Merchant's interfering conduct, it was reasonably probable that National Presto would have realized its expected economic advantage or benefit.

121.    As a result of US Merchant's wrongful conduct, National Presto is entitled to recover damages in an amount to be determined at trial.

**COUNT VIII – FEDERAL UNFAIR COMPETITION FOR FALSE AND MISLEADING CONDUCT UNDER 15 U.S.C. § 1125**

122.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

123.    The National Presto HEATDISH® has unique non-functional ornamental design features that has acquired secondary meaning because consumers associate National Presto as the source of the goods having the unique appearance of the HEATDISH®.

124.    Defendant's acts and conduct as described *supra* are likely to cause confusion, cause mistake, and/or deceive the public into mistakenly believing that the infringing product is either the HEATDISH® or that the infringing product originates or is somehow connected to or associated with National Presto. Such acts constitute unfair competition, at least because Defendant has obtained an unfair advantage as compared to National Presto by placing its products in a virtually identical retail space and advertising displays in an identical manner. Moreover, Defendant's uses of the unique trade dress, trademark, and copyright all seek to benefit off the secondary meaning for which National Presto has worked tirelessly to create as discussed *supra*.

125.    Moreover, Defendant US Merchants falsely advertises the efficiency of its product. Its product packaging states: "It feels like three times the heat yet costs a third less to operate." Upon information and belief, Defendant US Merchants is comparing the HEAT

MACHINE to a 1500-watt convection heater. The HEAT MACHINE is a 1200-watt heater, so when comparing the HEAT MACHINE to a 1500-watt convection heater, the HEAT MACHINE does not cost a third less to operate, it costs a fifth less to operate.

126.    The false statement in Para. 125 by the Defendant US Merchants has the tendency to deceive consumers because the product is in interstate commerce being sold in stores across the country. This false statement is material to purchasers of the HEAT Machine as the efficiency of parabolic electric heaters is a significant deciding factor for making the purchase.

127.    Upon information and belief, the acts of Defendant alleged in the foregoing paragraphs are intentional, willful, with bad faith, and with the intention of deceiving and misleading the public and causing harm to National Presto.

128.    Upon information and belief, Defendant has made, and will continue to make substantial profits and gain from its use of The HEATDISH® trade dress in the United States, to which they are not entitled in law or equity.

129.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition in violation of 15 U.S.C. § 1125(a).

130.    National Presto has suffered, and will continue to suffer, irreparable harm as a direct and proximate cause of Defendant's unfair competition, including, but not limited to, the diversion of sales from National Presto to Defendant, and/or a lessening of the goodwill associated with the HEATDISH®.

131.    As a direct and proximate result of Defendant infringing and unlawful acts, National Presto has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be determined at trial.

31

## COUNT IX – COMMON LAW UNFAIR COMPETITION

132.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

133.    Defendant used and knowingly directly benefited from the use of National Presto's trade dress, trademark, and copyright in connection with the advertising, offering for sale, and sale of the HEAT MACHINE. Specifically, the usurping of the distinct product ornamental design, including but not limited to, the slotted grill appearance, the two concentric rings, the color scheme in the emblem, the display of a confusingly similar name on the emblem and packaging, and the overall parabolic design, as well as copying the literature provided with the heater, the product packaging, and the advertising methods are all evidence of the infringement by Defendant.

134.    Defendant's conduct in stealing National Presto's intellectual property was "in commerce" within the meaning ascribed by Minnesota common law.

135.    National Presto did not provide Defendant with a license to use the intellectual property infringed on and described in this Complaint.

136.    Use of National Presto's intellectual property in the manner attributable to Defendant is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which the Defendant performs into believing that the heaters those customers are receiving are being provided with the authorization of National Presto.

137.    Defendant's acts were willful, knowing, and intentional.

138.    National Presto has been damaged by infringing activities of Defendant as National Presto has lost significant sales through Costco. Defendant precluded National Presto from realizing future sales and are capitalizing on the clear need in Costco for these parabolic electric heaters.

