## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

National Presto Industries, Inc.,

        Plaintiff,

vs.

U.S. Merchants Financial Group, Inc.,

        Defendant.

Case No.: 0:18-cv-03321-SRN-BRT

**<u>DEFENDANT U.S. MERCHANTS'
MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................... 4

I.   PRESTO AND ITS SALE OF PARABOLIC HEATERS TO
     COSTCO. ................................................................................... 4

II.  U.S. MERCHANTS' SALE OF PARABOLIC HEATERS TO
     COSTCO. ................................................................................... 6

     A.   Costco asks U.S. Merchants to supply a parabolic heater. ............... 6

     B.   U.S. Merchants requests and receives clearance opinions. ............... 7

     C.   Costco sells THE HEAT MACHINE heater in Arizona. ................... 8

ARGUMENT ........................................................................................ 10

I.   PRESTO'S TRADE DRESS CLAIMS (COUNTS 1-3) FAIL. ................. 10

     A.   Presto Fails to Show That Its Alleged Trade Dress Is
          Distinctive. ........................................................................... 10

          1.   Presto fails to show that its HEATDISH design is
               distinctive. ..................................................................... 11

          2.   Presto fails to show that its HEATDISH packaging is
               distinctive. ..................................................................... 19

          3.   Presto fails to show that its HEATDISH sale display is
               distinctive. ..................................................................... 21

     B.   Presto Fails to Show that its Alleged Trade Dress is
          Non-Functional. ..................................................................... 22

          1.   Presto fails to show that its HEATDISH design is non-
               functional. ..................................................................... 23

          2.   Presto fails to show that its HEATDISH packaging is
               non-functional. ............................................................... 28

          3.   Presto fails to show that its HEATDISH sale display is
               non-functional. ............................................................... 28

     C.   Presto Fails to Present Any Evidence To Support A Finding
          Of A Likelihood of Confusion. ................................................... 29

i

          **1.**    Presto fails to present evidence demonstrating actual confusion among consumers. ................................................. 30

          **2.**    All other likelihood of confusion factors favor U.S. Merchants. ............................................................................ 35

II.     PRESTO'S TRADEMARK INFRINGEMENT CLAIM (COUNT 4) FAILS. ................................................................................. 36

    A.    Presto's HEATDISH Mark Is Descriptive And Weak.................... 37

    B.    The parties' marks are dissimilar. ...................................... 38

    C.    U.S. Merchants did not intend to confuse any consumer................ 40

III.    PRESTO'S FALSE DESIGNATION CLAIM (COUNT 5) FAILS.......... 41

IV.    PRESTO'S COPYRIGHT CLAIMS (COUNT 6) FAIL. ......................... 41

    A.    Presto's Copyright Registration is Inaccurate And Does Not Evidence Ownership of a Valid Copyright. ..................................... 41

    B.    Presto Cannot Show Ownership of Copyrightable Material............ 43

V.     PRESTO'S TORTIOUS INTERFERENCE CLAIM (COUNT 7) FAILS. ................................................................................. 44

    A.    U.S. Merchants did not commit any wrong or unjust act. .............. 45

    B.    Presto fails to present evidence of any cognizable injury. .............. 46

VI.    PRESTO'S UNFAIR COMPETITION CLAIM (COUNT 8) FAILS........ 46

    A.    Presto fails to show a "false statement of fact."............................. 47

    B.    Presto fails to show that the statement "three times the heat" deceived consumers or that it was likely to influence a purchasing decision. ........................................................ 48

VIII.  U.S. MERCHANTS IS ENTITLED TO SUMMARY JUDGMENT ON PRESTO'S REQUEST FOR ENTRY OF AN INJUNCTION........... 49

CONCLUSION.................................................................................. 50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Italian Pasta Co. v. New World Pasta Co.*,
   371 F.3d 387 (8th Cir. 2004) ................................................................ 47

*Aromatique, Inc. v. Gold Seal, Inc.*,
   28 F.3d 863 (8th Cir. 1994) ......................................................... *passim*

*Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*,
   328 F. Supp. 2d 980 (D. Minn. 2004) ................................................. 41

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
   569 F.3d 383 (8th Cir. 2009) ................................................................ 37

*Boo, Inc. v. Boo.com Grp. Ltd.*,
   No. 00-1872, 2002 U.S. Dist. LEXIS 3516 (D. Minn. Feb. 21, 2002) ........................ 31

*Browe v. Evenflo Co.*,
   No. 14-4690 ADM/JJK, 2015 U.S. Dist. LEXIS 82540 (D. Minn. June
   25, 2015) ............................................................................................... 47

*Burger Chef Systems, Inc. v. Sandwich Chef, Inc.*,
   608 F.2d 875 (C.C.P.A. 1979) ............................................................. 39

*Cellular Sales, Inc. v. Mackay*,
   942 F.2d 483 (8th Cir. 1991) ............................................................... 37

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................. 10

*Children's Factory, Inc. v. Benee's Toys, Inc.*,
   160 F.3d 489 (8th Cir. 1998) ......................................................... 32, 33

*Clam Corp. v. Innovative Outdoor Sols., Inc.*,
   No. 08-5895(DSD/AJB), 2008 U.S. Dist. LEXIS 100938 (D. Minn.
   Dec. 15, 2008) ...................................................................................... 36

*Co-Rect Prods. v. Marvy! Advert. Photography, Inc.*,
   780 F.2d 1324 (8th Cir. 1985) ............................................................. 12

*ConAgra, Inc. v. Geo. A. Hormel & Co.*,
   784 F. Supp. 700 (D. Neb. 1992) ........................................................ 39

iii

*Duluth News-Tribune v. Mesabi Publ'g Co.*,
    84 F.3d 1093 (8th Cir. 1996) ...................................................................*passim*

*Essence Commc'ns, Inc. v. Singh Indus., Inc.*,
    703 F. Supp. 261 (S.D.N.Y. 1988) ............................................................. 30

*Everest Capital Ltd. v. Everest Funds Mgmt, LLC*,
    393 F.3d 755 (8th Cir. 2005) ............................................................... 37, 40

*Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*,
    No. 12-2703, 2016 U.S. Dist. LEXIS 135896 (D. Minn. Sep. 29, 2016)............. 45, 46

*Fair Isaac Corp. v. Experian Info. Solutions Inc.*,
    645 F. Supp. 2d 734 (D. Minn. 2009) ........................................................ 37

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991) ........................................................................ 41, 43

*Frosty Treats, Inc. v. Sony Comput. Entm't Am., Inc.*,
    426 F.3d 1001 (8th Cir. 2005) ...............................................................*passim*

*Gen. Mills, Inc. v. Kellogg Co.*,
    824 F.2d 622 (8th Cir. 1987) ............................................................... 36, 37

*Glob. Traffic Techs., LLC v. Emtrac Sys.*,
    946 F. Supp. 2d 884 (D. Minn. 2013) ........................................................ 48

*Goddard, Inc. v. Henry's Foods, Inc.*,
    291 F. Supp. 2d 1021 (D. Minn. 2003) .................................................*passim*

*Hillesheim v. Holiday Stationstores, Inc.*,
    903 F.3d 786 (8th Cir. 2018) ................................................................ 49

*Honeywell Int'l, Inc. v. ICM Controls Corp.*,
    45 F. Supp. 3d 969 (D. Minn. 2014) ....................................................*passim*

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
    No. 11-cv-569, 2017 U.S. Dist. LEXIS 11692 (D. Minn. Jan. 26, 2017) ...........*passim*

*Insty\*Bit, Inc. v. Poly-Tech Indus.*,
    95 F.3d 663 (8th Cir. 1996) ................................................................. 30

*Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*,
    917 F. Supp. 2d 927 (D. Minn. 2013) .................................................. 19, 31

*Lenscrafters, Inc. v. Vision World*,
   943 F. Supp. 1481 (D. Minn. 1996) ....................................................... 47, 48

*LTJ Enters. v. Custom Mktg. Co.*,
   LLC, 168 F. Supp. 3d 1202 (D. Minn. 2016) ............................................. 31

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) ................................................................ 35, 39

