# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| National Presto Industries, Inc.,<br><br>　　　　　Plaintiff,<br>　v.<br><br>U.S. Merchants Financial Group, Inc.,<br>d/b/a Greenmade,<br><br>　　　　　Defendant. | Case No. 18-cv-03321 (SRN/LIB)<br><br>**DEFENDANT U.S. MERCHANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN EXCEPTIONAL CASE DESIGNATION AND AWARD OF ATTORNEYS' FEES** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ...................................................................................................... 4

I.    PRESTO FILED AND MAINTAINED THIS LAWSUIT FOR
      IMPROPER ANTI-COMPETITIVE PURPOSES ................................................. 4

II.   THROUGHOUT THIS CASE, PRESTO DEMANDED THAT U.S.
      MERCHANTS CEASE THE SALE OF "ANY" PARABOLIC HEATER. ........... 6

III.  U.S. MERCHANTS PREVAILED ON EVERY ONE OF PRESTO'S
      LANHAM ACT CLAIMS. ..................................................................................... 8

      A.    Presto failed to raise a genuine issue of material fact in support of its
            packaging and point-of-sale trade dress claims (Counts II – III). ................. 9

      B.    Presto failed to raise a genuine issue of material fact in support of its
            trademark infringement claim (Count IV). .................................................. 10

      C.    Presto failed to raise a genuine issue of material fact in support of its
            false advertising claim (Count VIII). ......................................................... 11

      D.    U.S. Merchants prevailed against Presto's "weak" product design
            trade dress claim at trial (Count I). ............................................................ 11

IV.   U.S. MERCHANTS PREVAILED ON PRESTO'S COPYRIGHT
      CLAIMS RESOLVED PRIOR TO TRIAL. ........................................................ 16

V.    PRESTO'S LITIGATION TACTICS UNREASONABLY INCREASED
      LITIGATION COSTS. ........................................................................................ 17

      A.    Presto's "shifting sands" approach to its trade dress contentions
            forced multiple rounds of motion practice and delayed trial. .................... 17

      B.    Presto's "shifting sands" approach extended to its copyright
            contentions ................................................................................................. 21

ARGUMENT .......................................................................................................... 23

VI.   THE COURT SHOULD DESIGNATE THIS CASE EXCEPTIONAL
      AND AWARD U.S. MERCHANTS ITS REASONABLE ATTORNEYS'
      FEES FOR DEFENDING AGAINST PRESTO'S BASELESS LANHAM
      ACT CLAIMS. ................................................................................................... 23

      A.    The totality of the circumstances, including the nature of Presto's
            motivations to drive U.S. Merchants entirely from the parabolic
            heater market, the objective unreasonableness of its claims, and its
            vexatious discovery conduct justifies an award of attorneys' fees. ........... 26

i

VII.   THE COURT SHOULD AWARD U.S. MERCHANTS ITS
       REASONABLE ATTORNEYS' FEES FOR DEFENDING AGAINST
       PRESTO'S BASELESS PACKAGING COPYRIGHT CLAIM AND FOR
       PRESTO'S GAMESMANSHIP CONCERNING DISMISSAL OF ITS
       2016 INSTRUCTION MANUAL CLAIM. ........................................................... 29

       A.   The totality of the circumstances, including the nature of Presto's
            motivations to drive U.S. Merchants entirely from the parabolic
            heater market, the objective unreasonableness of its claims, and its
            vexatious discovery conduct justifies an award of attorneys' fees. ............ 30

CONCLUSION ............................................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ................................................................................................ 28

*Jalin Realty Cap. Advisors, LLC v. Hartford Cas. Ins. Co.*,
  No. 11-CV165 (JRT/LIB), 2018 WL 3104238, at \*5 (D. Minn. Feb. 9,
  2018), *report and recommendation adopted*, No. 11-CV-165 (JRT/LIB),
  2018 WL 2230919 (D. Minn. May 16, 2018) ....................................................... 23, 24

*Killer Joe Nevada, LLC v. Does 1-20*,
  807 F.3d 908 (8th Cir. 2015) ................................................................................ 28

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) .......................................................................................... 28

*Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*,
  No. 14-CV-846, 2016 WL 2901735 (D. Minn. May 18, 2016) (Nelson,
  J.) ...................................................................................................................... 22, 23, 24

*Ninox Television Ltd. v. Fox Ent. Grp., Inc.*,
  No. 04-cv-7891 (DLC), 2006 WL 1643300 (S.D.N.Y. June 13, 2006) ..................... 29

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. at 557, 558 (2014) ................................................................................ 23, 24

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  783 F. App'x 707 (9th Cir. 2019) ......................................................................... 27

*Pearson v. Boydstun Metal Works, Inc.*,
  No. 06-cv-3844 DSD/JJG, 2008 WL 2152202, (D. Minn. May 22, 2008) ............... 29

*Safeway Transit LLC v. Disc. Party Bus, Inc.*,
  954 F.3d 1171 (8th Cir. 2020) ............................................................................. 22, 24

**Statutes**

15 U.S.C.
  § 1117 ................................................................................................................... 2
  § 1117(a) ............................................................................................................. 22, 24, 30
  § 1501 et. seq ................................................................................................... *passim*

17 U.S.C.
    § 101 -1401 (1976).........................................................................................27, 28, 30
    § 505................................................................................................3, 27, 28, 30

## Other Authorities

Fed. R. Civ. P.
    41(a)(2)..............................................................................................................22
    41(b)..................................................................................................................22
    54(d)(2) .............................................................................................................22
    68....................................................................................................................... 3

5 MCCARTHY ON TRADEMARKS § 30:101 (5th ed. 2022)........................................ 23

## INTRODUCTION

Plaintiff National Presto Industries, Inc. ("Presto") filed this lawsuit to prevent Defendant U.S. Merchants Financial Group, Inc. ("U.S. Merchants") from lawfully competing for business with the warehouse retailer Costco. For more than four years, Presto forced U.S. Merchants to defend against its meritless Lanham Act and copyright infringement claims. Throughout this case, Presto was explicit that its goal was not to protect its alleged intellectual property or prevent consumer confusion, but rather to prevent U.S. Merchants from selling **any** parabolic electric heater in the United States. Presto's pursuit of its meritless Lanham Act claims in support of this unlawful goal renders this case exceptional.

After years of litigation, this Court properly rejected the majority of Presto's meritless Lanham Act claims on summary judgment. Pursuant to U.S. Merchants' motion, this Court properly found that Presto failed to raise genuine issues of material fact in support of its claims that U.S. Merchants infringed Presto's HEATDISH trademark (Count IV), alleged trade dress rights in its product packaging (Count II) or point of sale display (Count III), or that U.S. Merchants engaged in false advertising (Count VIII).  Even though the Court allowed Presto's product configuration trade dress claim (Count I) to proceed to trial, the Court correctly observed at summary judgment that Presto's evidence of product configuration trade dress was "weak" and that many of the elements Presto claimed constituted its alleged trade dress were "standard fare" for parabolic electric heaters.

1

Despite this Court's summary judgment ruling, Presto demanded that U.S. Merchants cease the sale of **any** parabolic electric heater—regardless of design. Presto then pushed forward with a trial on the supposed merits of its trade dress claim. Following a two-week trial, this Court properly found that Presto had failed to demonstrate **any** of the elements necessary to prevail on its remaining Lanham Act claim, including that Presto had failed to demonstrate that its alleged trade dress was non-functional or that any aspect of its alleged trade dress had achieved secondary meaning.

