## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NATIONAL PRESTO
INDUSTRIES, INC.,

                          Plaintiff,        Case No. 0:18-cv-03321-SRN-LIB

v.

U.S. MERCHANTS FINANCIAL
GROUP, INC.,

                      Defendant.

## PLAINTIFF NATIONAL PRESTO INDUSTRIES, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR AN EXCEPTIONAL CASE DESIGNATION AND AWARD OF ATTORNEYS' FEES

## TABLE OF CONTENTS

Introduction ................................................................................................. 1

Argument ..................................................................................................... 2

    I.    The Court should Defer Ruling on Defendant's Motion with Respect to Count I until Resolution of Plaintiff's Pending Appeal .................................. 2

    II.    Defendant is not Entitled to Attorney Fees Under the Lanham Act ..... 3

        A.    An Award of Fees Under the Lanham Act is the Rare Exception 3

        B.    This Case is not Exceptional ....................................................... 5

            1.    Presto's Claims were not Frivolous or Objectively Unreasonable ................................................................................ 5

                a.    Count I was not Frivolous or Objectively Unreasonable .................................................................... 5

                b.    Count II – IV and VIII were not Frivolous or Objectively Unreasonable ................................................. 9

            2.    Presto's Motivation in Pursuing its Claim was not Anticompetitive ......................................................................... 13

            3.    Any Delays or Discovery Skirmishes do not Make this Case Exceptional ..................................................................... 17

    III.    Defendant is not Entitled to Attorney Fees Under the Copyright Act 19

        A.    Fees Award Under Section 505 are Designed to Promote the Purposes of the Copyright Act ........................................................... 19

        B.    Awarding Defendant Fees does not Promote the Purposes of the Copyright Act ...................................................................................... 20

            1.    Presto Took Objectively Reasonable Litigation Positions 20

        a.     The 2016 Instruction Manual ...............................21

        b.     Presto's Product Packaging...................................22

C.    Presto Pursued its Claims to Protect its Intellectual Property Rights....................................................................................................23

D.    There is No Need to Deter ......................................................25

Conclusion ....................................................................................................25

# INDEX OF AUTHORITIES

## CASES

*Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073 (8th Cir. 2019)------------------------------------------------------------------------------------ 20

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994) -------------- 4

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001) ------------------------------------------------------------- 3

*Caiz v. Roberts*, No. 15-09044, 2017 WL 830386, at *2 (C.D. Cal. Mar. 2, 2017)  4

*Cf. Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 196 F. Supp. 2d 1170, 1172-1173 (D. Kan. 2002) ------------------------------------------------------------------------ 22

*cf. Five Star Mfg.,*, 196 F. Supp. 2d 1172-1173 --------------------------------------- 24

*Cf. Healthmate*, 2017 WL 4987651, at *2 --------------------------------------------- 22

*Cf. Mountain Mktg.*, 2016 WL 2901735, at *4 ---------------------------------------- 21

*Engage Healthcare Comms.*, 2019 WL 1397387, at *5-6 ---------------------------- 18

*Engage Healthcare Comms., LLC v. Intellisphere, LLC*, No. 12-787, 2019 WL 1397387, at *5 (D.N.J. Mar. 28, 2019)------------------------------------------------ 9

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1010 (D. Minn. 2010)--------------------------------------------------------------------------------------- 3

*Fair Isaac*, 711 F. Supp. 2d at 1010-1011 ------------------------------------- 5, 8, 21

*Fair Isaac*, 711 F. Supp. 2d at 1010-1011; *Scott v. Mego Int'l, Inc.*, 524 F. Supp.

    74, 75 (D. Minn. 1981)------------------------------------------------------------------ 5

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994) ----------------------------------20

*Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123-124 (8th Cir. 1987)---------- 9

*Hartman*, 833 F.2d at 123-124------------------------------------------------------- 12, 23

*Healthmate Int'l*, 2017 WL 4987651, at *2----------------------------------------------12

*Healthmate Int'l, LLC v. French*, No. 15-0761, 2017 WL 4987651, at *2 (D. Mo.

    Oct. 31, 2017) ------------------------------------------------------------------------------- 9

*Kirtsaeng* ------------------------------------------------------------------------------- 20, 24

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204-205 (2016) --------------20

*Kirtsaeng*, 579 U.S. at 205 ---------------------------------------------------------------24

*Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*¸ No. 14-cv-846, 2016 WL

    2901735, at *3 (D. Minn. May 18, 2016)----------------------------------------------- 3

*Mountain Mktg.*, 2016 WL 2901735, at *3 ----------------------------------------------- 4

*Mountain Mktg.*, 2016 WL 2901735, at *3 (citing *Octane*, 572 U.S. at 554, n. 6) - 4

*Mountain Mktg.*, 2016 WL 2901735, at *4 -------------------------------- 5, 7, 17, 21

*Mountain Mktg.*, 2016 WL 2901735, at *5 --------------------------------- 16, 17, 25

*Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1312

    (8th Cir. 1988)----------------------------------------------------------------------------- 2

*Octane* -------------------------------------------------------------------------------3, 4, 9, 18

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014)  3

*Octane*, 572 U.S. at 553-54 (2014)-------------------------------------------------- 18

*Octane*, 572 U.S. at 554 ------------------------------------------------------------- 4

*Scott Fetzer Co.* 101 F.3d at 555 ------------------------------------------------ 10, 12

*Scott Fetzer Co. v. William*, 101 F.3d 549, 555 (8th Cir. 1996)----------------------- 5

*Scott*, 524 F. Supp. at 75------------------------------------------------------------7, 21

*Super Industries*, 2013 WL 12139154, at *2 -------------------------------------------- 3

*Super Industries, LLC v. Masaba, Inc.*, No. 10-764, 2013 WL 12139154, at *2 (D.