139.    Unless enjoined by the Court, Defendant's infringing activities as described above will continue unabated and will continue to cause harm to National Presto.

## COUNT X – DECEPTIVE TRADE PRACTICES UNDER MINNESOTA DECEPTIVE TRADE PRACTICES ACT MINN. STAT. § 325D.44

140.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

141.    US Merchants' unauthorized use of National Presto's trade dress, trademark, and copyright has caused and is likely to cause confusion or mistake or is likely to deceive consumers as to the source or origin of products. Specifically the use of National Presto's trade dress in creating the product and advertising the product, the utilizing of National Presto's trademark in connection to the receipt for the sale of the HEAT MACHINE, and the verbatim copying of the instruction manual all show that US Merchants acted willfully and deliberately to cause likelihood of confusion by consumers as to the source of the goods by trying to pass off US Merchants' parabolic electric heaters as the higher-quality National Presto parabolic electric heaters.

142.    Defendant infringes on National Presto's intellectual property rights as discussed in this Complaint by offering for sale and selling the HEAT MACHINE in spite of the blatant infringement of National Presto's intellectual property.

143.    Defendant's acts are also likely to cause confusion or of misunderstanding as to affiliation, connection, or association with or certification by National Presto.

144.    Defendant specifically infringed on National Presto's trademarks during the conduct of trade or commerce, from which Defendant derived an economic benefit.

145.    Defendant's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat § 325D.43 et seq.

33

146.    As a direct and proximate result of the Defendant's acts of infringement, National Presto has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of portable heaters, which revenue would have been received but for Defendant's acts in infringing on the HEATDISH® and are likely to cause irreparable injury.

147.    As such, National Presto has been damaged and is likely to be further damaged by deceptive trade practice of Defendant within the meaning of Minn. Stat. § 325D.44.

148.    Unless enjoined by the Court, Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to National Presto.

**COUNT XI – UNFAIR TRADE PRACTICES UNDER MINN. STAT. § 325D.13**

149.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

150.    Defendant US Merchants is a manufacturer, marketer, seller, and distributor of the HEAT MACHINE.

151.    National Presto is protected by these statutes because it has been injured through the actions of Defendant and are thus permitted to maintain this claim under Minn. Stat. § 8.31.

152.    Minn. Stat. § 325D.13 provides that, "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

153.    The specific unfair trade practices by Defendant include, utilizing the HEATDISH® name on its receipts, utilizing the unique ornamental design of the parabolic electric heater, utilizing the unique trade dress of the point of sale display and packaging, infringing on National Presto's copyrighted material, and engaging in overall conduct that has a high probability of creating a high likelihood of confusion.

154.    Defendant knew or should have known that the HEAT MACHINE product was being manufactured, marketed, displayed, and sold in such a similar manner that an ordinary consumer would not realize the difference between the HEAT MACHINE and the HEATDISH®.

155.    Defendant's misrepresentations and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive consumers with respect to the origin of parabolic electric heaters.

156.    Defendant intended that consumers would rely on Defendant's misrepresentations regarding the origin of the HEAT MACHINE.

157.    Defendant's conduct and omissions described herein occurred repeatedly by Defendant during trade or business and were capable of deceiving a substantial portion of the consuming public.

158.    The misrepresentations by Defendant as described in this count were material to the manufacturing, marketing, and selling of the HEAT MACHINE.

159.    Defendant's unlawful conduct is continuing, with no indication that Defendant intend to cease this fraudulent course of conduct.

160.    Plaintiff has suffered actual, ascertainable losses and damages by virtue of Defendant introduction of the HEAT MACHINE to the market.