*Mars Musical Adventures, Inc. v. Mars, Inc.*,
   159 F. Supp. 2d 1146 (D. Minn. 2001) ............................................... *passim*

*Merriam-Webster, Inc. v. Random House, Inc.*,
   35 F.3d 65 (2d Cir. 1994) ........................................................................ 30

*MSP Corp. v. Westech Instruments, Inc.*,
   500 F. Supp. 2d 1198 (D. Minn. 2007) ..................................................... 12

*In re Mun. Stormwater Pond*,
   No. 18-cv-3495 1, 2019 U.S. Dist. LEXIS 227887 (D. Minn. Dec. 20,
   2019) ...................................................................................................... 47

*Munro v. Lucy Activewear, Inc.*,
   No. 16-79, 2016 U.S. Dist. LEXIS 135692 (D. Minn. Sep. 29, 2016) ....... 45

*Munsingwear Inc. v. Jockey Int'l, Inc.*,
   No. 4-93-538, 1994 U.S. Dist. LEXIS 8243 (D. Minn. Apr. 21, 1994) .......... 29, 31

*My Pillow, Inc. v. Ontel Prods. Corp.*,
   No. 19-cv-903 (JNE/HB), 2020 U.S. Dist. LEXIS 73475 (D. Minn. Apr.
   3, 2020) ....................................................................... 13, 20, 21, 22

*Nabisco, Inc. v. PF Brands, Inc.*,
   191 F.3d 208 (2d Cir. 1999) ..................................................................... 30

*Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*,
   1990 U.S. Dist. LEXIS 4288 (N.D. Ill. Apr. 13, 1990) .................................. 42, 43, 44

*Nichia Am. Corp. v. Seoul Semiconductor Co.*,
   No. CV 07-8354 PA, 2008 U.S. Dist. LEXIS 129234 (C.D. Cal. Oct. 7,
   2008) ...................................................................................................... 50

*Palmer/Kane LLC v. Rosen Book Works, LLC*,
   188 F. Supp. 3d 347 (S.D.N.Y. 2016) ....................................................... 42

*Progressive Distribution Servs. v. UPS, Inc.*,
    856 F.3d 416 (6th Cir. 2017) ................................................................ 40

*Rainbow Play Sys. v. GroundScape Techs., LLC*,
    364 F. Supp. 2d 1026 (D. Minn. 2005) ................................... 23, 26, 34, 46

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) .............................................................................. 41

*Scentsy, Inc. v. Reshare Commerce*,
    LLC, No. 12-CV-268, 2013 U.S. Dist. LEXIS 168073 (D. Minn. Oct.
    21, 2013) .............................................................................................. 30

*Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*,
    750 F.2d 1295 (5th Cir. 1985) ................................................. 12, 20, 32, 33

*Star Indus. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) .................................................................. 40

*Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*,
    No. 03 CV 2420 (RMB), 2006 U.S. Dist. LEXIS 25291 (S.D.N.Y. May
    1, 2006) ............................................................................................... 36

*United Indus. Corp. v. Clorox Co.*,
    140 F.3d 1175 (8th Cir. 1998) .............................................................. 47

*Vitek Sys. v. Abbott Labs., Inc.*,
    675 F.2d 190 (8th Cir. 1982) ................................................................ 33

*W. Licensing Corp. v. Eastlaw, LLC*,
    No. 00-2645, 2001 U.S. Dist. LEXIS 26150 (D. Minn. May 9, 2001) ...... 49

*Woodsmith Publ'g Co . v. Meredith Corp.*,
    904 F.2d 1244 (8th Cir. 1990) .............................................................. 35

**Statutes**

15 U.S.C. § 1125 .......................................................................................... 41

17 U.S.C. § 409(9) ....................................................................................... 41

17 U.S.C. § 411 ..................................................................................... 41, 42

17 U.S.C. § 411(b)(1) ................................................................................... 42

35 U.S.C. § 171(a) ....................................................................................... 18

Minn. Stat. § 325D.44 .................................................................................. 40

**<u>INTRODUCTION</u>**

Plaintiff National Presto Industries, Inc. ("Presto") filed this lawsuit to prevent

Defendant U.S. Merchants Financial Group, Inc. ("U.S. Merchants") from lawfully

competing for business with the warehouse retailer Costco.  Presto forced U.S. Merchants

to defend this meritless case for more than two years—even after U.S. Merchants stopped

selling the accused product at the heart of this suit.  Presto fails to present evidence

sufficient to raise a genuine issue of material fact in support of any of its claims.  This

Court should grant summary judgment dismissing Presto's claims in their entirety.

For years, Costco purchased various styles of Presto's HEATDISH brand

parabolic heaters and acquiesced to Presto's onerous demands about how Presto's heaters

should be sold in Costco's own stores.  In 2017, Costco had enough. It made the

independent decision to seek an alternate supplier of parabolic heaters for limited test

markets. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ .

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

████████████████████████

Presto's aim in bringing this case—halting U.S. Merchants' sale of its 2018/2019

version of THE HEAT MACHINE parabolic heater—has been achieved, though not

1

because its claims are meritorious. Nevertheless, Presto has maintained this lawsuit in an obvious attempt to stifle competition.

Presto fails to raise a genuine issue of material fact in support of any of its eleven causes of action.  Presto's trade dress claims are nothing more than an attempt to extend the life of its design patents.  Presto knows how to defend **protectable** intellectual property; it registered a multitude of design patents for successive models of its HEATDISH parabolic heater. But in this case, Presto asserts unregistered, purported **trade dress** rights. The reason for Presto's action is clear—unlike design patents, trade dress rights do not expire. There is, however, a critical trade-off.  In order to obtain perpetual trade dress rights, Presto must first show that its alleged trade dress is "recognized by consumers as emanating from a single source"—Presto. (Dkt. 1 ¶¶ 16; 37; 57; 73.) Presto fails to present **any** evidence to support this critical requirement.  Presto's own documents and testimony show the opposite of source-identifying trade dress.

Similarly, Presto fails to present evidence that consumers are likely to be confused by any alleged similarities between the parties' products, packaging, or sale displays. Presto fails to provide any evidence whatsoever regarding how consumers perceive the alleged similarities upon which Presto bases its claims.  Presto similarly fails to show any actual confusion amongst an **appreciable number of consumers** of the parties' products, let alone that any such confusion resulted from the non-functional aspects of the parties' products, packaging, or sale displays.

Presto's other claims are equally deficient. Presto fails to present any evidence demonstrating that consumers will be confused by U.S. Merchants' use of the term THE

HEAT MACHINE applied to a parabolic heater.  Indeed, the only similarity between U.S. Merchants' THE HEAT MACHINE mark and Presto's HEATDISH mark is the term HEAT, and courts have consistently found that such descriptive points of similarity cannot give rise to a likelihood of consumer confusion.

Presto's copyright claims also fail. Presto cannot prove ownership of valid copyrights. Its registrations—the only evidence of ownership in the record—are inaccurate and invalid. Presto wrongfully asserts ownership over material copied from the safety standards body Underwriters Laboratories. Absent a valid registration, Presto cannot overcome the unrebutted expert record in this case, which establishes that Presto's instruction manuals and packaging consist of unprotectable factual statements and ideas.

Finally, Presto's tortious interference claim presupposes some expectancy of a perpetual contract with Costco.  But the unrebutted record demonstrates that ████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████.

The law as applied to the undisputed facts of this case exposes the deficiencies of Presto's claims.  Despite years of litigation, Presto fails to raise a genuine issue of material fact on necessary elements of all of its claims.  Presto's claims cannot survive summary judgment.

## STATEMENT OF UNDISPUTED FACTS

**I.      PRESTO AND ITS SALE OF PARABOLIC HEATERS TO COSTCO.**

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Since 1989, Presto has sold

HEATDISH brand parabolic heaters to Costco. (Dkt. 1 ¶ 9.)  Although the HEATDISH

name remained consistent, Presto's HEATDISH brand heaters changed substantially over

time, as reflected in the below timeline. (*Id*. Ex. B.)