Significantly, U.S. Merchants pointed out these very same flaws in Presto's claims at the outset of this case. Undeterred, Presto pushed forward with its goal to drive U.S. Merchants from the parabolic electric heater market. At each stage of this litigation, U.S. Merchants exposed Presto's Lanham Act claims as meritless. Presto should now be held to account for its improper pursuit of this litigation. The Court should find Presto's conduct exceptional under the standards of 15 U.S.C. § 1117 and order that U.S. Merchants is entitled to recover its costs, including reasonable attorneys' fees incurred in the defense of Presto's meritless Lanham Act claims.[1]

U.S. Merchants is likewise entitled to an award of its costs, including reasonable attorneys' fees incurred in connection with Presto's copyright infringement claims that were dismissed prior to trial. Presto's Complaint asserted infringement of three separate

---

[1] Pursuant to the Parties' Stipulation and this Court's Order (Dkt. 746), upon such a finding the parties will then submit separate briefing on the amount of such fees and costs to be awarded.

copyrighted works. On summary judgment, the Court properly dismissed Presto's claim for infringement of its product packaging copyright (Registration No. VA 2-127-830), finding as a matter of law that Presto had failed to even raise a genuine issue of fact whether the parties' packaging was substantially similar. Later, on the eve of trial, Presto advised that it no would longer pursue its claim for alleged infringement of its 2016 product instruction manual copyright (Registration No. 8-642-462). Despite this unilateral decision, it was only after multiple admonishments by this Court that Presto stipulated to the dismissal of this claim with prejudice. U.S. Merchants is indisputably the prevailing party on each of these copyright infringement claims. These meritless copyright infringement claims dismissed before trial were not truly the subject of any good faith dispute.[2] Accordingly, the Court should award U.S. Merchants its costs, including reasonable attorneys' fees incurred in defending against these meritless copyright claims pursuant to 17 U.S.C. § 505.

---

[2] Presto's copyright infringement claims dismissed before trial thus stand in stark contrast to the sole remaining copyright infringement claim the parties tried before a jury, which is the subject of separate post-trial briefing, including a motion for Judgment as a Matter of Law, or in the Alternative for a New Trial or Remittitur (filed contemporaneously herewith). Significantly, Presto pursued a trial on that sole remaining claim three years after U.S. Merchants extended a Rule 68 Offer of Judgment for $100,000, including the right to apply for an award of attorneys' fees. (*See* D-1158, attached as Exhibit A to the Declaration of William E. Manske filed herewith.)

## BACKGROUND

### I.     PRESTO FILED AND MAINTAINED THIS LAWSUIT FOR IMPROPER ANTI-COMPETITIVE PURPOSES.

For most of the last 30 years, Presto was the exclusive supplier of parabolic electric heaters to Costco Wholesale Corporation ("Costco"), and Costco has not offered any other parabolic electric heaters to its members. (Dkt. 589 at 1.) Over time, Costco came to see its relationship with Presto as "one-sided." [3] (*Id.* ¶ 64 (citing Tr. at 705:8-18).) Among other things, Presto repeatedly refused Costco's attempts "to reduce its costs associated with Presto" and similarly refused Costco's requests that Presto "stop sending its monitors to maintain the point-of-sale displays in [Costco] locations." (*Id.* ¶ 61 (citing Tr. at 646:1-21, 646:3-6, 646:12-21).) Costco was also concerned about unimpressive sales of Presto's parabolic electric heaters. (*Id.* ¶ 64.)

As a result of these concerns, Costco decided to seek an alternate supplier of parabolic electric heaters in certain test markets, and it approached U.S. Merchants with a request to develop an improved parabolic electric heater. (*See* Dkt. 589 ¶¶ 64-71, 75.) Working with an independent overseas manufacturer, U.S. Merchants developed an improved heater, which it later sold conspicuously marked with trademarks GREENMADE® and THE HEAT MACHINE®. (*Id.* at 2.) Costco purchased this model parabolic electric heater from U.S. Merchants and sold it during the 2018-2019 heater season at certain Coscto locations on a trial basis. (*Id.*) The record in this case clearly

---

[3] The trial exhibits cited herein refers to trial exhibits in the Trial Transcripts. (*See* Dkts. 732 to 736.) Quotations to the Trial Transcripts are referred to as "Tr. at __".

demonstrates that Presto was not happy about the prospects of losing business with its longstanding customer Costco.

Presto filed its Complaint on December 4, 2018, asserting a laundry list of claims including alleged infringement of its HEATDISH trademark, infringement of alleged unregistered trade dress in the design, packaging, and point-of-sale display of its parabolic electric heater, and false advertising. (Dkt. 1 [Counts I-IV, VIII].) Presto also asserted claims for infringement of various copyrights, including copyrights claimed in Presto's product packaging and its 2016 product instruction manual. (*Id.* [Count VI].)

Presto never served its Complaint on U.S. Merchants, and it never sought to raise any of its purported concerns with U.S. Merchants or Costco prior to filing suit. (*See* Dkt. 589 ¶¶ 122-124; Dkt. 581 ¶ 172.) Despite naming U.S. Merchants as the only defendant, Presto took the Complaint to Costco. U.S. Merchants only learned about this lawsuit through Costco. (Dkt. 589 ¶ 122; *see also* Tr. at 1036:17-1037:12.) In response to the lawsuit, Costco elected not to purchase U.S. Merchants' accused parabolic electric heater for the 2018-2019 heater season. (Dkt. 589 ¶ 125 (citing Tr. at 684:15-20).)

After U.S. Merchants learned of this lawsuit, on January 11, 2019, it wrote a detailed letter to Presto identifying various legal and factual deficiencies in Presto's Lanham Act claims. (Ex. D-68; Tr. at 1037:18-1039:18.) U.S. Merchants pointed out that Presto's assertion that the parties' trademarks were confusingly similar was unfounded given that "numerous other heaters sold in association with marks [] incorporate the term HEAT." (Ex. D-68 at 4.) U.S. Merchants observed that Presto's claim of trade dress rights in its product packaging was not supported by any meaningful factual assertions

and observed that "there is nothing inherently distinctive about packaging a product in a rectangular box with a white and red color scheme." (*Id.* at 4.) U.S. Merchants advised Presto that its "infringement claims," which included Presto's claim of trade dress protection in a simple point-of-sale display, appear based on "non-protectable functional" attributes. (D-68 at 2-3.) More broadly, U.S. Merchants pointed out that the product features Presto identified as its protectible trade dress were functional, "inherent aspects of *any* parabolic heater." (*Id.* at 3-4.)

Notwithstanding these deficiencies, U.S. Merchants' letter invited Presto to "provide a detailed list of the changes National Presto believes are appropriate" and relayed U.S. Merchants' assurance to "give the utmost good faith consideration to any specific changes that National Presto wishes to propose." (Ex. D-68 at 9; *see also* Dkt. 589 ¶ 123.) Presto never responded to this inquiry. (Dkt. 589 ¶ 124 (citing Tr. at 1037:18-1039:18).)