   Minn. Nov. 20, 2013) ------------------------------------------------------------- 2

*Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018) --------------------------17

*Transclean Corp.*, 134 F. Supp. 2d 1049, at 1061 ------------------------------------- 5

*Transclean Corp.*, 134 F. Supp. 2d at 1061--------------------------------------- 10, 13

*Transclean*, 134 F. Supp. 2d at 1060-61------------------------------------------------ 9

*Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 17-cv-1769, 2019 WL 5783485, at

   *2 (D. Minn. Nov. 6, 2019)----------------------------------------------------------- 9

## STATUTES

15 U.S.C. § 1117(a) ------------------------------------------------------------------- 2

**INTRODUCTION**

Defendant U.S. Merchants Financial Group, Inc.'s ("Defendant") Motion for Attorneys' fees should be denied. While procedural grounds mandate that Defendant's Motion for Attorney Fee's be deferred, the merits of Defendant's Motion are similarly flawed. Indeed, for Defendant to be awarded fees as to Presto's Lanham Act claims, this would have to be an "exceptional" case. But as the record evidence demonstrates, Presto had both a reasonable factual and legal basis for bringing its claim. Discovery even demonstrated that Defendant intentionally copied numerous aspects of Presto's product offering, namely its unique "bundt-cake" shape grille. That this Court ultimately found there to be no infringement does not make this an exceptional case. Moreover, as to Presto's copyright claim, Presto too had a reasonable basis in fact and law. As to Presto's 2016 Instruction Manual, Presto voluntarily dismissed the claim, not because it was meritless, but for streamlining purposes. This Court noted too that Defendant's instruction manual featured large chunks of Presto's protected instruction manual. As to Presto's packaging claim, while the Court ultimately dismissed it on Summary Judgment, Presto's claim had factual support. In all, there is no factual or legal basis to award fees against Presto. Defendant's motion should be denied.

1

**ARGUMENT**

## I.  The Court should Defer Ruling on Defendant's Motion with Respect to Count I until Resolution of Plaintiff's Pending Appeal

When an appeal is pending regarding a claim that is the subject of a motion for fees, "the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved." Fed. R. Civ. P. 54, *advisory committee notes*. As the Eighth Circuit has recognized, "[a]ny award of attorney fees that would be based on judgments that are subject to immediate appellate review would be nothing more than an exercise in futility unless it is assumed that th[e] Court will eventually be affirmed . . . ." *Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1312 (8th Cir. 1988). Accordingly, the Eighth Circuit held that "the district court wisely deferred ruling on attorney's fees and costs pending appeal," rather than "undertaking the time-consuming task of determining a reasonable attorney's fee, only to see that effort overturned on appeal[.]" *Id. See also Super Industries, LLC v. Masaba, Inc.*, No. 10-764, 2013 WL 12139154, at *2 (D. Minn. Nov. 20, 2013) (denying without prejudice motion for fees where "fee request could be affected by the outcome of the pending appeal").

Here, following a bench trial, the Court issued Findings of Fact and Conclusions of Law and found against Presto on Count I of its Complaint, for trade dress infringement under 15 U.S.C. § 1125(a)(1)(A). (Dkt. No. 589; Dkt. No. 737).

2

Presto appealed that decision. (Dkt. No. 747). Accordingly, with respect to Count I, the Court should defer ruling on Defendant's Motion or deny the Motion without prejudice. *See Super Industries*, 2013 WL 12139154, at *2. This is particularly true given that Defendant's Motion relies heavily on the Court's Findings of Fact and Conclusions of Law.

## II.   Defendant is not Entitled to Attorney Fees Under the Lanham Act

### A. An Award of Fees Under the Lanham Act is the Rare Exception

The American Rule is that the losing party in litigation is not required to reimburse the prevailing party's attorney fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). The Lanham Act offers a single narrow departure from that rule, providing that a court may *only* award fees to a prevailing party in "exceptional cases." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1010 (D. Minn. 2010); *see also* 15 U.S.C. § 1117(a). "Exceptional" means "uncommon," "rare, or "not ordinary." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014); *see also Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC¸* No. 14-cv-846, 2016 WL 2901735, at *3 (D. Minn. May 18, 2016) (J., Nelson) (applying *Octane* to a claim for fees under the Lanham Act and holding that the *Octane* standard is substantively similar to the standard employed by the Eighth Circuit).

An exceptional case is one in which "one party's behavior went beyond the pale of acceptable conduct." *Id.* (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994)). "Exceptional" behavior includes action that is "groundless, unreasonable, vexatious, or pursued in bad faith." As the Supreme Court has explained,

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane*, 572 U.S. at 554; *see also Mountain Mktg.*, 2016 WL 2901735, at *3. To determine whether a case is "exceptional," courts can look to "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Mountain Mktg.*, 2016 WL 2901735, at *3 (citing *Octane*, 572 U.S. at 554, n. 6).