161.    As a direct and proximate cause of Defendant's violations of the applicable state Unfair Trade Practices and Consumer Protection laws as set forth above, Plaintiff seeks injunctive or declaratory relief prohibiting Defendant from falsely advertising the qualities, characteristics, and capabilities of the parabolic electric heater and all other damages available by statute and law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff National Presto prays for judgment against the Defendant that the Court:

162.  Find that the Defendant has committed the acts of infringement in this Complaint, including but not limited to trade dress infringement, trademark infringement, and copyright infringement;

163.  Find that Defendant has committed the act of tortious interference with prospective business relations;

164.  Find that Defendant engaged in unfair competition in violation of 15 U.S.C § 1125;

165.  Find that Defendant engaged in false designation of origin in violation of 15 U.S.C. § 1125;

166.  Find that Defendant engaged in common law unfair competition in violation of Minnesota Law;

167.  Find that Defendant engaged in deceptive trade practices under Minn. Stat. § 325D.44;

168.  Find that Defendant engaged in unfair trade practices under Minn. Stat. § 325D.13.

169.  Enter judgment against the Defendant and in favor of National Presto on all applicable counts;

170.  Find that Defendant's activities were in all respects conducted willfully and for profit;

171.    That Defendant, its officers, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be permanently enjoined and restrained from:

a.    From using in any manner the HEATDISH® trade dress, the HEATDISH® trademark, any of the infringing HEATDISH® trademarks, and the copyrightable material.

b.    From representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that Defendant, or any of its goods, are authorized by National Presto.

c.    From passing off, inducing or enabling others to sell or pass off any goods as products produced by National Presto, which are not in fact genuine National Presto parabolic electric heaters, or not produced under the control and supervision of National Presto and approved by National Presto.

d.    From otherwise competing unfairly with National Presto in any manner.

172.    That Defendant be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court and serve upon National Presto, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

173.    That Defendant be required to deliver up to National Presto for destruction, any and all instructions, advertisements, or products relating to the HEAT MACHINE that relates to the infringements as complained in this Complaint.

174.    That Defendant be required, pursuant to 15 U.S.C § 1117, to account to National Presto for any and all profits derived by them, either individually or jointly to be ordered to disgorge, and be ordered to pay all damages sustained by National Presto by reason of Defendant's actions complained herein, including an award of treble damages as provided for the statute.

175.   That National Presto be awarded damages pursuant to US Merchants tortious interference with prospective business relations.

176.   That National Presto be awarded damages, costs and attorney's fees under the Minnesota Unfair Trade Practices Act.

177.   That National Presto be awarded punitive damages.

178.   That National Presto be awarded both pre-judgment and post-judgment interest on each and every damage award.

179.   That pursuant to 15 U.S.C. § 1117 Defendant conduct has been willful and award National Presto its reasonable attorney's fees, costs and disbursements of this civil action.

180.   That the court award any other damages and such other further relief as this Court may deem just and proper.

### JURY DEMAND

181.   National Presto demands that all claims or causes of action made in this Complaint be tried by a jury to the fullest extent possible under the United States Constitution.

Respectfully submitted,

Date: December 4, 2018

By: s /Eric H. Chadwick_____
Eric H. Chadwick (#248769)
chadwick@ptslaw.com
PATTERSON THUENTE PEDERSEN, P.A.
4800 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2100
Telephone:  (612) 349-5740
Facsimile:  (612) 349-9266

John S. Artz (P48578), *to be admitted pro hac vice*
Andrea L. Arndt (P78622), *to be admitted pro hac vice*

Yafeez S. Fatabhoy (P83064), *to be admitted pro hac vice*
**DICKINSON WRIGHT PLLC**
2600 West Big Beaver Road, Ste. 300
Troy, MI  48084
Telephone:  (248) 433-7200
Facsimile:  (844) 670-6009
jsartz@dickinsonwright.com
aarndt@dickinsonwright.com
yfatabhoy@dickinsonwright.com

*Attorneys for Plaintiff*
*National Presto Industries, Inc.*