(*Id*.) █████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████



## II.     U.S. MERCHANTS' SALE OF PARABOLIC HEATERS TO COSTCO.

U.S. Merchants is a family-owned company that supplies a wide variety of products to warehouse retailers like Costco. ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

█████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

███████████████████████████

██    ████████████████████████████████████████.

In February 2017, Costco ████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

6

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████

**B.      U.S. Merchants requests and receives clearance opinions.**

Before selling its parabolic heater to Costco, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████



██████

Separately, in September 2017, ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

**C.       Costco sells THE HEAT MACHINE heater in Arizona.**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████

█████████████████████████████

Presto filed this lawsuit on December 8, 2018. (Dkt. 1.)  Instead of serving U.S.

Merchants with the Complaint, Presto provided a copy to Costco. (Dkt. 123 ¶ 2.)

████████████████████████████████████

████████████████████████████████████

███████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

██████████████████████████

9

## ARGUMENT

Summary judgment "should be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Frosty Treats, Inc. v. Sony Comput. Entm't Am., Inc.*, 426 F.3d 1001, 1003 (8th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

## I.   PRESTO'S TRADE DRESS CLAIMS (COUNTS 1-3) FAIL.

Presto claims infringement of unregistered[2] alleged trade dress in the design, packaging, and sale display for its HEATDISH parabolic heater.  To prevail on its trade dress claims, Presto must demonstrate three things—that its alleged trade dress "(1) is distinctive; (2) nonfunctional; and (3) its imitation would likely cause confusion for consumers as to the source of the product." *Honeywell Int'l, Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 990 (D. Minn. 2014). Presto fails to raise a genuine issue of material fact on all three required elements.

### A.   Presto Fails to Show That Its Alleged Trade Dress Is Distinctive.

In order to establish that its alleged trade dress is distinctive, Presto must show that the alleged trade dress "is either inherently distinctive, or has acquired distinctiveness through secondary meaning." *Goddard, Inc. v. Henry's Foods, Inc.,* 291 F.

---

[2] Presto does not allege that its trade dress is registered (*see* Dkt. 1), and a search of the USPTO records reveals it is not. (Manske Decl. ¶ 2.)

Supp. 2d 1021, 1040 (D. Minn. 2003).  Presto fails to present evidence sufficient to raise

a genuine issue of material fact that any of its alleged trade dress is distinctive.

### 1.  Presto fails to show that its HEATDISH design is distinctive.

In its final interrogatory response, Presto describes its unregistered, alleged trade

dress as:

> 1) the appearance of the parabolic dish; 2) the relationship and arrangement
> of the dish to the base; 3) the shroud extending from the base and traversing
> the rear of the dish from one end to the other end such that the dish is tilted
> upward; 4) the heating element being centrally located with respect to the
> dish; 5) the specific curvature and shape of the grill, featuring bars spread
> apart combined with multiple concentric circles creating openings, the bars
> extending to a recessed center; 6) a recessed emblem plate in the recessed
> center, which contains the product's trademark; 7) the reflective finish on
> the inner side of the dish configured to emanate a distinctive orange glow
> on the dish surface; and 8) the metallic finish on the outer side of the dish
> …

(Manske Decl., Ex. HH (Dec. 9, 2019 Suppl. Resp. to Interrogatory No. 22).)[3] Presto fails

to show that this alleged product design trade dress is distinctive.

Product design can never be inherently distinctive, and "in an action for

infringement of unregistered trade dress," a product design is distinctive "only upon a

showing of secondary meaning."  *MSP Corp. v. Westech Instruments, Inc.*, 500 F. Supp.

2d 1198, 1211 (D. Minn. 2007).  In order to demonstrate secondary meaning, Presto

"must show that by long and exclusive use in the sale of" the HEATDISH, it "has

---

[3] Presto's description of its alleged trade dress changed three times during this litigation.
There is one description in the Complaint (Dkt. 1 ¶ 38); two in Presto's responses to
interrogatories (Manske Decl. Ex. H); and yet another in the report of its expert, Mr.
Lawrence Tienor, who came up with his own description. (*Id*. Ex. II-1 (Tienor Report ¶¶
12, 28) Ex. JJ (Tienor Tr. 61-62:17; 87:22-89:10).) These varying descriptions are shown
in Exhibit KK attached to Declaration of William E. Manske, filed concurrently with this
memorandum.

become so associated in the public mind" that it "serves to identify the source of the goods and to distinguish [it] from those of others." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994). Presto fails to make such a showing.

*First*, Presto fails to present evidence that the design of its parabolic heater "serves to identify the source of [Presto's] goods and to distinguish them from those of others." *Id*. The Eighth Circuit recognizes that "direct evidence such as consumer testimony or surveys are most probative of secondary meaning." *Frosty Treats, Inc.*, 426 F.3d at 1005. Presto fails to present any such evidence. This failure is significant. Courts have found the lack of survey evidence to be an "insurmountable hindrance" to establishing secondary meaning. *See Co-Rect Prods. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1333 n.9 (8th Cir. 1985) (citing *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1301 (5th Cir. 1985)).

Indeed, 

███████████████████████████████████████████████████

███████████████████████████████████

*Second*, Presto fails to demonstrate either longstanding or exclusive use of its

alleged packaging trade dress. *Aromatique, Inc.*, 28 F.3d at 870.

While Presto may have been selling some version of its HEATDISH brand heater

to Costco over an extended time, ███████████████████████████

███████████████████████████████████████████████. *My Pillow, Inc.*

*v. Ontel Prods. Corp.,* No. 19-cv-903 (JNE/HB), 2020 U.S. Dist. LEXIS 73475, at *22

(D. Minn. Apr. 3, 2020) (no secondary meaning where "lack of consistent application of

the alleged trade dress undermines any argument that its packaging has become

associated with Plaintiff in the mind of the consumer").

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████







(*Id.*)

  The frequency and significance of Presto's repeated design changes are reflected in Presto's conduct before the USPTO.  Presto obtained numerous design patents that correspond to various models of the HEATDISH brand parabolic heater:

| Design Patent | Corresponding HEATDISH Model(s), Picture from NP 21 |
|---|---|
| D312,684 | 07900, 07905 |
| D391,355 | 07904 |
| D456,067 | 07903 |

| Design Patent | Corresponding HEATDISH Model(s), Picture from NP_21 |
|---|---|
| D633,189 | 07917 |

(Manske Decl. Ex. MM; Ex. B.)

To obtain these design patents, Presto had to show that each design was a "**new, original** and ornamental design." 35 U.S.C. § 171(a) (emphasis added).  The USPTO accepted them as such.  Presto's decision to obtain design patents on several different models of its HEATDISH heater confirms that Presto never employed a consistent design at any point in time, let alone during the 30-plus years it claims to have done so.

Presto likewise fails to establish "exclusive" use of its alleged HEATDISH parabolic heater trade dress.  This is a natural consequence of Presto's attempt to claim trade dress rights in generic features found on many other parabolic heaters.  Presto claims trade dress protection in elements such as

- "*the appearance of the parabolic dish*";
- the "*relationship and arrangement of the dish to the base*";
- some undefined "*curvature and shape of the grill*"; and
- the heater dish having a "*reflective*," "*metallic*" finish and "*orange glow*."

(Manske Decl. Ex. HH).

These elements describe nothing more than the generic "style" of a functioning parabolic heater, which is not protectable.[4]  *Goddard*, 291 F. Supp. 2d at 1043. Presto did not invent the parabolic heater. (Manske Decl. Ex. NN (Jobin Report ¶¶ 42-54).)  For more than one hundred years, parabolic heaters have featured a reflective parabolic dish that radiates an orange glow. (*Id*. ¶¶ 44-45.)  The dish is mounted on top of the base, often at a default upward angle. (*Id*. ¶¶ 44-58.)  A grill is standard. (*Id*. ¶¶ 52; 69-76.)  And, UL specifies particular design parameters for all parabolic heater grills. (Manske Decl. Ex. II-1 (Tienor Report ¶¶ 25, 32).)  Presto's claimed trade dress covers common, generic elements that are implemented on a variety of other parabolic heaters.