Despite receiving no response to its January 11, 2019 letter, U.S. Merchants made substantial changes to the design of its parabolic electric heater and associated packaging. (Tr. at 1039:22-1040:6; Ex. D-115A; Ex. D-115B.) U.S. Merchants made these changes because it sought to avoid an unnecessary dispute, not because it felt it had infringed any Presto intellectual property. (Tr. at 1039:22-1040:6.)

## II.   THROUGHOUT THIS CASE, PRESTO DEMANDED THAT U.S. MERCHANTS CEASE THE SALE OF "ANY" PARABOLIC HEATER.

Presto has been explicit about its goal of driving U.S. Merchants from the parabolic electric heater market. Significantly, Presto *never* claimed to have rights to all

6

designs of parabolic electric heaters and, in fact, presented evidence at trial of other such designs.[4] (*See* Dkt. 589 ¶ 249 ("Presto argues that the HeatDish is nonfunctional because, in general, parabolic heaters can be manufactured in alternative ways that exhibit distinct appearances.") Nevertheless, Presto demanded that as a condition of any settlement U.S. Merchants must agree to "cease the manufacture, sale and/or offer for sale **of any parabolic heater**." (*See* Tr. at 211:10-212:2; D-1160 (emphasis added).) U.S. Merchants viewed this demand for what it is—an unreasonable request to obtain relief outside of that Presto could ever obtain in this case. Still, U.S. Merchants ceased sale of the accused parabolic heater identified in Presto's Complaint—its 2018 parabolic electric heater. (Dkt. 589 ¶ 191.)

U.S. Merchants has not sold the 2018 version parabolic electric heater identified in Presto's Complaint since 2019. (*See* Dkt. 589 ¶ 125.) Thus, for more than four years, Presto pursued its meritless Lanham Act claims over a product that U.S. Merchants ceased selling after a single heater season.[5]

---

[4] Indeed, "the evidence at trial confirmed that many of Presto's competitors have adopted substantially similar components for their heaters." (Dkt. 589 ¶¶ 202 (citing P-67 (Comfort Zone); P-201A (Comfort Zone); P-201B (Holmes); P-563 (Oscillating Parabolic Heater); D-117 (Optimus); D-126A (Konwin); D-1200 (Duraflame)); 142, 143 (discussing Tienor testimony regarding third party parabolic electric heaters).

[5] Presto has been aware since 2019 that U.S. Merchants has sold a redesigned parabolic electric heater. (Tr. at 209:6-15.) Presto purchased a sample of the redesigned parabolic electric heater from a Costco location, but never asserted that U.S. Merchants' redesigned parabolic electric heater infringed its claimed trade dress or any other alleged intellectual property right. (Tr. at 211:1-4.) Moreover, it resisted discovery regarding the redesigned parabolic electric heater asserting that this redesigned heater was "wholly irrelevant" to this case. *See generally* Dkts. 145 (March 9, 2020 Hearing Tr.) and 393, 394, 463

After it ceased sale of the only accused product in this case, U.S. Merchants undertook to resolve this dispute. On December 24, 2019, in the midst of fact discovery, U.S. Merchants served two offers of judgment on Presto. These offers covered every claim in the case. U.S. Merchants offered a judgment of dismissal in Presto's favor in the amount of $100,000 on its copyright claims, including a separate right to seek an award of attorneys' fees. (Manske Decl., Ex. A [D-1158].) U.S. Merchants offered a judgment of dismissal in Presto's favor in the amount of $50,000, inclusive of costs and attorney's fees, to resolve all other claims in this case, including Presto's meritless Lanham Act claims. (Manske Decl., Ex. B [D-1159].) Presto did not accept (or even respond to) these offers. And it is clear why: Presto's goal in this lawsuit has always been to force U.S. Merchants out of the parabolic electric heater market.

## III.   U.S. MERCHANTS PREVAILED ON EVERY ONE OF PRESTO'S LANHAM ACT CLAIMS.

U.S. Merchants identified the clear deficiencies in Presto's Lanham Act claims at the outset of this case. (*See* D-68.) Despite the obvious deficiencies in these claims identified by U.S. Merchants, Presto made no concessions nor withdrew a single claim through fact and expert discovery.

U.S. Merchants filed a motion for summary judgment on January 28, 2021. (Dkt. 240, Dkt. 244.) The Court ruled on U.S. Merchants' motion on June 18, 2021, dismissing

---

(Presto's Motion in Limine to Exclude References to Defendant's 2019 THE HEAT MACHINE Heater, and U.S. Merchants' Memorandum in Opposition); Dkt. 537 (Pre-Trial Hearing Tr.) at 20.)

the majority of Presto's Lanham Act claims and Presto's claim alleging infringement of its product packaging copyright. (Dkt. 335.)

### A. Presto failed to raise a genuine issue of material fact in support of its packaging and point-of-sale trade dress claims (Counts II – III).

Counts II and III of Presto's Complaint alleged infringement of Presto's unregistered alleged trade dress in its packaging and point-of-sale display for its parabolic electric heater. (Dkt. 1 ¶¶ 53-81.) In its Summary Judgement Order, the Court determined that Presto had failed to raise a genuine issue of material fact in support of its claims that U.S. Merchants infringed Presto's claimed trade dress rights in Presto's packaging or point-of-sale display. (Dkt. 335 at 52, 55.) The Court recognized the same deficiencies in Presto's claims that U.S. Merchants identified to Presto at the outset of this case.

In U.S. Merchants' January 11, 2019 letter to Presto, U.S. Merchants explained that that "there is nothing inherently distinctive abut packaging a product in a rectangular box with a white and red color scheme." (Ex. D-68 at 4.) In its Summary Judgment Order, the Court observed much the same: "Presto does not explain which features of its trade dress are unique to its packaging, or how its packaging (viewed) as a whole markedly differs from competitors' packaging."[6] (Dkt. 335 at 49, n.24) Presto offered no consumer perception evidence whatsoever. (*Id.*)

---

[6] Although the Court did not reach the issue of functionality in its Summary Judgment Order, Ms. Cohen's own words written to Costco before this lawsuit was filed concede that the purpose of Presto's point-of-sale display is functional. According to Ms. Cohen, the purpose of the display is to enable the Costco member to "feel the heat" generated by a utilitarian heater display. (Tr. at 191:18-194:10 (Cohen testimony: "We are trying to

With respect to Presto's point-of-sale display, U.S. Merchants' January 11, 2019 letter advised that Presto's "infringement claims" appear based on "non-protectable functional" attributes. (D-68 at 2-3.) On summary judgment, the Court again agreed, observing that "a display featuring a sample of the product is 'dictated by the nature of the product,'" and "Presto's display appears to be a mere 'refinement' of other product displays." (Dkt. 335 at 54.) And again, Presto offered no consumer perception evidence to support its contentions. (*Id.* at 55)

**B.  Presto failed to raise a genuine issue of material fact in support of its trademark infringement claim (Count IV).**

In Count IV of its Complaint, Presto alleged that U.S. Merchants' federally registered trademark THE HEAT MACHINE® was confusingly similar to Presto's HEATDISH mark, because, *inter alia,* both marks incorporated the term HEAT. (Dkt. 1 ¶¶ 82-92.) The Court dismissed this claim on summary judgment, finding that Presto had failed to raise a genuine issue of material fact in support of its claim. (Dkt. 335 at 64.) In its Summary Judgement Order, the Court observed that Presto's HEATDISH trademark is "conceptually weak and further weakened by similar third-party marks" and that the Parties' marks are "dissimilar" such that there was no likelihood of confusion between U.S. Merchants' THE HEAT MACHINE trademark and Presto's HEATDISH trademark. (*Id.*) Once again, U.S. Merchants had identified these same obvious deficiencies in its January 11, 2019 letter. (Ex. D-68 at 4.)