Because an award of fees under the Lanham Act is at the Court's discretion, "[t]he Court is not compelled to award attorney's fees even if the case is exceptional." *Caiz v. Roberts*, No. 15-09044, 2017 WL 830386, at *2 (C.D. Cal. Mar. 2, 2017).

4

### B. This Case is not Exceptional

#### 1. Presto's Claims were not Frivolous or Objectively Unreasonable

#### a. Count I was not Frivolous or Objectively Unreasonable

Where a claim survived a motion for summary judgment, that fact "strongly suggests a case is not exceptional." *Mountain Mktg.*, 2016 WL 2901735, at *4; *see also Fair Isaac*, 711 F. Supp. 2d at 1010-1011; *Scott v. Mego Int'l, Inc.*, 524 F. Supp. 74, 75 (D. Minn. 1981). Here, Presto's product trade dress claim (Count I) survived summary judgment, demonstrating that this case is not exceptional as to Count I. (*See* Dkt. No. 335).

And even if Presto had not survived summary judgment on Count I, whether a party successfully litigated its claims beyond summary judgment is not the standard. Rather, the standard is whether there is "some evidence" in the record to support the unsuccessful party's claims. *See Scott Fetzer Co. v. William*, 101 F.3d 549, 555 (8th Cir. 1996); *Transclean Corp.*, 134 F. Supp. 2d 1049, at 1061. At the summary judgment stage, the Court determined that Presto presented sufficient evidence on the very same bases Defendant now argues support an award of fees. *Consider*:

- *Compare* **Dkt. No. 335, at 29** ("U.S. Merchants makes much of the fact that Presto did not conduct a consumer survey or otherwise attempt to ascertain direct evidence that consumers associate Presto's claimed trade dress with Presto, rather than the product itself. Although consumer surveys may furnish direct evidence of secondary meaning and are unquestionably relevant, the lack of a survey is not

*dispositive*."); ***with* Dkt. No. 763, at 18** (arguing fees are appropriate because, at trial, Presto offered "no consumer survey, no research, and no testimony from any consumer or expert").

- *Compare* **Dkt. No. 335, at 29** ("Although U.S. Merchants denies copying the HeatDish, there is record evidence to the contrary. Jeff Green, President of U.S. Merchants, repeatedly instructed the manufacturer to attempt to duplicate the HeatDish's appearance. . . . After Costco declined to purchase [an earlier model], Green wrote that he had asked the manufacturer 'to make the grill the <u>same design as Presto</u> to see if Costco would like that design better,' and to 'add a metal medallion to the front of the unit like Presto had.'"); **and Dkt. No. 335, at 45** (finding support for likelihood of confusion where "Presto has presented evidence that U.S. Merchants copied the appearance of the HeatDish" and "a reasonable factfinder could nonetheless conclude that U.S. Merchants intended to confuse the public based on its deliberate copying of the HeatDish."); ***with* Dkt. No. 763, at 20** (arguing fees are appropriate because "[a]t summary judgment, and again at trial, Presto's allegations [of copying] were proven false.").

- *Compare* **Dkt. No. 335, at 33** ("[T]here is one feature of Presto's claimed trade dress that *does* appear to be unique to the HeatDish: the particular curvature and recess of its grill, which together create a Bundt cake shape. U.S. Merchants has not identified any competing product— apart from The Heat Machine—with such a look. Because Presto's design prominently features a uniquely shaped grille, a reasonable factfinder could weigh the exclusivity factor in favor of secondary meaning."); **and Dkt. No. 335, at 34** ("Despite changes to its color, the design of its emblem, and the shape of its base, Presto's use of a Bundt cake-shaped grille has been continuous. Presto's longstanding use of this unique feature could support a finding of secondary meaning."); ***with* Dkt. No. 763, at 19** (arguing fees are appropriate because "the evidence at trial revealed the lack of merit in Presto's claim" regarding the "Bundt cake" shaped grille).

- *Compare* **Dkt. No. 335, at 34-35** ("[W]hen considering the whole appearance of the 2016-2019 HeatDish—rather than merely a Bundt cake shape—a factfinder could also conclude that the three years the 2016-2019 HeatDish was sold supports the acquisition of secondary meaning."); ***with* Dkt. No. 763, at 17** (arguing fees are appropriate

because "[d]espite the Court's Summary Judgment Order, Presto maintained that its trade dress included feature of the product that this Court recognized as 'standard fare.'").

- *Compare* **Dkt. No. 335, at 40** ("Importantly, there is no evidence in the record that the Bundt cake shape of the grille is dictated by the grille's function . . . . And competitors need not utilize that grille design in order to compete effectively, as evidenced by the numerous competing products depicted in the record with a much flatter grille."); **and Dkt. No. 335, at 40-41** ("It is not enough for U.S. Merchants to contend that discrete features of the HeatDish, considered in isolation, 'serve some function.' . . . Because a reasonable factfinder could conclude that Presto's overall trade dress was adopted for purposes of identification and individuality, and the a competitor can compete effectively without copying the whole claimed trade dress . . . the Court finds that Presto has raised a genuine factual dispute regarding whether its claimed trade dress is nonfunctional."); *with* **Dkt. No. 763, at 19** (arguing that fees are appropriate because, following trial, the Court determined that "Presto developed the large bulge for its grille to pass the UL band drape test," rather than to "distinguish [it] from its competitors").