### 2.  Presto fails to show that its HEATDISH packaging is distinctive.

Presto broadly claims unregistered trade dress rights in the packaging for its HEATDISH parabolic heater, including:

- The product name on the front of a package, printed in white;
- The type of product (a heater) printed at the top of the package;
- A prominent photo of the product;
- A list of the product features in bullet point format; and
- A red, white, and black color scheme.

(Dkt. 1 ¶¶ 24, 26, 28, 69.)

---

[4] Indeed, Presto's description of its trade dress fails in the first instance because it is impermissibly vague. *See Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*, 917 F. Supp. 2d 927, 940 (D. Minn. 2013) (granting summary judgment where plaintiff's "vague reference to [a] website's 'design and layout' and 'color motif' do not provide a sufficient basis for a reasonable jury to conclude that the trade dress is inherently distinctive or that it has acquired secondary meaning").

These features cannot be inherently distinctive because they merely convey the product's "qualities or characteristics" and are "dictated by the nature of the product" *My Pillow, Inc.*, 2020 U.S. Dist. LEXIS 73475, at *18 (citing *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 785-86 (8th Cir. 1995)).  They are present on the packaging of numerous other parabolic heaters and small consumer appliances. (Manske Decl. Ex. NN (¶¶ 85-92).) ███████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████

As with its alleged product design trade dress, Presto fails to provide any evidence that its packaging has acquired distinctiveness through secondary meaning.

*First,* Presto presents **no evidence whatsoever** that its HEATDISH packaging "has become so associated in the public mind" that it "serves to identify the source of the goods and to distinguish them from those of others." *Aromatique, Inc*, 28 F.3d at 870.

*Second,* Presto fails to demonstrate either longstanding or exclusive use of its alleged packaging trade dress. *Id.*  To the contrary, the **undisputed** record is that ████

████████████████████████████████████████

████████████████████████████████████████



(*Id.*; Ex. NN (¶ 133).) Presto's constantly shifting packaging design cannot support

acquired distinctiveness. *My Pillow, Inc.*, 2020 U.S. Dist. LEXIS 73475, at *21-22 (no

acquired distinctiveness where "[c]ore elements of Plaintiff's trade dress … varied from

package to package and from advertising impression to advertising impression").

### 3.   Presto fails to show that its HEATDISH sale display is distinctive.

Presto's alleged sale display consists of a product being placed on an angled

platform so that consumers can view it, "feel the heat" from operation, and see text

reciting identified product features. (Dkt. 1 ¶ 55.)  These features quite literally "convey[]

an immediate idea of the … qualities [and] characteristics" of the product.  *My Pillow,*

*Inc.*, 2020 U.S. Dist. LEXIS 73475 at *18.  Positioning a display so that consumers can

feel and experience the product's operation is not inherently distinctive. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

Further, Presto presents **no evidence whatsoever** that its sale display "has become

so associated in the public mind" that it "serves to identify the source of the goods and to

distinguish them from those of others." *Aromatique, Inc.*, 28 F.3d at 870. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

### B.   Presto Fails to Show that its Alleged Trade Dress is Non-Functional.

Presto cannot show that its alleged trade dress is non-functional—another

threshold requirement of demonstrating a protectable trade dress.  *Honeywell Int'l, Inc.*,

45 F. Supp. 3d at 995.  A design feature "is functional if it is essential to the use or

purpose of the article or if it affects the cost or quality of the article." *Id.*

The functionality doctrine serves to prevent a competitor from monopolizing a

useful product feature in the guise of identifying itself as the source of the product.

*Goddard, Inc.*, 291 F. Supp. 2d at 1049-1050 (granting summary judgment on

functionality, finding purported restaurant décor trade dress of cooking equipment, counter tops, awnings, utensils, and uniforms as functional); *Rainbow Play Sys. v. GroundScape Techs., LLC*, 364 F. Supp. 2d 1026, 1038 (D. Minn. 2005) (granting summary judgment on functionality; "if a competitor were prohibited from using slides, big beam lumber, sandboxes, swings, or Rainbow's other claimed trade-dress elements, this would clearly hinder its competitors' ability and right to compete effectively").

     **1.**     **Presto fails to show that its HEATDISH design is non-functional.**

In order to meet its burden to establish non-functionality, Presto must show that its claimed trade dress features are "arbitrary embellishments" that do "not affect cost or quality," of the product. *Honeywell Int'l, Inc.,* 45 F. Supp. 3d at 997. Throughout this case, Presto proposed an ever-shifting description of its alleged product design trade dress. Its current (final) contentions are inconsistent with the opinions of its own expert. Presto fails to show than any of the broadly worded design elements it claims as protectable trade dress—let alone all of them—are non-functional.

     **a. The "appearance of the parabolic dish"**

Presto admits that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ This evidence precludes a finding of

non-functionality as a matter of law. *See Honeywell Int'l, Inc.*, 45 F. Supp. 3d at 997

(design element is functional if it is "essential to the use or purpose of the product");

*Goddard, Inc.*, 291 F. Supp. 2d at 1050 ("typical, and necessary" design elements found

to be functional).

### b. The "relationship and arrangement of the dish to the base"

The HEATDISH is normally placed on the floor. ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ evidence precludes a finding of non-functionality as a matter of

law. *See Honeywell Int'l, Inc.*, 45 F. Supp. 3d at 1000 n.22 (granting summary judgment

on functionality, finding it "likely that storage and transport space" for hypothetical

alternative design would "be costlier").

### c.The "shroud extending from the base and traversing the rear of the dish from one end to the other end such that the dish is tilted upward"

Presto's shroud ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

██████████

   █████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ This evidence precludes a

finding of non-functionality as a matter of law.  *Goddard, Inc.*, 291 F. Supp. 2d at 1050

(finding functionality where plaintiff "admits" that its trade dress elements had

"functional uses").

### d. The "heating element being centrally located with respect to the dish"

   █████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

---

[5] Even though Presto described its trade dress element as a "shroud," this term appears nowhere in Mr. Tienor's report. ███████████████████████
██████████████████████████████████████████

**e. The "specific curvature and shape of the grill, featuring bars spread apart combined with multiple concentric circles creating openings, the bars extending to a recessed center"**

Presto fails to even identify any "specific curve and shape" of a grill for which it claims trade dress. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ This evidence precludes a finding of non-functionality as a matter of law. *Rainbow Play Sys.*, 364 F. Supp. 2d at 1038; *Honeywell Int'l, Inc.*, 45 F. Supp. 3d at 997.

**f. "A recessed emblem plate in the recessed center, which contains the product's trademark"**

Presto fails to show that this feature is non-functional. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ This evidence precludes a finding of

non-functionality as a matter of law.  *Honeywell Int'l, Inc.*, 45 F. Supp. 3d at 997;

*Goddard, Inc.*, 291 F. Supp. 2d at 1050.

> **g. "The reflective finish on the inner side of the dish configured to emanate a distinctive orange glow on the dish surface"**

Presto admits ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████ This evidence precludes a finding of non-functionality as a matter of law.

*Aromatique*, 28 F.3d at 874 ("pillow-like shape" of product packaging functional because

it is "merely the consequence of using ordinary, unprotectable" bags)

> **h. The "metallic finish on the outer side of the dish"**

Presto fails to demonstrate non-functionality of this feature.  Presto offers no

expert analysis on this alleged design element. ██████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████ This evidence

precludes a finding of non-functionality as a matter of law.  *Honeywell Int'l, Inc.*, 45 F.

Supp. 3d at 1000 n.22.

### 2. Presto fails to show that its HEATDISH packaging is non-functional.

Presto fails to demonstrate that its HEATDISH packaging is non-functional.

Presto's alleged packaging trade dress consists of a picture of the product, a bullet-point

list of features, and a red, black, and white color scheme.  These are functional elements

of any product packaging or display; they inform consumers as to what the consumer is

buying.  *See, e.g., Aromatique*, 28 F.3d at 873 (product packaging that displays the

product is functional because "consumers want to see" the product "before they purchase

it").  ████████████████████████████████████████████

██████████████████████████ Restricting their use would unduly impair

competition. *Aromatique*, 28 F.3d at 873.