---

sell product here. We're not trying to establish to the members that we have trade dress."); Ex. P-507; Ex. P-21 at -737 (noting that heat generated by the heater display is what "catches the shoppers attention as they walk past the Presto unit").)

**C.     Presto failed to raise a genuine issue of material fact in support of its false advertising claim (Count VIII).**

Count VIII of Presto's Complaint alleged that U.S. Merchants falsely advertised "the efficiency of [U.S. Merchants'] product" through statements extolling its heater as an "economical" choice because it "feels like three times the heat yet costs a third less to operate."[7] (Dkt. 1 ¶ 125.) Here, too, the Court granted summary judgment for U.S. Merchants. (Dkt. 335 at 83-84.) As to alleged false advertising, there was no allegation the statement in question was literally false and Presto offered no evidence of consumer deception.[8] (*Id.* at 80, 84 85.) "Presto present[ed] no evidence that Costco purchased 17,968 units of the Heat Machine in reliance on the disputed statement, rather than the myriad of other reasons Costco offered for changing suppliers." (*Id.* at 84-85.)

**D.     U.S. Merchants prevailed against Presto's "weak" product design trade dress claim at trial (Count I).**

While the Court allowed Presto's product design trade dress claim to survive summary judgment, the Court correctly observed that "many of the elements of Presto's claimed trade dress appear to be standard fare." (Dkt. 335 at 32.) The summary judgment

---

[7] Presto's Complaint included a claim for False Designation of Origin—Count V—that, as pleaded, concerned sales receipts Presto obtained from Costco, which labeled the Heat Machine as a "HeatDish." (Dkt. 1 ¶¶ 93-97.) As the Court observed in its Summary Judgment Order, the parties' summary judgment briefing "treated[ed] this claim as equivalent to Presto's trade dress and trademark infringement claims." (Dkt. 335 at 80.) Regardless, the Court determined that "U.S. Merchants did not cause Costco to misidentify THE HEAT MACHINE on its receipts" and granted U.S. Merchants' Motion for Summary Judgment as to Count V. (*Id.*)

[8] Presto abandoned its false advertising claim prior to summary judgment. As the Court observed in its Summary Judgment Order, "Presto does not appear to argue that U.S. Merchants' statement was literally false." (Dkt. 335 at 84.)

record did not "support Presto's claim of exclusivity with respect to many of the elements of its [alleged product design] trade dress." (*Id.* at 33.) Presto also failed to offer any survey or other evidence reflecting consumer recognition of Presto's alleged trade dress. Accordingly, the Court observed that the evidence upon which Presto based its claim of secondary meaning "appears weak," and that Presto's allegations of secondary meaning were "exceptionally difficult without survey evidence." (*Id.* at 29; *see also* Dkt 335 at 28 (noting that Presto's secondary evidence "overall appears weak").) Again, these same deficiencies were identified at the outset of the case in U.S. Merchants' January 11, 2019 letter. (*See* D-68 at 1-7.)

Despite the Court's Summary Judgment Order, Presto maintained that its trade dress included features of the product that this Court recognized as "standard fare." (Dkt. 453 at 10; *see also* Dkt. 589 ¶ 52.) More, Presto continued to demand that U.S. Merchants "cease the manufacture, sale and/or offer for sale **of any parabolic heater**." (*See* Tr. at 211:10-212:2; D-1160 (emphasis added).) U.S. Merchants was forced to proceed to trial to defend its right to compete.

The Court presided over a six-day bench trial on Presto's product design trade dress claim in April 2020. The Court issued its Findings of Fact and Conclusions of Law on August 18, 2022 and found that Presto failed to meet its burden on **all** elements of its remaining trade dress claim. (Dkt. 589.) Presto failed in the first instance to prove that its "HeatDish [product] ha[d] acquired secondary meaning." (Dkt. 589 ¶ 239.) Presto also failed to meet its burden to show "that the HeatDish's overall trade dress is

nonfunctional" or the existence of "any likelihood that a consumer will confuse the trade dress of The Heat Machine with the trade dress of the HeatDish." (*Id.* ¶¶ 258, 276.)

Presto's trial presentation confirmed the inherent weakness of Presto's trade dress claims. Presto presented no evidence whatsoever on numerous critical issues. It offered no evidence of consumer perception regarding any aspect of its alleged trade dress: no consumer survey, no research, and no testimony from any consumer or expert. (*See* Dkt. 589 ¶¶ 222, 232.) Presto "presented no evidence that the shape and design of the HeatDish were developed primarily to distinguish it from its competitors." (Dkt. 589 ¶ 253.) And Presto presented no evidence of consumer confusion—either through a survey or via instances of actual, actionable confusion—that demonstrate U.S. Merchant's product design was likely to cause consumer confusion. (*See id.*)

Presto's trial presentation focused primarily on its allegedly "iconic" bulged or "Bundt cake" shaped grille. Here, too, the evidence at trial revealed the lack of merit in Presto's claim. Presto's claim of an "iconic" trade dress in a bulged grille design was a fabrication, created entirely for the purpose of this lawsuit. Presto first used the term "Bundt cake" to refer to the shape of its products' grille in connection with the instant lawsuit.[9]  (Tr. at 186:8-23.) Presto never used any advertisement or promotional material

---

[9] Indeed, prior to this lawsuit, Presto never claimed that consumer recognition of its allegedly protected trade dress impacted sales of its parabolic electric heater. (Tr. at 196:2-6) To the contrary, Presto took directly contrary positions and advised Costco that it was Presto's merchandising program that drove sales, and that without the merchandising program Presto's parabolic electric heater would be a "turkey," meaning it would not sell. (Dkt. 589 ¶ 50 (citing Tr. at 198:20-23; Ex. P-277 at 1.) Further, prior to this lawsuit, Presto never informed Costco that it believed it had any trade dress rights in its parabolic electric heaters. (Tr. at 195:9 to 196:1; Ex. P-516.)

that referred to a "Bundt cake" shaped grille. (Dkt. 589 ¶ 254.) Presto never used the term

"Bundt cake" in communication with Costco, and never referred to its grille as "iconic."

(*Id.; see also* Tr. at 184:8-17.) In its Findings of Fact and Conclusions of Law, the Court

correctly observed that "Presto developed the large bulge for its grille to pass the UL

band drape test," not to "distinguish [the HeatDish heaters] from its competitors." (Dkt.

589 ¶¶ 253, 254.)

Presto proceeded in this case, through years of fact and expert discovery, with a

constant refrain: "U.S. Merchants blatant[ly] cop[ied] [Presto's] entire heater program

and associated intellectual property." (Dkt. 298 at 1; *see also* Dkt. 87 at 2-3 ("The HEAT

MACHINE heater copied nearly every unique design aspect of the HEATDISH"); Dkt.