- *Compare* **Dkt. No. 335, at 43-45** (finding an issue of fact as to a likelihood of confusion because, "[a]part from some small differences" between the products, the parties' products "look quite similar" and the products were competitive); *with* **Dkt. No. 763, at 17-18** (arguing that fees are appropriate because Presto failed to meet its burden at trial to establish likelihood of confusion).

In short, while Presto was ultimately unsuccessful at trial—subject to Presto's pending appeal—it is indisputable that Presto properly supported its claims such that this case is not exceptional. *See Scott*, 524 F. Supp. at 75 (denying an award of fees following a bench trial, even though "the court . . . decided most of the legal issues adversely to the plaintiff and . . . made certain comments in evaluating the testimony and the evidence."); *Mountain Mktg.*, 2016 WL 2901735, at *4 (denying an award

of fees following a jury trial even where the "Plaintiffs' evidence . . . was ultimately unconvincing"); *Fair Isaac*, 711 F. Supp. 2d at 1010-1011 (denying an award of fees even though "[t]he jury's resolution of this case suggest that [the plaintiff] badly misjudged the evidentiary strength of its infringement claims.").[1]

---

[1] The grounds on which the defendants in *Fair Isaac* asserted entitlement to fees are instructive here. Much like Defendant does here, in *Fair Isaac*, defendants alleged fees were appropriate because:

> Fair Isaac's infringement claims were groundless, unreasonable, and pursued in bad faith, Defendants claim that Fair Isaac never used the "300-850" as a trademark prior to obtaining registrations, did not introduce evidence to show the extent and effect of its use of marketing materials featuring the "300-850" mark, never presented evidence of advertising expenditures and marketing plans regarding the "300-850" mark, and never conducted a secondary meaning survey. In addition, Defendants argue that the likelihood of confusion expert Fair Isaac presented at trial lacked credibility; that Fair Isaac did not allege Trans Union and Experian until more than seven months into the litigation, which shows that the true purpose of this lawsuit was to hinder or stifle its new competitor, VantageScore; and that the amount of money Fair Isaac requested for damages . . . was outrageous.

*Fair Isaac*, 711 F. Supp. 2d at 1010. The Court rejected the defendants' arguments, holding that the claim survived summary judgment and that "[s]uch circumstances are inconsistent with the contention that Fair Isaac's infringement claims were groundless and unreasonable." *Id.* at 1010-1011.

### b. Count II – IV and VIII were not Frivolous or Objectively Unreasonable

Likewise, while Defendant devotes significant space to arguing that the Court granted summary judgment to Defendant on Presto's other Lanham Act claims—Counts II (trade dress), III (point of sale), IV (Trademark), and VIII (false advertising)—losing on summary judgment does not make a case "exceptional." *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123-124 (8th Cir. 1987) (denying request for fees even though plaintiff lost on summary judgment); *Transclean*, 134 F. Supp. 2d at 1060-61 (same); *Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 17-cv-1769, 2019 WL 5783485, at *2 (D. Minn. Nov. 6, 2019) (same). "[T]o hold otherwise would make every case in which a party loses 'exceptional' and destroy the distinction between the Lanham Act's fee provision and other fee-shifting provisions that merely require that a party prevail to recover fees." *Healthmate Int'l, LLC v. French*, No. 15-0761, 2017 WL 4987651, at *2 (D. Mo. Oct. 31, 2017). Indeed, the Supreme Court's decision in *Octane* "does not stand for the proposition that a case is exceptional merely because a losing party advanced weak or contradictory arguments in support of its claims." *Engage Healthcare Comms., LLC v. Intellisphere, LLC*, No. 12-787, 2019 WL 1397387, at *5 (D.N.J. Mar. 28, 2019).

Instead, as set forth above, a case is not exceptional when there is "some evidence" in the record to support the unsuccessful party's claims. *See Scott Fetzer*

*Co.* 101 F.3d at 555; *Transclean Corp.*, 134 F. Supp. 2d at 1061. Presto presented

evidence to support each of its claims:

- **Count II, Packaging Trade Dress:**

  - *Distinctiveness*: Dkt. No. 298, at 19-22 (relying on evidence demonstrating Presto's exclusivity in Costco's stores, success of the product, promotion of the product to Costco's customers, including via unique in-store displays which occupied prominent "end-cap" positions, and Defendant's deliberate copying of the heater packaging).

  - *Functionality*: Dkt. No. 298, at 31 (relying on the third-party packaging identified by Defendant's expert to show the "myriad ways in which packaging for such products can be presented to distinguish them in the marketplace.").

  - *Likelihood of confusion*: Dkt. No. 298, at 35-45 (relying on evidence showing instances of actual confusion, numerous returns of Defendant's product in HEATDISH® packaging, complaints of consumers who were confused as to their product's source, Costco's printed receipts for the HEAT MACHINE product identifying it as the HEATDISH®, intentional copying by Defendant, and the undisputed fact the products were in direct competition).