### 3. Presto fails to show that its HEATDISH sale display is non-functional.

Presto similarly fails to show that its sale display is non-functional.  Presto's

alleged display trade dress consists of a platform upon which the product is angled so that

consumers can view it, with the product operating so that consumers can experience it.

(Dkt. 1 ¶ 55.)  These features are functional elements that simply inform consumers as to

what the consumer is buying.  *Goddard, Inc.,* 291 F. Supp. 2d at 1050 (a product display

is functional in that it "draw[s] the attention of the customer," away from other products

"which might distract, or frustrate, a potential sale"). ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████   Allowing Presto trade dress rights in such generic display

features would unduly impair competition. *Aromatique*, 28 F.3d at 873.

### C.   Presto Fails to Present Any Evidence To Support A Finding Of A Likelihood of Confusion.

Presto's trade dress claims also fail because Presto fails to present evidence

sufficient to raise a genuine issue of material fact that U.S. Merchants' THE HEAT

MACHINE heater, packaging, or sale display "create[] a likelihood of confusion,

deception, or mistake among an **appreciable** number of ordinary buyers." *Duluth News-*

*Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) (emphasis added).

Ultimately, "the court must be satisfied that **substantial numbers** of customers are likely

to be confused." *Munsingwear Inc. v. Jockey Int'l, Inc.,* No. 4-93-538, 1994 U.S. Dist.

LEXIS 8243, at *8-9 (D. Minn. Apr. 21, 1994) (emphasis added).

In determining whether a likelihood of confusion exists, the Eighth Circuit

considers the following factors:

(1) the strength of the owner's trade dress;

(2) the similarity between the owner's trade dress and the alleged
infringer's trade dress;

(3) the degree to which the products compete with each other;

(4) the alleged infringer's intent to 'pass off' its goods as those of the trade
dress owner;

(5) incidents of actual confusion; and

(6) the type of product, its costs and conditions of purchase.

*Insty\*Bit, Inc. v. Poly-Tech Indus.*, 95 F.3d 663, 670 (8th Cir. 1996).  These factors "do not operate in a mathematically precise formula; rather, [courts] use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion."  *Duluth News-Tribune*, 84 F.3d at 1096.

> **1.    Presto fails to present evidence demonstrating actual confusion among consumers.**

Presto fails to present a survey, testimony, or research demonstrating consumer confusion.  The absence of this evidence raises a strong inference that it would have been (or was) unfavorable.  *See Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994) ("The lack of survey evidence counts against finding actual confusion"); *Essence Commc'ns, Inc. v. Singh Indus., Inc.*, 703 F. Supp. 261, 269 (S.D.N.Y. 1988) ("[F]ailure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion cannot be shown.")

Further, Presto presents no evidence whatsoever of consumer confusion—either through a survey or via instances of actual, actionable confusion—that demonstrate U.S. Merchant's product design, packaging, or sale display is likely to cause consumer confusion.  The absence of this evidence is a "powerful indication" that there is no likelihood of confusion.  *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999).  Indeed, courts in this district regularly grant summary judgment of no likelihood of confusion where the plaintiff, after having the benefit of discovery, fails to provide any evidence of consumer confusion at the summary judgment stage.  *See, e.g., Scentsy, Inc.*

30

*v. Reshare Commerce*, LLC, No. 12-CV-268 (RHK/SER), 2013 U.S. Dist. LEXIS 168073, at *12 (D. Minn. Oct. 21, 2013) ("Due to the lack of *any* evidence of actual confusion, this factor weighs *strongly* in favor of a finding of no likelihood of confusion") (emphasis added); *Jalin Realty Capital Advisors, LLC*, 917 F. Supp. 2d at 938 (granting summary judgment where plaintiff had no evidence of consumer confusion); *Boo, Inc. v. Boo.com Grp. Ltd.*, No. 00-1872 (PAM/JGL), 2002 U.S. Dist. LEXIS 3516 (D. Minn. Feb. 21, 2002) (same).  Even evidence of *de minimis* or "several" instances of actual confusion are insufficient to survive summary judgement.  *See, e.g., Duluth News-Tribune*, 84 F.3d at 1096; *Munsingwear Inc.*, 1994 U.S. Dist. LEXIS 8243, at *8-9; *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1151-52 (D. Minn. 2001); *LTJ Enters. v. Custom Mktg. Co.*, LLC, 168 F. Supp. 3d 1202, 1216 (D. Minn. 2016).

After years of litigation, Presto's alleged confusion evidence consists solely of (1) allegedly misdirected product returns and mislabeled receipts; (2) hearsay statements of purported, unidentified confusion; and (3) a *de minimis* number of allegedly misdirected inquiries received by Presto's customer service team. (*See* Manske Decl. Ex. GG (Jan. 31, 2020 Suppl. Resp. to Interrogatory No. 7).)  None of this evidence is sufficient to raise a genuine issue of material fact of a likelihood of confusion.

### a. Allegedly misdirected returns and mislabeled receipts do not demonstrate consumer confusion.

Presto contends that (1) **Costco** warehouse personnel mistakenly sent U.S. Merchants' parabolic heaters in Presto HEAT MACHINE packaging" to Presto's return

center, and (2) **Costco** personnel mistakenly labeled receipts for purchases of U.S. Merchants' heater with the HEATDISH name. (*Id*.)  This evidence is insufficient as a matter of law.

*First,* it is not probative of **consumer** confusion.  The "relevant confusion to be avoided is that which affects **purchasing decisions**, not confusion generally."  *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1152 (internal citation omitted) (emphasis added); *see also Children's Factory, Inc. v. Benee's Toys, Inc.,* 160 F.3d 489, 496 (8th Cir. 1998) ("With respect to the mistyped invoices, the district court correctly noted that while the mistakes may prove that [**the party's**] **agents** typed product names incorrectly … the mistakes do not prove that **customers** were confused") (emphasis added).  ▮

▮

▮

*Second*, there is no evidence in the record that either Costco warehouse personnel (or other Costco personnel) involved in programming the computers that generated the errant receipts were consumers of either party's products.  ▮

▮

▮

▮

### b. "Scuttlebutt" is not consumer confusion.

Presto alleges— ▮ —that at some unspecified time unidentified Costco employees directed unidentified Presto store "monitors" to a U.S. Merchants THE HEAT MACHINE heater when the "monitors" asked to see a

HEATDISH product. (*Id.* Ex. GG; Ex. A (Cohen Tr. 309).)  Even if these self-serving hearsay reports are true, any such actions by Costco employees are irrelevant for the same reasons other actions by Costco employees are irrelevant—it is not evidence of **consumer** confusion.  *Children's Factory, Inc.*, 160 F.3d at 496.

Further, a plaintiff's uncorroborated recollection of other persons' alleged confusion is unreliable and inadmissible hearsay.  *See Vitek Sys. v. Abbott Labs., Inc.*, 675 F.2d 190, 193 (8th Cir. 1982); *Frosty Treats, Inc.*, 426 F.3d at 1009-10; *Duluth News-Tribune*, 84 F.3d at 1098 ("[T]he vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion'"); *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1152 ("[E]vidence of e-mails, telephone calls and misdirected mail is inadmissible hearsay….").

### c. Presto's inquiry evidence is insufficient as a matter of law.

Finally, Presto cites two email chains that purport to show individuals contacting Presto about a U.S. Merchants heater when (according to Presto) they meant to discuss Presto's HEATDISH heater. (*Id.* Ex. GG; Ex. RR; Ex. SS)  This evidence, too, fails as a matter of law.

█████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Thus, Presto itself chose not to obtain any evidence regarding the senders of these emails beyond the email chain themselves.

*Second,* there is no indication that the sender of either email was confused due to THE HEAT MACHINE name, product design, packaging, or display.  Presto has sold its HEATDISH parabolic heaters at Costco for over 30 years, and both emails show individuals inquiring with Presto long after U.S. Merchants' heater was last sold in Costco, ████████████████████████████████████ . ████████████████

████████  *See Rainbow Play Sys.*, 364 F. Supp. 2d at 1035 ("[N]either the e-mail itself nor any other proffered evidence demonstrates that any [act of infringement] formed the basis for [an] e-mail" purporting to show confusion).