453 at 9 ("U.S. Merchants' mimicry did not end there"); Dkt. 582 at 46 ("there is no

doubt that Defendant acted with a deliberate intent to copy"); Dkt 588 at 60 (referring to

U.S. Merchants' alleged "wholesale scheme to copy National Presto") 80 ("the evidence

demonstrates what lengths Defendant underwent to usurp this business, including

copying."). Presto described U.S. Merchants as a "copycat." (Dkt. 298 at 4, 9, 61.) Presto

insisted in numerous public filings that U.S. Merchants' "stole" Presto's intellectual

property. (*See* Dkt. 1 ¶ 134 (referring to "Defendant's conduct in stealing National

Presto's intellectual property."); Dkt. 588 at 12 ("NPI's expired design patents do not

allow competitors *carte blanche* to steal.")). Presto's counsel repeated these false

allegations in opening statements:

> [U.S. Merchants] introduced its Heat Machine, which copied the aesthetic
> appearance of the HeatDish, but not only that, it when it had the opportunity
> to put it in Costco's stores, it put its copycat product on a copycat display to

leave Costco consumers to believe that the product that defendant was offering was the same product they had been walking by for 30 years every heater season.

(Tr. at 6:16-22.)

At summary judgment, and again at trial, Presto's allegations were proven false. As the Court observed, "the evidence makes clear that Costco requested that U.S. Merchants develop a competing product to Presto's HeatDish." (Dkt. 589 ¶ 186.) That is what U.S. Merchants did. "U.S. Merchants expended significant time and resources researching alternative designs, discussing potential improvements, and analyzing additional features." (*Id.* ¶ 189.) The parabolic electric heater that U.S. Merchants developed and sold to Costco—THE HEAT MACHINE brand heater, Model 1951—is not a copy of any Presto parabolic electric heater. Among other things, the heaters employ different base designs, with different manufacturer's plates. (Tr. at 938:15-939:19; *see also* Dkt. 589 ¶ 263.) The shapes are different. (*Compare* P-454A, P448, and P499A.) U.S. Merchants added extra weight to its base design to prevent the unit from tipping over. (Tr. at 989:5-990:19.) U.S. Merchants included a solid base, as compared to the hollow base design of the Presto unit, in order to increase stability. (Tr. at 990:15-19.) And no grille on any parabolic electric heater product sold by U.S. Merchants uses exactly the same grille design as the Presto unit. (Tr. at 1028:2-5; Tr. at 1110:2-111:1.)

Importantly, Presto produced no "evidence that U.S. Merchants intended to pass off The Heat Machine as a Presto product." (Dkt. 589 ¶ 199.) "U.S. Merchants consistently and clearly labeled its product with its Greenmade trademark." (*Id.* ¶ 192.) "The Greenmade trademark stands alone on the base and is surrounded by a vibrant green

15

color." (*Id.* ¶ 195 (Ex. P-499A).) "Also, when sold in Costco locations, the point-of-sale display prominently showcases various packages that also display the Greenmade trademark." (*Id.* (citing Ex. P-499B; Ex. P-288.) In sum, Presto's numerous public declarations that U.S. Merchants "blatantly copied" or "stole" Presto's (unregistered and non-existent) intellectual property were false. That Presto took every opportunity to levy these accusations only further shows its anti-competitive goals.

**IV.   U.S. MERCHANTS PREVAILED ON PRESTO'S COPYRIGHT CLAIMS RESOLVED PRIOR TO TRIAL.**

Count VI of the Complaint covered Presto's copyright infringement claims, which in turn concerned three separate works. (Dkt. 1 ¶¶ 98-115.) U.S. Merchants prevailed on two of Presto's copyright claims prior to trial. The Court properly dismissed Presto's claim for infringement of its product packaging copyright (Registration No. VA 2-127-830), finding as a matter of law that (i) several of the components of Presto's claimed packaging copyright "appear to be to be stock elements which cannot serve as a basis for an infringement claim," and (ii) that Presto had failed to raise a genuine issue of fact whether the parties' packaging was substantially similar. (Dkt. 335 at 71, 77-79.) Later, on the eve of trial, Presto advised that it no would longer pursue its claim for alleged infringement of its 2016 product instruction manual copyright (Registration No. 8-642-462). That claim was dismissed with prejudice. (Dkt. 648, 650.)

V.      **PRESTO'S LITIGATION TACTICS UNREASONABLY INCREASED LITIGATION COSTS.**

A.      **Presto's "shifting sands" approach to its trade dress contentions forced multiple rounds of motion practice and delayed trial.**

Presto's "shifting sands" tactics began early in this case. As the Court observed at summary judgment, Presto "offered several descriptions of its claimed trade dress in the course of this litigation—each somewhat different." (Dkt. 335 at 9.) U.S. Merchants served early contention interrogatories requesting that Presto "identify each element" it alleges "constitutes the [unregistered] trade dress of the HEATDISH brand heater." (*See* Dkt. 41 (discussing U.S. Merchants' Interrogatory No. 22).) Presto refused to provide a complete response. U.S. Merchants moved to compel one. (*Id.*) The Court granted U.S. Merchants' motion. (*See* Dkt. 50.) Presto then supplemented its discovery responses to identify, as its claimed product design trade dress, "the overall appearance of the HEATDISH product" and eight broad features that "contribute to the distinctive appearance of [its] trade dress."[10] (D-19 at 0002.)

U.S. Merchants worked diligently to obtain discovery regarding Presto's support for its contentions, including any support for Presto's claimed longstanding and exclusive use. Presto repeatedly resisted this discovery.

---

[10] Presto's description of its alleged trade dress changed several times during this litigation. There is one description in the Complaint (Dkt. 1 ¶ 38); two in Presto's responses to interrogatories (Dkt. 257-3 (Manske Decl. Ex. HH)); and yet another in the report of its expert, Mr. Lawrence Tienor, who came up with his own description. (Dkt. 263-1 (Manske Decl., Ex. II-1 (Tienor Report ¶¶ 12, 28)); 257-4 (Manske Decl. Ex. JJ (Tienor Tr. at 61-62:17; 87:22-89:10).) These varying descriptions are shown in Exhibit KK (Dkt. 257-5) attached to Declaration of William E. Manske (Dkt. 253), filed concurrently with U.S. Merchants' Motion for Summary Judgement.

**Presto refused to produce "necessary" parts drawings.** Despite claiming all versions of its parabolic electric heater—all models dating back to 1989—embody the same claimed trade dress, Presto refused to produce part drawings for all models. U.S. Merchants was forced to move the Court to compel discovery. (*See* Dkts. 102, 104.) Presto characterized U.S. Merchants' request as "insincere, unnecessary, and serv[ing] no legitimate purpose other than harassment." (Dkt. 120 at 2.) Presto's position—and its characterization of U.S. Merchants' request—was unfounded. Indeed, Presto's President and CEO, Maryjo Cohen, testified at her deposition that technical information in part drawings was **necessary** to allow an observer to determine specific measurements and design features of Presto's parabolic electric heater, and thereby determine whether and to what degree a component has changed. (*See* Dkt. 106-6 (Cohen Tr. at 200:8-25).) In reality, Presto's part drawings are some of the most important documents in this case. The Court agreed and ordered production of the requested parts drawings. (Dkt. 143.)