- **Count III, Point of Sale:**

  - *Distinctiveness*: Dkt. No. 298, at 22-24 (relying on evidence that only Presto has marketed its heater in Costco stores through a unique POS display, and apart from Defendant's product, no other parabolic heater had been sold or offered for sale in Costco using such a display).

  - *Functionality*: Dkt. No. 298, at 32-34 (relying on Presto's expert's testimony—who this Court found credible and qualified—for the opinion that "one designing a POS display for a heater would not need to employ the identical configuration of

10

the HEATDISH® heater POS in order to manufacture a parabolic heater that is comparable in cost, quality and performance.").

- o ***Likelihood of confusion****: see supra* at Count II, Packaging Trade Dress, Likelihood of confusion.

- **Count IV, Trademark:**

  - o ***Distinctiveness****:* Dkt. No. 298, at 46-48 (relying on evidence of Presto's registration, long and continuous use of its mark, longstanding commercial success, and longstanding exclusivity at Costco).

  - o ***Likelihood of confusion****:* Dkt. No. 298, at 48-53 (relying on evidence of a similar color scheme and placement to sell similar products, direct competition, a low degree of consumer care, and actual confusion); *see supra* at Count II, Packaging Trade Dress, Likelihood of confusion.

- **Count VIII, False Advertising:** Dkt. No. 298, at 63-64 (relying on evidence produced by Defendant during discovery that, while Presto's package made the true statement that it took one-third less energy to operate because its product is a 1000-watt heater, Defendant's product is a 1200-watt heater, rendering the same statement on Defendant's packing false).

Indeed, while the Court ultimately disagreed with Presto's analyses on these claims, it agreed that they were supported by some evidence. *See, e.g.* Dkt. No. 335, at 50 ("[A] reasonable factfinder could conclude that the length of time Presto offered the 2016-2019 HeatDish packaging supports the acquisition of secondary meaning."); *id.* at 51-52 (finding that there was evidence that U.S. Merchants deliberately copied Presto's packaging by directing its graphic designers to use Presto's packaging as a reference for layout purposes); *id.*, at 54 ("To be sure, there

11

is no evidence in the record that any other parabolic heater (besides The Heat Machine) utilized such a display, either at Costco or at other retailers."); *id.* at 58 ("Presto's long use of its word and design marks, the promotion attributable to its longstanding status as Costco's exclusive supplier of parabolic heaters, and its commercial success furnish some evidence of the marks' strength."); *id.* at 60-61 (finding that the marks both use a white color and are positioned in the upper-left corner of the parties' packaging and in the center of their products); *id.* at 61-62 (finding that direct competition and low level of consumer care supported a finding of likelihood of confusion); *id.* at 64 ("[I]t is true that Presto has presented evidence that the marks are commercially strong.").

It is thus clear that, while the Court ultimately disagreed with Presto's analyses of these claims, Presto presented evidence to support them. Accordingly, the Court should not permit Defendant to transform a mere loss into an "exceptional" case, thus "destroy[ing] the distinction between the Lanham Act's fee provision and other fee-shifting provisions that merely require that a party prevail to recover fees." *Healthmate Int'l*, 2017 WL 4987651, at *2; *see also Hartman*, 833 F.2d at 123-124 (denying an award of fees where the plaintiff lost on summary judgment because, while there were some weak elements, the case was not flawed "as a whole"); *Scott Fetzer Co.* 101 F.3d at 555 (denying fee award where plaintiff lost summary judgment because there was "some evidence" in the record to support the claims);

12

*Transclean Corp.*, 134 F. Supp. 2d at 1061 (denying fee award where plaintiff lost summary judgment after presenting a "conclusory affidavit" because "there was some evidence in the record to support [plaintiff's] claims").

### 2. Presto's Motivation in Pursuing its Claim was not Anticompetitive

Throughout its Motion, Defendant repeatedly attributes anticompetitive motives to Presto in an effort to justify an otherwise unjustifiable request for fees. Defendant argues that Presto's anticompetitive motives are evidenced by (1) Presto's early discussions with Costco regarding Presto's Complaint, (2) Presto's failure to respond to a February 2019 letter from Defendant, and (3) Presto's settlement positions in this case. (*See, e.g.*, Dkt. No. 763, at 10-13, 17, 31-32). But in so arguing, Defendant omits from its Motion sworn testimony and relevant law that refutes each of its arguments.

*First*, Defendant argues that, after Presto filed the Complaint, "Presto never served U.S. Merchants with its Complaint; instead it provided its Complaint only to **Costco** in an attempt to persuade Costco to stop purchasing heaters from U.S. Merchants." (Dkt. No. 759, at 31) (emphasis in original). Importantly, Defendant's accusation—made to support what would likely be a significant request for fees—is completely unsupported. There is *no* evidence that Presto discussed the Complaint with Costco "in an attempt to persuade Costco to stop purchasing heaters from [Defendant]," and Defendant does not cite to any. Instead, the sworn testimony

introduced at trial demonstrated that Presto discussed the Complaint with Costco so

that Costco could act as a mediator between two of its longtime business partners:

> Q.    . . . [A]fter you filed this lawsuit, what did you do with respect to U.S. Merchants?
>
> A.    We actually, immediately before we filed it, we sat down with Costco and asked Costco for assistance in working through this issue.
>
> Q.    And why did you do that with Costco?
>
> A.    Costco is an important customer, and we wanted them to be aware that there was an issue and that it behooved all of us to resolve it as quickly as we could.
>
> Q.    Okay. And what was Costco's response?
>
> A.    Costco's response was that they would work with us. We filed the suit, and we sent them a copy, and the idea was that they would be reaching out to U.S. Merchants and that we would find a resolution.
>
> Q.    And did you, after you had sent that lawsuit to Costco, had you served it on U.S. Merchants at that point?
>
> A.    No.
>
> Q.    Okay. And why did you not serve it on U.S. Merchants.
>
> A.    Because we thought we could resolve it.
>
> Q.    And then what happened after you sent a copy of the filed lawsuit to Costco?
>
> A.    . . . [W]ell, [Defendant] filed a response and a counterclaim. So they answered it even though it hadn't been filed, and then they also sued us in return.

(Tr. 131:5-132:3).

14

*Second*, Presto's "failure" to respond to Defendant's February 2019 correspondence is not indicative of an anticompetitive motivation, but of the completely unreasonable nature of Defendant's correspondence. As Presto's CEO explained, Defendant's correspondence was a "threat" that requested a response, and simultaneous action, that was beyond the pale:

> A.      It was essentially a threat. First of all, the copyright material was absurd. Our product – our instruction books all had copyright notices on them. So, you know, he could just look at the book. There was no need for deposited copies and all that other fancy language.
>
> And it was so obvious that they had . . . lifted essentially the entire text that that seems – that wasn't even believable.
>
> The next [request in the letter] was simply a threat. Who conducts blind tests? No one conducts blind tests. We have Underwriters Laboratory who, you know, there's no reason that – essentially it's saying Underwriters Laboratory favors National Presto and provided test results for National Presto's benefit. It if wasn't National Presto, then we never would have gotten certification. They weren't the only organization that certified that particular heater. NSF did as well.
>
> So the requirement was if we didn't provide him with a blind test in seven days, then we were required to go and essentially recall every product that we had made with that configuration, which we've been using since I think 2001. So we're talking millions of heaters, a massive recall, for what was clearly, at least to us, and also proved out to be, a misinterpretation of that test.

(Tr. 247:1-24). In other words, Defendant's requests—including that Presto cease and permanently desist from advertising its then-current product, destroy all

15

inventory and packaging, issue a recall notice, and issue corrective advertising—
were commercially unreasonable and based on inaccurate test results. (*Id.* at 247-
250). And by virtue of finding Defendant liable for willful infringement and finding
against Defendant on the defense of innocent infringement—which Defendant
largely supported by arguing that Defendant acted "reasonably"—the jury inherently
credited Presto's testimony *over* Defendant's.

*Third*, Defendant repeatedly argues that Presto's settlement position in this
case—both settlement offers that Presto advanced and rejected—support a finding
that Presto acted with an anticompetitive motivation. (Dkt. 763, at 8, 12, 13, 17, 31).
Defendants cites no law that whether a party makes or rejects settlement offers
renders a case "exceptional," and courts have rejected precisely those kinds of
arguments. *See Mountain Mktg.*, 2016 WL 2901735, at *5 ("Defendant cites no case
law, nor can the Court find any, holding that a party's settlement demands—even
when inflated based on mistaken perceptions about the strength of the party's
claims—make a case exceptional."); *Healthmate*, 2017 WL 4987651, at *2
(declining to consider unwillingness to settle as basis for fees); *Nursery Decals and
More, Inc. v. Neat Print, Inc.*, No., 2022 WL 1913081, at *4 (N.D. Tex. June 3,
2022) (declining to find a case exceptional where the plaintiff refused to settle and
allegedly demanded "unreasonable" non-monetary settlement terms because "there

is nothing exceptional about a plaintiff refusing settlement offers in the hopes that it will be more successful at trial.").

The arguments Defendant relies on to prop up its claim for fees are thus belied by the evidentiary record and relevant law. The evidence showed that Presto brought this suit to protect its intellectual rights and prevent unlawful copying. (*See* 4/2/22 Tr., 218:22-219:12 [Ms. Cohen testifying that Presto designed what it believed was a unique product in order to foster customer recognition and prevent copying and consumer confusion)]). Nor were Presto's concerns unfounded. Instead, as the Court itself acknowledged and the jury verdict vindicated, Defendant's own documents showed that Defendant copied Presto's product offering. (*See* Dkt. No. 335, at 29, 45). That discovery bore out that fact precludes an "exceptional" case finding. *See Mountain Mktg.*, 2016 WL 2901735, at *4 (finding no "exceptional" case where, among other things, discovery produced evidence that the defendant "piggybacked" on the branding of others companies).

### 3. Any Delays or Discovery Skirmishes do not Make this Case Exceptional

A case is not exceptional because "one side has zealously pursued or defended its claim . . . ." *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018). Nor is a case exceptional because a party took litigation positions that ultimately resulted in delays. *See Mountain Mktg.*, 2016 WL 2901735, at *5 ("[T]he struggles Plaintiffs' counsel experienced in abiding by the Court's timing and scheduling instructions do

17

not make this case exceptional."). Notwithstanding, with citation to carefully selected discovery disputes and litigation positions,[2] Defendant argues that Presto's "litigation tactics" justify an exceptional case determination and an award of fees.