*Third,* even if the court were to credit the two email chains as probative of consumer confusion, they alone are insufficient as a matter of law.  "Isolated incidents of actual confusion that occur initially upon the creation of a potentially confusing mark are insufficient to establish a genuine issue of material fact as to the likelihood of confusion." *Duluth News-Tribune*, 84 F.3d at 1098-99 (emphasis added) (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3rd Cir. 1978) (holding that nineteen misdirected letters in four years were insufficient to establish likelihood of confusion).

In sum, Presto fails to present sufficient evidence of actual confusion. U.S. Merchants produced "sufficient evidence in response [to Presto's purported confusion evidence], providing reasonable explanation and serving to discount for these isolated instances of confusion" such that this Court may find Presto's evidence insufficient as a

matter of law. *Woodsmith Publ'g Co . v. Meredith Corp.,* 904 F.2d 1244, 1249 (8th Cir. 1990).

### 2. All other likelihood of confusion factors favor U.S. Merchants.

#### a. Presto's alleged trade dress is weak.

"Strong and distinctive" trade dress "is entitled to greater protection than [] weak or commonplace" trade dress. *Frosty Treats, Inc.*, 426 F.3d at 1008. As noted above, Presto fails to show that its purported trade dress is distinctive; it should not be entitled to any protection. *Id*. (the "use of a clown on ice cream trucks is hardly novel" and is weak).

#### b. The parties' products, packaging, and displays are dissimilar.

Presto's alleged trade dress and U.S. Merchants' product, packaging, and display are visually distinct. (*See* Manske Decl. Ex. NN (¶¶ 215-64).) Most strikingly, U.S. Merchants' heater, packaging, and display all prominently feature U.S. Merchants' "Greenmade" and THE HEAT MACHINE logo and brand names. Presto's HEATDISH heater, on the other hand, prominently displays its Presto and HEATDISH logo and brand names. (*Id*. ¶¶ 215, 247, 248, 255, 262.) The use of trademarks and brand names creates visually distinct products that reduces any likelihood of confusion. *See Luigino's, Inc. v. Stouffer Corp.,* 170 F.3d 827, 831 (8th Cir. 1999).

#### c. The parties' products were sold at different price points.

█████████████████████████████████████████████████

███████████████████████████. In addition to their distinct appearances, customers were likely to recognize the difference in the products based on this price disparity,

reducing competitive proximity. *See Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, No. 03 CV 2420 (RMB), 2006 U.S. Dist. LEXIS 25291, at *26 (S.D.N.Y. May 1, 2006). Further, the heaters were moderately priced, which weighs against confusion. *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1153 ("the greater the cost of the product or service, the more time and effort consumers are expected to expend when making decisions, and therefore the likelihood of confusion decreases")

### d. U.S. Merchants did not intend to confuse consumers.

A defendant's prominent use of its own branding weighs strongly against any intent to confuse. *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) (both parties use of house marks in a "prominent manner" weighed against an intent to confuse); *Aromatique, Inc.*, 28 F.3d at 871; *Frosty Treats, Inc.*, 426 F.3d at 1009; *Clam Corp. v. Innovative Outdoor Sols., Inc.*, No. 08-5895(DSD/AJB), 2008 U.S. Dist. LEXIS 100938, at *9 (D. Minn. Dec. 15, 2008). Here, U.S. Merchants emblazoned its "Greenmade" logo and THE HEAT MACHINE brand name on the product, packaging, and display. (Manske Decl. Ex. NN (¶¶ 215, 247, 248, 255, 262).) ██████████

████████████████████████████████████████████████████

████████████████████████. These actions weigh against an inference of intent to confuse. *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1152.

## II.   PRESTO'S TRADEMARK INFRINGEMENT CLAIM (COUNT 4) FAILS.

To prevail on its trademark claim, Presto must prove, *inter alia*, that there is a likelihood of confusion between its HEATDISH mark and U.S. Merchants' THE HEAT MACHINE mark. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th

Cir. 2009).  Presto must satisfy the same likelihood of confusion elements discussed

above. *Supra* at 29-30.  Presto fails to do so.

### A.     Presto's HEATDISH Mark Is Descriptive And Weak.

Trademarks are classified into one of four categories: (1) generic, (2) descriptive,

(3) suggestive, or (4) arbitrary or fanciful.  *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483,

485 (8th Cir. 1991).  Descriptive marks—the "weakest protectable mark"—are those

marks that "designate[] the characteristics, qualities, or features of the product[.]" *Fair*

*Isaac Corp. v. Experian Info. Solutions Inc.*, 645 F. Supp. 2d 734, 757 (D. Minn. 2009).

Presto's HEATDISH mark is descriptive. Presto's HEATDISH mark describes the

dominant features of a parabolic **dish** heater used to provide **heat**. ███████████

███████████████████████████████████████████████████

███████████████

Evidence of third party usage of similar marks may show that a mark "is relatively

weak and entitled to a narrower scope of protection."  *General Mills, Inc. v. Kellogg Co.*,

824 F.2d 622, 626-627 (8th Cir. 1987); *see also Everest Capital Ltd. v. Everest Funds*

*Mgmt, LLC*, 393 F.3d 755, 761 (8th Cir. 2005) (no likelihood of confusion where a

substantial number of companies in various industries used marks containing "Everest" in

various forms).  Not surprisingly, the term "HEAT" is widely used by third parties in

marks associated with heaters.  The federal register alone includes the following marks

each of which are associated with heaters:

| Trademark | Reg. No. |
|---|---|
| UNIQUE HEAT | 5635489 |
| BIG HEAT | 5203905 |
| HEAT FORCE | 5402539 |
| HEAT BUD | 4682778 |
| MY HEAT | 3887815 |
| POWERHEAT | 3915061 |
| PROFUSION HEAT | 3765116 |
| SURROUND HEAT | 2216584 |
| VORTEX HEAT | 1736374 |
| HEAT WAGON | 1203486 |
| HEAT MATE | 3965088 |
| IQ HEAT | 5008285 |
| HEAT TREND | 4372077 |

(Manske Decl. Exs. GGG-NNN.) Significantly, in each of the above-identified registrations, the registrant disclaimed exclusive use of the descriptive term HEAT— further signaling that Presto does not have an exclusive right to use HEAT in connection with heaters. Presto's HEATDISH mark is descriptive and weak.

### B.    The parties' marks are dissimilar.

The limited point of similarity between the parties' marks—use of the term "heat"—cannot give rise to any likelihood of consumer confusion. Descriptive marks are entitled to only limited protection, and courts have consistently found that descriptive points of similarity do not give rise to a likelihood of consumer confusion as a matter of

law. *See, e.g., Luigino's Inc.*, 170 F.3d at 827 (LEAN CUISINE and MICHELINA'S

LEAN N TASTY); *Burger Chef Systems, Inc. v. Sandwich Chef, Inc.*, 608 F.2d 875

(C.C.P.A. 1979) (SANDWICH CHEF and BURGER CHEF).

The lack of confusing similarity is further demonstrated by the fact that the

USPTO registered two separate U.S. Merchants trademarks incorporating the term THE

HEAT MACHINE. (Manske Decl. Exs. Z-AA.)  The USPTO searched registrations and

pending applications for any mark that could be confusingly similar to U.S. Merchants'

marks, (*see* TMEP § 1207.01) and it did not cite Presto's HEATDISH mark (or any other

mark) as being confusingly similar. (Manske Decl. Exs. Z-AA.)

Further, any comparison of the marks must focus not on superficial similarities but

on how the marks "would appear to the consumer." *ConAgra, Inc. v. Geo. A. Hormel &*

*Co.*, 784 F. Supp. 700, 715 (D. Neb. 1992).  Here, the parties' marks are highly dissimilar

as used in the marketplace:



(Dkt. 1 ¶¶ 24-25.)

These differences in the parties' presentations of their marks, including the fonts, design elements, color schemes, and surrounding context, make the marks easily distinguishable to consumers. *See Frosty Treats Inc.*, 426 F.3d at 1008; *Everest Capital Ltd.*, 393 F.3d at 761.