**Presto failed to timely produce critical documents, including documents pertaining to its communications with (and sales at) Costco.** After U.S. Merchants completed its depositions of Presto employees, U.S. Merchants learned that Presto had not collected or produced numerous responsive documents. These documents included information concerning (1) the sale of Presto's parabolic electric heater at Costco; (2) returns of Presto's parabolic electric heater; and (3) Presto's communications with Costco regarding U.S. Merchants and U.S. Merchants' parabolic electric heater. (*See* Dkt. 128 at 1-4.) U.S. Merchants was forced to move to compel their production. (Dkts. 126, 128.) While Presto eventually produced some of the requested documents after U.S. Merchants

filed its motion to compel, Presto maintained that its communications with Costco concerning U.S. Merchants were "wholly irrelevant." (Dkt. 135 at 2.) Presto was wrong again. The Court ruled that U.S. Merchants "established that the information sought is relevant" and ordered Presto to produce its "communications with Costco as set forth in [U.S. Merchants' document] request."[11] (Dkt. 145 [March 9, 2020 Hearing Tr.] at 70, 76.) But Presto's gamesmanship with respect to the Costco communications did not end there. U.S. Merchants was forced to file yet another motion to force Presto to properly designate the communications under the protective order.[12] (*See* Dkts. 154, 177.)

**Presto failed to supplement discovery to address its revised parabolic electric heater—a product it claimed embodied its alleged trade dress.** Presto's gamesmanship continued up to and through trial. When U.S. Merchants learned that Presto had begun selling a revised version of its parabolic electric heater, U.S. Merchants requested that Presto supplement its discovery responses. Given Presto's contention that **all** versions of its parabolic electric heaters embody its claimed trade dress,

---

[11] Indeed, the Court had already found—in the context of an earlier motion to compel filed by U.S. Merchants'—that communications between National Presto and Costco regarding U.S. Merchants were relevant. (*See* Dkt. 84 (Order on Mtn. for Prot. Order) ("there is no dispute that [National Presto witness] Mr. Frederick has knowledge of relevant, nonprivileged, non-work-product protected facts concerning communications and information shared with Costco relevant to this litigation").)

[12] Presto's opposition relied heavily on ad-hominem attacks. Presto claimed that U.S. Merchants' motion was "its latest attempt to utilize any advantage it can," and an attempt "to gather information which it can use to its advantage" to "harm National Presto." (Dkt. 166 at 2.) The Court disagreed: "The Court finds that communications and information shared between National Presto and Costco is sufficiently relevant." (Dkt. 145 (March 9, 2020 Hearing Tr.) at 76.)

supplementation was critical to U.S. Merchants' ability to defend against Presto's claims. (Dkt. 368-1.) Presto refused U.S. Merchants' request. (Dkt. 368-2.) U.S. Merchants was forced—once again—to seek Court intervention. (Dkts. 364, 366.) Continuing its pattern of unfounded resistance, Presto argued that U.S. Merchants' request for supplementation was a "clear abuse of the discovery process," "disingenuous," and that discovery concerning Presto's parabolic electric heater was "unhelpful" and "not proportionate to the needs of this case." (Dkt. 375 at 1.) The Court disagreed: "The Court finds that the new information sought [by U.S. Merchants] renders in some material respect that certain of plaintiff's responses to defendant's written discovery are incomplete." (Dkt. 526 [December 20, 2021 Hearing Tr.] at 27.) The Court ordered Presto to supplement its discovery responses to address its revised parabolic electric heater. (Dkt. 455.)

Presto's failure to timely supplement its discovery to account for the sale its revised parabolic electric heater significantly impacted this case. It caused U.S. Merchants to incur yet further discovery expense, including review of over 1,100 new documents, supplementation of an expert report, and the preparation and defense of an expert deposition. (*See generally* Dkt. 455.) It also delayed trial. Given the time needed to complete supplemental expert reports and depositions, the Court postponed trial until April 2022. (Dkt. 500.)

Presto's underlying goals in this lawsuit manifested time and time again in its "shifting sands" approach to its trade dress claims. They manifested at trial too. After resisting discovery concerning U.S. Merchants redesigned product, at trial, Presto

claimed—for the first time—that U.S. Merchants' redesigned product infringed Presto's alleged trade dress and should be impacted by an injunction.

### B.   Presto's "shifting sands" approach extended to its copyright contentions.

Presto applied a similar "shifting sands" approach to its copyright contentions. As with its trade dress claims, Presto's misconduct began early and extended through the close of discovery.

**Presto never provided U.S. Merchants a complete set of requested deposit copies for it allegedly copyrighted works.** Presto's Complaint did not include any documents related to its copyright claims—neither the works themselves nor the referenced registrations. (*See* Dkt. 1.) In its January 11, 2019 correspondence to Presto, U.S. Merchants requested deposit copies of Presto's allegedly infringed works. (D-68 at 8.) Presto did not provide them. And despite their responsiveness U.S. Merchants' first set of discovery requests, Presto did not provide deposit copies with any of its initial document productions. Presto only produced deposit copies for its 2016 instruction manual and packaging copyrights after several letters and meet and confers on the issue. (*See* Dkt. 294 ¶ 10, Dkt. 294-5, 294-6.) Presto never produced a complete deposit copy of its 1995 instruction manual.[13]

---

[13] On January 17, 2020, Presto produced a document bates labeled NP_16786-88. *See* Dkt. 247 (Presto Br.) at 11 (citing Artz Decl. Ex. 9 (Dkt. 250-7 (NP_16786-88)).) NP_16786-88 shows Presto's 1997 copyright application and a copy of Presto's 1995 instruction manual with a "Copyright Office" stamp on the manual—that is, NP_16786-88 *appears* to show Presto's 1997 instruction manual copyright deposit. But NP_16786-88 shows only three (of six) pages of Presto's instruction manual. The deposit copy

**Presto dismissed its copyright claim concerning its 2016 instruction manual only after multiple admonishments by this Court.** On April 6, 2022, Presto advised the Court that it no longer intended to pursue its claim for alleged copyright infringement of its 2016 instruction manual (U.S. Registration No. TX 8-642-462). Having litigated this claim through discovery, dispositive motion briefing, and to the eve of trial, U.S. Merchants sought final resolution on the merits. U.S. Merchants asked Presto to provide a draft joint stipulation of dismissal with prejudice as to its claim for copyright infringement of its 2016 instruction manual. (Dkt. 597-2 at 1.) Presto did not respond. Instead, Presto filed a "Status Report" with the Court at 8:28 PM CDT on April 6, 2022—after business hours the night before the final pretrial conference—purporting to "withdraw" and "voluntarily dismiss[]" Presto's claim for copyright infringement of the 2016 instruction manual. (Dkt. 533.)

Following the Court's Order finding against Presto on each of Presto's equitable claims (Dkt. 589 at 92), U.S. Merchants renewed its request that Presto "prepare a stipulation for an order dismissing its 2016 instruction manual claim with prejudice." (Dkt. 597-3 at 2.) Presto refused; Presto also refused to move the Court for dismissal of its claim. (Dkt. 597-4; *see also* Dkt. 607 (September 21, 2022 Hearing Tr.) at 4:8-14, 9:4-12.) Presto insisted that "nothing more needs to be done" with respect to its claim for copyright infringement in the 2016 instruction manual. (*Id.* at 6:1-5.) Presto was wrong. As the Court correctly observed, "when claims are made, it is not the case that you can,

---

admitted into evidence at trial (P-221) during the jury trial is not bates numbered and was not produced during discovery.

before trial, dismiss or fail to present certain claims to the jury and preserve those for the future. That's not how the rules work." (*Id.* at 6:6-12.) The Court questioned why Presto would not agree to dismissal with prejudice—as U.S. Merchants requested—and ordered briefing on the issue. (*Id.* at 9:2-23.)