But Discovery disputes and litigation delays are not "uncommon," "rare, or "not ordinary." *See Octane*, 572 U.S. at 553-54 (2014); *see also Engage Healthcare Comms.*, 2019 WL 1397387, at *5-6 (denying an award of fees and finding case was not exceptional despite a "contentious," "drawn-out," and "antagonistic discovery process," including failures to provide substantive responses to interrogatories, failing to identify facts supporting secondary meaning, failing to prepare a Rule 30(b)(6) witness, forcing a motion to compel, producing large amounts of unusable ESI, and serving harassing and unnecessary subpoenas). Moreover, the litigation conduct of *both* parties is relevant to the "exceptional case" determination, and "the fact that [Defendant was] on the losing side of some of those discovery disputes cuts

---

[2] For example, Defendant claims that Presto refused to produce drawings that Defendant claims Ms. Cohen testified were "necessary." (Dkt. 763, at 23). In the first instance, Ms. Cohen did not testify that the drawings were "necessary." Moreover, that line of questioning related to the *appearance* of Presto's grille, and how changes to various models affected their visual appearance. (Cohen Tr., 199:10-200:7). It was only after counsel gave Ms. Cohen a ruler to measure the depth of the inset that she testified that the parts drawings would be a better "tool" for the task given to her. (*Id.* at 200:13-23). But, importantly, whether millimeter differences existed between models did not impact their appearance or the matters to be litigated—which was underscored by the fact that, despite Defendant's claim that Presto initially refused to produce these "necessary" drawings, *Defendant did not use any drawings in this case once they were produced*.

against its argument that [Presto] was unreasonable." *Id.* at *6. *See, e.g.* Dkt. No. 140 (denying Defendant's Motion to Compel with respect to contention interrogatories); Dkt. No. 177 (denying Defendant's Motion to Compel in part); Dkt. No. 455 (denying Defendant's Motion to Compel in part); Dkt. No. 96 (reflecting dismissal with prejudice of Defendant's counterclaims, submitted two months after receiving a Rule 11 letter).

Accordingly, coupled with the fact that (1) Presto's claims were not frivolous or objectively unreasonable, and (2) Presto pursued this litigation for legitimate bases, Defendant's allegations regarding Presto's litigation tactics do not support an award of fees.

## III.   Defendant is not Entitled to Attorney Fees Under the Copyright Act

### A. Fees Award Under Section 505 are Designed to Promote the Purposes of the Copyright Act

Pursuant to 17 U.S.C. § 505, the Court may, in its discretion, "allow the recovery of full costs [and] award a reasonable attorney's fee to the prevailing party as part of the costs." Fee awards under Section 505 are designed to promote the purposes of the Copyright Act. As the Supreme Court recently explained:

> [C]opyright law ultimately serves the purposes of enriching the general public through access to creative works. [Section 505] achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under § 505 should encourage the types of lawsuits that promote those

19

purposes. . . . When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing party gives him an incentive to litigate the case all the way to the end. **The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small** . . . . Conversely, when a person . . . has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action. . . . **[T]he infringer with no reasonable defense has every reason to give in quickly, before each side's litigation costs mount.** All of those results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (*i.e.*, potential plaintiffs and defendants) will enjoy the substantive rights the statute provides.

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204-205 (2016) (cleaned up) (emphasis added).

When exercising the discretion bestowed upon it by Section 505, the Court must do so "in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073 (8th Cir. 2019); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994).

### B. Awarding Defendant Fees does not Promote the Purposes of the Copyright Act

#### 1. Presto Took Objectively Reasonable Litigation Positions

The Supreme Court in *Kirtsaeng* recognized that whether a party takes objectively unreasonable litigation positions is a significant factor in determining

20

whether to award fees under Section 505. *See Kirtsaeng*, 579 U.S. at 209. Here, with Presto's allegations of copyright infringement of (1) the 2016 instruction manual, and (2) its product packaging, were both objectively reasonable.

### a. The 2016 Instruction Manual

As set forth herein, that fact that a claim survives summary judgment is strong evidence that it is not frivolous or objectively unreasonable. *Cf. Mountain Mktg.*, 2016 WL 2901735, at *4; *see also Fair Isaac*, 711 F. Supp. 2d at 1010-1011; *Scott*, 524 F. Supp. at 75. Here, the Court determined that Presto ably demonstrated, at the very least, a question of fact regarding the 2016 instruction manual. (Dkt. No. 335). Specifically, the Court held:

- Presto has a federally registered copyright in the 2016 instruction manual (Dkt. No. 335, at 65);

- Presto's copyright is valid (*Id.*, at 67);

- Defendant "extensive[ly] verbatim copi[ied]" "creative expressions of fact found within Presto's manuals" (*Id.*, at 69);

- Defendant had access to a physical sample of the HeatDish, which included a copy of Presto's manual (*Id.*, at 72-73);

- Defendant arranged for its manufacturer to obtain a sample of the HeatDish and approved Defendant's manual for printing and distribution (*Id.*, at 73); and

- Defendant's manual "mirrors Presto's in structure . . . and contains numerous duplications of protectable text." (*Id.*, at 75).