Finally, the parties each prominently place their respective PRESTO and GREENMADE house marks alongside the product names. *See supra* at 36. U.S. Merchants' "Greenmade" mark makes clear that THE HEAT MACHINE is associated with U.S. Merchants—not Presto—lessening the potential for consumer confusion. *Progressive Distribution Servs. v. UPS, Inc.,* 856 F.3d 416, 433 (6th Cir. 2017).

### C.   U.S. Merchants did not intend to confuse any consumer.

There is no evidence that U.S. Merchants intended to confuse any consumer with regard to THE HEAT MACHINE brand name. ████████████████████████ ███████████████████████████████████████████. Moreover, U.S. Merchants' THE HEAT MACHINE trademarks registered in 2019. (*Id*.)  This is strong evidence that U.S. Merchants did not intend to confuse any consumers. *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005).[6]

---

[6] Presto's Deceptive Trade Practices Act Claim (Count 10) fails as a matter of law.  In order to prevail on a claim under Minn. Stat. § 325D.44, a plaintiff "must show likelihood of confusion." *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1153. Presto cannot do so, and this claim must be dismissed. *Id*. ("grant of summary judgment to Defendants on the issue of likelihood of confusion necessitates dismissal of [Minn. Stat. § 325D.44] claim[] as well.")

### III.   PRESTO'S FALSE DESIGNATION CLAIM (COUNT 5) FAILS.

The elements of a Lanham Act false designation of origin claim are the same as for trade dress infringement under Lanham Act.  *See Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1018 (D. Minn. 2004).  Presto's false designation of origin claim fails for the same reasons Presto's trademark and trade dress claims fail.

### IV.   PRESTO'S COPYRIGHT CLAIMS (COUNT 6) FAIL.

A plaintiff alleging copyright infringement must first establish ownership of a valid copyright.  *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Honeywell Int'l, Inc*., 45 F. Supp. 3d at 1007.  Presto fails to do so.

#### A.   Presto's Copyright Registration is Inaccurate And Does Not Evidence Ownership of a Valid Copyright.

When a registered work is "based on or incorporate[s]" a preexisting work, the applicant must identify any preexisting work or works that it is based on or incorporates. 17 U.S.C. § 409(9).  Proper registration is important because a plaintiff cannot bring a "civil action for infringement of [a] copyright in any United States work" until "preregistration or registration of the copyright claim has been made" in accordance with the Copyright Act. 17 U.S.C. § 411; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  A registration will not satisfy this requirement if it contains inaccurate information that "was included on the application for copyright registration with

knowledge that it was inaccurate; and the inaccuracy of the information, if known, would have caused the Register to refuse registration."[7] 17 U.S.C. § 411(b)(1).

There is no dispute of material fact that Presto's copyright registrations are inaccurate. Presto (erroneously) claims sole and complete authorship of its 1997 and 2016 instruction manual copyrights. (*Id*. Ex. UU (section 6, failing to identify any derivative work); Ex. VV.) Presto similarly claims sole authorship over its 2018 product packaging copyright. (*Id*. Ex. WW.)  However, all three purportedly copyrighted works contain a substantial amount of text authored by UL. (*See Id*. Ex. XX; Ex. YY.)

Presto cannot meaningfully dispute knowledge of the inaccuracy in its copyright registrations.  UL authors and requires explicit safety text in all UL-approved manuals and packaging. (*Id*. Ex. NN (¶¶ 266, 271).) ████████████████████████
████████████████████████████

Moreover, this is not the first time that Presto has sought to pass off UL's content as its own.  In *Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*, Presto accused another competitor, Hamilton Beach, of infringing Presto's copyright in its "Saladshooter" product instruction manual. No. 88 C 10567, 1990 U.S. Dist. LEXIS 4288 (N.D. Ill. Apr. 13, 1990). In *Hamilton Beach*, the court granted summary judgment in favor of Hamilton

---

[7] § 411(b) provides that, "[i]n any case in which inaccurate information described under [§ 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." § 411(b)(2) (emphasis added). Though § 411(b)(2)'s referral provision is rarely invoked, district courts have held that it is "mandatory in nature." *Palmer/Kane LLC v. Rosen Book Works, LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (collecting cases).

Beach, observing that it could not "infringe upon Presto's manual, since both are derived from a third source, UL" as is "required in order to satisfy UL's requirements." *Id*.  This same analysis applies here.

### B.   Presto Cannot Show Ownership of Copyrightable Material.

Absent its (invalid) copyright registration, there is nothing in the record to support Presto's ownership of valid copyrights.  Facts and ideas are not entitled to copyright protection; anyone may copy either freely.  *Feist Pub., Inc*., 499 U.S. at 350.  "Copyright protection will be denied to even some expressions of ideas if the idea behind the expression is such that it can be expressed only in a very limited number of ways." *Honeywell Int'l Inc. v. ICM Controls Corp.,* No. 11-cv-569 (JNE/TNL), 2017 U.S. Dist. LEXIS 11692, at *5-6 (D. Minn. Jan. 26, 2017).

Here, unrebutted expert analysis confirms that Presto's instruction manual and packaging copyright consists of "factual information that can be effectively expressed in only a limited number of ways." (Manske Decl. Ex. NN (¶¶ 269, 272).)  Mr. Jobin, who himself has drafted and edited instruction manuals for small consumer appliances, explained that it is "important to include simple, readily understandable instructional language that does not counter or confuse" the UL-mandated text, and that a manual "must necessarily reference product features and describe their use." (*Id*. ¶ 267).  In the context of a small consumer appliance such as a parabolic heater, this will include language pertaining to adjusting the heat settings, locating the heater, and operating the heater in a manner that promotes safe operation. (*Id*. ¶ 268.)  Presto cannot demonstrate that it possesses copyright rights over text describing these functions.

*Hamilton Beach* is, again, instructive.  After discounting the UL-required text from Presto's instruction manual, the court noted that the remaining text of Presto's instruction manual contained facts that could be expressed only in a limited number of ways:

> The manuals do not contain identical wording, and the names of sections are different, although they clearly contain similar concepts and ideas. For example, Presto's manual contains a section entitled 'Helpful Hints' which advises the user that 'all food slices and shreds better when it is fresh and firm.' Hamilton Beach's manual contains a section named 'Hints for Best Use' which states, 'Fresh, firm foods give better slicing and shredding results.' These concepts are purely factual statements, are worded similarly but not identically, and cannot easily be otherwise expressed. [T]he fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity. While there are several instances where both manuals state similar facts in similar ways, we find that, because they make factual statements not easily expressed in substantially dissimilar ways, this alone does not infringe upon Presto's copyright.

*Hamilton Beach, Inc.*, 1990 U.S. Dist. LEXIS 4288 at *8-9 (internal citations omitted). The court further acknowledged that instruction manuals are commonly organized "in this way because it is the logical way to present the factual information contained in these manuals." *Id*. at *10.  As in *Hamilton Beach*, summary judgement is appropriate.

## V.     PRESTO'S TORTIOUS INTERFERENCE CLAIM (COUNT 7) FAILS.

To prevail on its claim for tortious interference with prospective business relations, Presto mush show, *inter alia*:

> (1) the existence of a reasonable expectation of economic advantage or benefit belonging to plaintiff;
>
> (2) that the defendants knew of that expectation;

44

(3) that defendants wrongfully and without justification interfered

with plaintiff's reasonable expectation;

(4) that in the absence of the defendants' wrongful act, it is reasonably

probable that plaintiff would have realized the economic advantage or

benefit; and

(5) that plaintiff sustained damages.

*Munro v. Lucy Activewear, Inc.*, No. 16-79 (JRT/KMM), 2016 U.S. Dist. LEXIS 135692,

at *23-25 (D. Minn. Sep. 29, 2016).  Presto fails on every element of its claim.