On September 26, 2022, U.S. Merchants' filed a motion to dismiss Presto's 2016 instruction manual claim pursuant to Fed. R. Civ. P. 41(b). (Dkts. 611, 613.) Presto then filed a motion to dismiss the claim under Fed. R. Civ. P. 41(a)(2), suggesting—for the first time, after all of the parties' correspondence, argument, and motion practice—that its claims should be dismissed **with prejudice**. (Dkts. 624, 625; *see also* Dkt. 634.) The parties appeared before the Court on October 19, 2022. There, the Court correctly observed Presto's "gamesmanship" and stated it will "entertain any fee motion in the future." (Dkt. 645 (October 19, 2022 Hearing Tr.) at 30-32.)

**ARGUMENT**

**VI.    THE COURT SHOULD DESIGNATE THIS CASE EXCEPTIONAL AND AWARD U.S. MERCHANTS ITS REASONABLE ATTORNEYS' FEES FOR DEFENDING AGAINST PRESTO'S BASELESS LANHAM ACT CLAIMS.**

The Lanham Act allows the Court to award reasonable attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a); *see* Fed. R. Civ. P. 54(d)(2) (requests for attorneys' fees must be made by motion). "'[E]xceptional,' as Congress used in … the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate—uncommon, not run-of-the-mill." *Safeway Transit LLC v. Disc. Party Bus, Inc*., 954 F.3d 1171, 1182 (8th Cir. 2020) (quoting *Noxell Corp. v. Firehouse*

*No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)). "Put another way, an exceptional case 'is one in which one party's behavior went beyond the pale of acceptable conduct.'" *Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*, No. 14-CV-846 (SRN/BRT), 2016 WL 2901735, at *2 (D. Minn. May 18, 2016) (Nelson, J.) (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994)).

U.S. Merchants need only demonstrate an entitlement to attorneys' fees by a preponderance of the evidence. *See Octane Fitness, LLC*, 572 U.S. at 557-58. Where, as here, a prevailing defendant seeks attorneys' fees, "the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive. A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Mountain Mktg. Grp., LLC*, 2016 WL 2901735, at *2. "'When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant.'" *Id.* (quoting *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 555 (8th Cir. 1996)). Importantly, "a finding of bad faith is not a prerequisite to a finding that a case is exceptional within the meaning of the Lanham Act." *Jalin Realty Cap. Advisors, LLC v. Hartford Cas. Ins. Co.*, No. 11-CV165 (JRT/LIB), 2018 WL 3104238, at *5 (D. Minn. Feb. 9, 2018), *report and recommendation adopted*, No. 11-CV-165 (JRT/LIB), 2018 WL 2230919 (D. Minn. May 16, 2018) (citing *Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011)); see also 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS § 30:101 (5th ed. 2022)

24

(post *Octane Fitness*, a court need not "find that the losing plaintiff was guilty of some kind of blameworthy or intentional bad faith conduct in order to call the case 'exceptional' and award attorney fees to the prevailing defendant" (citing *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014)).

Whether a case is "exceptional" is left to the discretion of the district court on a case-by-case basis in view of the totality of the circumstances. *Jalin Realty Cap. Advisors, LLC*, 2018 WL 3104238, at *5 (citing *Octane Fitness, LLC*, 572 U.S. at 554 ("there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified" (internal citations omitted)); *Mountain Mktg. Grp., LLC*, 2016 WL 2901735, at *2 ("[a] district court has considerable discretion when deciding if a case is exceptional under § 1117(a)"). "A district court may 'consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.''" *Safeway Transit LLC*, 954 F.3d at 1182 (quoting *Octane Fitness, LLC*, 572 U.S. at 554 n.6 (internal citations omitted)). Presto's conduct is exceptional under each of these established standards.

**A.**     **The totality of the circumstances, including the nature of Presto's motivations to drive U.S. Merchants entirely from the parabolic heater market, the objective unreasonableness of its claims, and its vexatious discovery conduct justifies an award of attorneys' fees.**

Presto's vexatious pursuit of its Lanham Act claims for anti-competitive purposes unreasonably increased U.S. Merchants' cost of defense. The Court should award U.S. Merchants is attorney's fees for at least the following reasons.

**Presto maintained this lawsuit to leverage a result it could never obtain—U.S. Merchants' exit the parabolic electric heater market.** Presto clearly expressed its goals in this suit—that U.S. Merchants "cease the manufacture, sale and/or offer for sale **of any parabolic heater**." (*See* Tr. at 211:10-212:2; D-1160 (emphasis added).) Presto made this demand even after the dismissal of the majority of its Lanham Act claims at summary judgment. (D-1160.) Presto presented an ever shifting and unreasonably expansive view of its claimed trade dress. But even under the broadest interpretation of Presto's alleged trade dress rights, Presto could not claim exclusive rights to **all** parabolic electric heater designs. Presto's unreasonable and anti-competitive demand that U.S. Merchants cease all manufacture and sale of any model of parabolic electric heater demonstrates its bad faith.

Presto's anti-competitive goals are further evidenced by its conduct at the very beginning of this case. Presto never served U.S. Merchants with its Complaint; instead it provided its Complaint only to **Costco** in an attempt to persuade Costco to stop purchasing heaters from U.S. Merchants. When U.S. Merchants sought information early in this case about the specific design changes that might resolve this dispute, Presto

26

declined to even respond. And as recently as July 30, 2021, Presto's demand to resolve this case was that U.S. Merchants leave the parabolic electric heater market **entirely**. Again, Presto had (and has) no basis—under any interpretation of the facts in this case— to force U.S. Merchants out of the parabolic heater market altogether.

**Presto's Lanham Act claims were meritless from the outset of this case.** Presto bore the burden in this case to establish the existence of **any** trade dress rights in the design of its parabolic electric heater product, packaging, or point-of-sale display. It failed. Presto can claim no surprise at this result. U.S. Merchants identified the numerous deficiencies in Presto's Lanham Act claims early in this case. (D-68.) These deficiencies are echoed in the Court's rulings following summary judgment and trial. (*See generally* Dkts. 335, 589.) After more than four years of litigation, the trial record is notable for the lack of evidence supportive of Presto's claims. For example, Presto offered no evidence of consumer perception regarding any aspect of its parabolic electric heaters. It offered no evidence that "the shape and design of the HeatDish were developed primarily to distinguish it from its competitors." (Dkt. 589 ¶ 253.) And it presented no evidence of consumer confusion—either through a survey or via instances of actual, actionable confusion—that demonstrate U.S. Merchant's product design was likely to cause consumer confusion. (Dkt. 589 ¶¶ 222, 232, 254.)