Despite the Court's favorable findings on summary judgment, Presto voluntarily dismissed its claim for infringement of the 2016 manual in an effort to streamline trial for the Court, the parties, and the jury.[3] Importantly, however, the jury determined that Defendant willfully infringed the 1995 instruction manual—on which the 2016 manual is based.

Accordingly, Presto's claim for infringement of the 2016 instruction manual was meritorious.

### b. Presto's Product Packaging

As set forth herein, a claim is not unreasonable merely because it is unsuccessful. *See supra* at Section III (A). Otherwise, where litigation is often binary, with winners and losers, the exception would swallow the rule. *Cf. Healthmate*, 2017 WL 4987651, at *2 ("[T]o hold otherwise would make every case in which a party loses 'exceptional' . . . .").

While the Court ultimately granted summary judgment in Defendant's favor on Presto's claim for copyright infringement with respect to its packaging (*see* Dkt.

---

[3] *Cf. Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 196 F. Supp. 2d 1170, 1172-1173 (D. Kan. 2002) (holding that fees were not warranted where the plaintiff voluntarily dismissed its claim for trade infringement shortly before trial, where the trade dress claim survived summary judgment and plaintiff did not bring the claim in bad faith, nor in an unusually vexatious and oppressive manner).

No. 335), the Court acknowledged that Presto satisfied several elements of the claim. For example:

- Presto has a federally registered copyright in its 2018 packaging (Dkt. No. 335, at 65);

- Presto's copyright is valid (*Id.*, at 67);

- Defendant did not dispute that it had access to Presto's packaging (*Id.*, at 72); and

- Defendant used Presto's packaging to design the layout for its own (*Id.*, at 72-73).

And even though Court found that Presto's evidence of substantial similarity as to its packaging was "weaker" than for its manuals, it conceded that the "parties' packaging is similar." (*Id.* at 77).

Accordingly, although Presto's claim was ultimately unsuccessful, its position was not unreasonable. *See Hartman*, 833 F.2d at 123-124 (denying an award of fees where the plaintiff lost on summary judgment because, while there were some weak elements, the case was not flawed "as a whole").

### C. Presto Pursued its Claims to Protect its Intellectual Property Rights

As set forth at length herein, Presto's motivation in pursuing its claims was not anticompetitive, but grounded in a legitimate desire to protect its intellectual property rights. *See supra* at Section II(B)(2).

Moreover, with respect to Presto's voluntary dismissal of its claim for infringement of the 2016 instruction manual, Defendant alleges that Presto engaged

23

in "gamesmanship" that protracted litigation and increased its costs. Remarkably, Presto dismissed its claim for infringement of the 2016 instruction manual to *streamline* the jury trial, and advised Defendant and the Court of that fact in April, 2022, almost a year prior to the jury trial in this matter. (*See* Dkt. No. 533 [informing the Court that Presto "voluntarily dismisses that Part of Count VI . . . pertaining to Presto's 2016 [instruction manual] . . . .]). The Court even recognized that Presto's voluntarily dismissal made further proceedings *easier*. (*See* 4/7/22 Tr., 10:14-20). That the parties disagreed over the correct mechanism by which to formally remove those allegations from the case does not detract from the fact that Presto's conduct was intended to ease the burden on all involved in this case. The irony is not lost on Presto that, had it simply maintained its claim—despite that it would have only increased the proofs at trial, increased the time required of the jury, and yet had no impact on the recovery Presto could have obtained—it would not now be defending against a claim for fees. It is hard to imagine how such a result could promote the purposes of the Copyright Act. *See Kirtsaeng*, 579 U.S. at 205; *see also cf. Five Star Mfg.,*, 196 F. Supp. 2d 1172-1173 (holding that fees were not warranted where the plaintiff voluntarily dismissed its claim for trade infringement shortly before trial, where the trade dress claim survive summary judgment and plaintiff did not bring the claim in bad faith, nor in an unusually vexatious and oppressive manner)

**D. There is No Need to Deter**

Defendant's Motion does not argue that an award of fees under Section 505 would serve the purpose of deterrence, nor would it. *See Mountain Mktg.*, 2016 WL 2901735, at \*5 (holding that deterrence did not warrant an award of fees because "Plaintiffs must pay their own considerable attorneys' fees and are now saddled with the adverse precedent set by their unsuccessful infringement claims against Defendant," which was deterrence enough).

CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: April 19, 2023          /s/ *Jeffer Ali*
                              Jeffer Ali (#0247947)
                              ali@ptslaw.com
                              **PATTERSON THUENTE, P.A.**
                              4800 IDS Center
                              80 South Eighth Street
                              Minneapolis, MN 55402-2100
                              Telephone: (612) 349-5740
                              Facsimile: (612) 349-9266

                              John S. Artz (P48578), *admitted pro hac vice*
                              Ariana D. Pellegrino (P79104), *admitted pro hac vice*
                              Yafeez S. Fatabhoy (P83064), *admitted pro hac vice*
                              **DICKINSON WRIGHT PLLC**
                              350 S. Main Street, Ste. 300
                              Ann Arbor, MI 48104
                              Telephone: (248) 433-7262

25

Facsimile: (844) 670-6009
jsartz@dickinsonwright.com
yfatabhoy@dickinsonwright.com


*Attorneys for Plaintiff*
*National Presto Industries, Inc.*