Presto must, in the first instance, "offer evidence showing a reasonable probability

of a future economic relationship, as opposed to a mere hope or wish."  *Fagen, Inc. v.*

*Exergy Dev. Grp. of Idaho, L.L.C.*, No. 12-2703 (JRT/SER), 2016 U.S. Dist. LEXIS

135896, at *37 (D. Minn. Sep. 29, 2016) (internal quotations omitted).  ███████

██████████████████████████████████████████████

██████████████████████.  ████████████████████

██████████████████████████████████████████

████████████████████  Unsurprisingly, then, Presto presents no

evidence that U.S. Merchants was aware of any such (non-existent) expectation.  ████████

████████████████████████████████████████████

██████████████████████████████████████████.

**A.      U.S. Merchants did not commit any wrong or unjust act.**

Presto cannot demonstrate any wrongful and unjustified "interference."  As

explained above, U.S. Merchants' sale of THE HEAT MACHINE did not infringe

Presto's rights, *see supra* at 10-40, and Presto points to no other allegedly tortious conduct. *Fagen, Inc.*, 2016 U.S. Dist. LEXIS 135896 at *38.

### B. Presto fails to present evidence of any cognizable injury.

Presto suffered no injury. Summary judgment is appropriate where, as here, "the record does not demonstrate any damages stemming" from a defendant's alleged interference. *Rainbow Play Sys., LLC*, 364 F. Supp. 2d at 1040.

Presto claims that "[a]pproximately 1,435 HEATDISH products remain unsold resulting from U.S. Merchants' interference." (Manske Decl. Ex. GG.) Presto provides no evidence to support this allegation, and Presto's proffered damages expert makes no mention of this alleged harm. (*Id*. Ex. CC (Degen Report ¶ 24).) Indeed, Presto's claim of "unsold" product is rebutted by Costco's testimony. ████████████████████

████████████████████████████████████████

████████████████████████████

## VI. PRESTO'S UNFAIR COMPETITION CLAIM (COUNT 8) FAILS.

Presto bases its unfair competition claim largely on its trademark and trade dress claims (*see* Dkt. 1 ¶ 124), which fail for the reasons described above. Presto also asserts that U.S. Merchants falsely advertises "the efficiency of [THE HEAT MACHINE] product" via statements that extoll THE HEAT MACHINE as an "economical" choice because it "feels like three times the heat yet costs a third less to operate." (Dkt. 1 ¶ 125.) Presto's false advertising claim fails as a matter of law.

To establish a false advertising claim, Presto must establish:

(1) a false statement of fact by U.S. Merchants about its own or
another's product;

(2) the statement actually deceived or has the tendency to deceive a
substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the
purchasing decision;

(4) U.S. Merchants caused its false statement to enter interstate
commerce; and

(5) Presto has been or is likely to be injured as a result of the false
statement.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

### A.    Presto fails to show a "false statement of fact."

Presto abandoned its false advertising claim in this case. Presto offers no evidence
that the phrase "it feels like three times the heat yet costs a third less to operate" is false.

Regardless, U.S. Merchants' promotional statement is puffery and cannot support
a false advertising claim. How heat from THE HEAT MACHINE "feels" and costs to
operate are "not [] specific, measurable claim[s] and cannot be reasonably interpreted as
an objective fact." *Am. Italian Pasta Co. v. New World Pasta Co.,* 371 F.3d 387, 391
(8th Cir. 2004) ("America's Favorite Pasta" is non-actionable puffery); *Browe v. Evenflo
Co.*, No. 14-4690 ADM/JJK, 2015 U.S. Dist. LEXIS 82540, at *14 (D. Minn. June 25,
2015); *In re Mun. Stormwater Pond*, No. 18-cv-3495 (JNE/KMM)1, 2019 U.S. Dist.
LEXIS 227887, at *11 (D. Minn. Dec. 20, 2019) (statement that coal tar sealants
"protect" paved surfaces, and "extend their service life, and enhance their appearance,"
deemed puffery); *Lenscrafters, Inc. v. Vision World,* 943 F. Supp. 1481, 1489 (D. Minn.

1996) (collecting examples of puffery).  "Feels like three times the heat yet costs a third

less to operate" is non-actionable marketing speech.

**B.    Presto fails to show that the statement "three times the heat" deceived consumers or that it was likely to influence a purchasing decision.**

Presto provides no evidence that consumers were deceived by U.S. Merchants'

"three times the heat" statement, nor any evidence that any such purported deception is

likely to influence a purchasing decision.  ██████████████████████

████████████████████████████████████████████████

█████████████████████████    Indeed, Presto failed to adduce **any**

evidence of consumer perception or behavior.  Presto's false advertising claim fails as a

matter of law.  *See Glob. Traffic Techs., LLC v. Emtrac Sys.*, 946 F. Supp. 2d 884, 908

(D. Minn. 2013) (summary judgment granted where plaintiff had "not offered any

evidence of consumer deception, [and] is missing an essential element of a false

advertising claim").[8]

---

[8] Presto's Common Law Unfair Competition claim (Count 9) fails as a matter of law. Presto simply realleges the facts purporting to support all of its claims, and then asserts that U.S. Merchants unfairly competed by using Presto's alleged trade dress, trademarks, and copyright. (Dkt. 1. ¶¶ 132-33.) For the reasons set forth above, this claim must be dismissed. *See Goddard*, 291 F. Supp. 2d at 1035. Similarly, Presto's Unfair Trade Practices Act claim (Count 11) fails. In evaluating Presto's UTPA claim, the court applies the same analysis as a claim for false advertising under the Lanham Act. *Lenscrafters, Inc.*, 943 F. Supp. at 1488. Here, again, Presto bases this claim solely on its Lanham Act allegations (Dkt. 1 ¶ 153), which fail for the reasons described above.

## VIII.  U.S. MERCHANTS IS ENTITLED TO SUMMARY JUDGMENT ON PRESTO'S REQUEST FOR ENTRY OF AN INJUNCTION.

As detailed above, each of Presto's claims fail on the merits.  Nevertheless, Presto vigorously pursued this case in the hopes of obtaining an injunction prohibiting U.S. Merchants from selling the version of THE HEAT MACHINE parabolic heater and associated packaging referenced in Presto's Complaint.  But there is no basis for granting Presto such an injunction.  ███████████████████████ ███████████████████████████████████████████████, and Presto has repeatedly confirmed that its claims apply **only** to that product—not any subsequent version sold by U.S. Merchants. (Manske Decl. Ex. FFF (Jan. 6, 2020 Resp. to Fourth Set of Interrogatories).)  Indeed, Presto's counsel advised Magistrate Judge Thorson that a later 2019/2020 version of THE HEAT MACHINE was "unequivocally" not at issue in this case. (*Id*. Ex. AAA (Tr. 57:20-22; 58:9-13).)

"Generally, a claim is moot when changed circumstances already provide the requested relief and eliminate the need for court action."  *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (internal quotations omitted).  ██████ ████████████████████████████████████████████████ ███████████████████████████████████████████

There is **no evidence** that U.S. Merchants possesses or has any future intention of selling that accused product in the future.  As such, Presto's request for an injunction is moot and there is no threat of irreparable harm to support an injunction. *See W. Licensing Corp. v. Eastlaw, LLC*, No. 00-2645 (JRT/FLN), 2001 U.S. Dist. LEXIS 26150, at *13-14 (D.

Minn. May 9, 2001) (defendant's "cessation of all of the conduct that [plaintiff] claimed warranted an injunction" eliminated "any credible threat of irreparable harm"); *Nichia Am. Corp. v. Seoul Semiconductor Co.*, No. CV 07-8354 PA (CWx), 2008 U.S. Dist. LEXIS 129234, at *31 (C.D. Cal. Oct. 7, 2008) ("The fact that the product at issue … is not sold in the [U.S.] and is no longer even manufactured," shows lack of justification for an injunction).

## **CONCLUSION**

For the reasons set forth herein, U.S. Merchants' respectfully requests that the Court grant summary judgment against Presto's claims in their entirety.

DATED:  January 28, 2021 **ROBINS KAPLAN LLP**

By: *s/ Christopher K. Larus*
Christopher K. Larus (#226828)
clarus@robinskaplan.com
William E. Manske (#0392348)
wmanske@robinskaplan.com
George B. Ashenmacher (#397368)
gashenmacher@robinskaplan.com

800 LaSalle Ave., Ste. 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

*Attorneys for Defendant*