**Presto's discovery tactics unreasonably increased litigation costs.** Throughout this lawsuit, Presto offered varied descriptions of its claimed trade dress. It alternately claimed trade dress in "the overall appearance" of its parabolic electric heaters, some combination of seven or eight elements, and—most recently at trial—an allegedly

"iconic" bundt-cake-shaped grille design. Presto deployed a "shifting sands" approach to discovery calculated to confirm the weakness of its claims. Presto forced U.S. Merchants to file numerous motions with the Court to compel clearly relevant documents, including parts drawings, Presto's communications with Costco, and information concerning Presto's sales (and returns) at Costco. Time-and-time again U.S. Merchants prevailed. Significantly, even after it sought to avoid summary judgment based on the claim that its alleged trade dress included a "chrome grille," Presto later abandoned that position and argued for the first time before trial that its alleged trade dress covered a product having a black grille. (*See* Dkt. 335 at 26 (Presto's claimed trade dress comprises several elements, including "a chrome finish on the grille"); Dkt. 367 at 1.)

The evidence at trial confirmed that Presto's "shifting sands" approach to its trade dress was driven by its desire to maintain this litigation at all costs. Throughout this litigation, Presto constantly referred to its allegedly iconic bulged or "Bundt cake" grille. But Presto's claim of an "iconic" trade dress in a bulged grille design was a fabrication, created entirely for the purpose of this lawsuit. Ms. Cohen testified that she had not heard the phrase "Bundt cake" in connection with the Presto grille shape prior to the present lawsuit.

Presto maintained this case to stifle competition, not adjudicate valid intellectual property rights. Presto's efforts to leverage this case for unlawful competitive gain, regardless of merit or the expenditure of resources, merits an award of fees.

**VII.    THE COURT SHOULD AWARD U.S. MERCHANTS ITS REASONABLE ATTORNEYS' FEES FOR DEFENDING AGAINST PRESTO'S BASELESS PACKAGING COPYRIGHT CLAIM AND FOR PRESTO'S GAMESMANSHIP CONCERNING DISMISSAL OF ITS 2016 INSTRUCTION MANUAL CLAIM.**

In an action for copyright infringement, "the court in its discretion may allow the recovery of full costs by or against any party." 17 U.S.C. § 505. "Costs" under section 505 may include "a reasonable attorney's fee to the prevailing party." *Id.* A fee award under the Copyright Act may include fees incurred to defend against non-copyright claims asserted with copyright claims. *See, e.g.*, *Oracle USA, Inc. v. Rimini Street, Inc.*, 783 F. App'x 707, 711 (9th Cir. 2019) (affirming award of fees related to claims arising from same "core" facts where the "action was first and foremost a copyright infringement action"). Section 505 applies equally to prevailing defendants and plaintiffs because "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

Courts consider several "nonexclusive factors" when making a fee-shifting decision. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). These nonexclusive factors include "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*; *see also Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015). Though the objective reasonableness in bringing and pursing the lawsuit generally receives substantial weight, section 505 "grants courts wide latitude to award

29

attorney's fees based on the totality of the circumstances in a case." *Kirtsaeng*, 136 S. Ct. at 1985.

> **A.**     **The totality of the circumstances, including the nature of Presto's motivations to drive U.S. Merchants entirely from the parabolic heater market, the objective unreasonableness of its claims, and its vexatious discovery conduct justifies an award of attorneys' fees.**

Presto's copyright claims should be viewed in the context of this entire case. Like Presto's Lanham Act claims, Presto's copyright claims concern aspects of U.S. Merchants' product offering—its packaging and an instruction manual—that U.S. Merchants changed years ago. And like Presto's Lanham Act claims, Presto pursued its copyright claims without regard of the cost or time to U.S. Merchants (or the Court). The Court should award U.S. Merchants is attorneys' fees for at least the following reasons.

**U.S. Merchants prevailed on copyright claims resolved prior to trial**. At the outset of this case, Presto's copyright claims encompassed claims for infringement of Presto's 2016 product packaging and instruction manual. U.S. Merchants prevailed on these claims. The Court dismissed Presto's copyright claim concerning its packaging at summary judgment. Presto voluntarily dismissed its claim concerning its 2016 instruction manual.[14]

---

[14] "It is 'well established that a dismissal with prejudice is equivalent to a dismissal on the merits, and a party who prevails on the merits ... is entitled to its costs and disbursements.'" *See Pearson v. Boydstun Metal Works, Inc*., No. 06-cv-3844 DSD/JJG, 2008 WL 2152202, at *1 (D. Minn. May 22, 2008); *Ninox Television Ltd. v. Fox Ent. Grp., Inc*., No. 04-cv-7891 (DLC), 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006) ("Thus, with the parties' stipulation of dismissal with prejudice, Fox has become a prevailing party and is entitled to move for an award of attorney's fees.").

**Presto resisted production of deposit copies for its allegedly copyrighted works for much of fact discovery, producing only an incomplete set near end of fact discovery.** U.S. Merchants requested deposit copies of Presto's allegedly infringed works at the outset of this case. U.S. Merchants' requests—in correspondence and through formal discovery—were ignored for much of discovery. (*See* Dkt. 294 ¶ 10, Dkt. 294-5, 294-6.) This failure of discovery was no small issue given that U.S. Merchants consistently maintained that it did not have access to Presto's 1995 product manual.

**Presto forced U.S. Merchants (and the Court) to expend unnecessary time and resources to effectuate Presto's strategic withdrawal of its infringement claim for alleged copyright infringement of its 2016 instruction manual.** Presto advised the Court on April 6, 2022 that it no longer intended to pursue its claim for alleged copyright infringement of its 2016 instruction manual. Having litigated this claim through discovery, dispositive motion briefing, and to the eve of trial, U.S. Merchants sought final resolution on the merits. U.S. Merchants asked Presto to provide a draft joint stipulation of dismissal with prejudice as to its claim for copyright infringement of the 2016 instruction manual. Rather than stipulate to dismissal of this claim, Presto engaged in what the Court correctly identified as "gamesmanship," necessitating a significant expenditure of time and resources merely to arrive at the result U.S. Merchants proposed when Presto first informed the Court it no longer intended to pursue its claim. (Dkt. 645 (October 19, 2022 Hearing Tr.) at 30-32.) The Court already indicated it would "entertain any fee motion" concerning Presto's conduct. (*Id.* at 32). U.S. Merchants now presents that motion.

**CONCLUSION**

This Court has the power to award fees and costs under the Lanham Act and Copyright Act. U.S. Merchants' fee request is substantiated, reasonable, and justified under applicable law. This Court should find Presto's numerous failed Lanham Act claims exceptional and order that U.S. Merchants is entitled to recover its costs, including reasonable attorneys' fees, incurred in defending against these meritless claims pursuant to 15 U.S.C. § 1117(a). The Court should also award U.S. Merchants its costs, including reasonable attorneys' fees, incurred in defending against Presto's meritless copyright infringement claims resolved prior to trial pursuant to 17 U.S.C. § 505.


                                        Respectfully Submitted,

Dated: March 20, 2023                   **ROBINS KAPLAN LLP**


                                        */s/ William E. Manske*
                                        Christopher K. Larus (#0226828)
                                        CLarus@robinskaplan.com
                                        William E. Manske (#0392348)
                                        WManske@robinskaplan.com
                                        Travis K. Waller (*pro hac vice*)
                                        TWaller@robinskaplan.com
                                        800 LaSalle Avenue, Suite 2800
                                        Minneapolis, MN 55402
                                        Telephone: (612) 349-8500
                                        Facsimile: (612) 339-4181

                                        *Attorneys for Defendant*