UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| National Presto Industries, Inc.,<br><br>　　　　Plaintiff,<br>v.<br><br>U.S. Merchants Financial Group, Inc.,<br>d/b/a Greenmade,<br><br>　　　　Defendant. | Case No. 18-cv-03321 (SRN/LIB)<br><br>**DEFENDANT U.S. MERCHANTS'<br>REPLY MEMORANDUM IN<br>SUPPORT OF ITS MOTION FOR<br>AN EXCEPTIONAL CASE<br>DESIGNATION AND AWARD OF<br>ATTORNEYS' FEES** |

**INTRODUCTION**

　　Plaintiff National Presto Industries, Inc. ("Presto") filed this lawsuit to prevent Defendant U.S. Merchants Financial Group, Inc. ("U.S. Merchants") from lawfully competing for business with the warehouse retailer Costco. At each stage of this litigation, U.S. Merchants exposed Presto's Lanham Act claims as meritless. Presto should now be held to account for its improper pursuit of this litigation. The Court should find Presto's conduct exceptional under the standards of 15 U.S.C. § 1117 and order that U.S. Merchants is entitled to recover its costs, including reasonable attorneys' fees incurred in the defense of Presto's meritless Lanham Act claims.

　　There is a direct throughline between the deficiencies in Presto's claims identified by U.S. Merchants at the outset of this case and this Court's orders disposing of Presto's claims. Presto ignores this. It devotes the bulk of its opposition brief to identifying "some" alleged evidence supportive of its claims. This "evidence," though, consists largely of attorney argument rejected by the Court at summary judgment and trial. And

1

the cases to which Presto tethers much of its opposition—including this Court's decision in *Mountain Marketing Grp. v. Heimerl & Lammers*—involve assertions of *registered* marks entitled to a presumption of validity that had been successfully enforced in the past, not the type of "unusually weak" claim Presto advanced here.

Presto brought a claim for *unregistered* trade dress infringement. Presto bore the burden in the first instance to prove the existence of any trade dress rights—rights it had never before identified nor sought to register. It failed, and it never even came close. U.S. Merchants prevailed on numerous claims at summary judgment, where the Court observed that Presto's product design claim was "weak." U.S. Merchants prevailed against Presto's "weak" product design claim at trial.

Presto brought and maintained this lawsuit for improper anticompetitive motives. The record clearly demonstrates that Presto was not happy about the prospect of losing business with its longstanding customer Costco. This fueled Presto's motivations in this case, which are shown in its demand that U.S. Merchants cease the sale of ***any*** parabolic electric heater—regardless of design.

Presto cannot escape the undisputed record. It offers only unsupported rationalizations. Presto argues, for instance, that it sent its Complaint to Costco—instead of contacting U.S. Merchants or otherwise serving the Complaint—because it intended Costco to act as a "mediator." The record, including the very testimony Presto relies on, demonstrates that Presto sent Costco its Complaint because Costco "is an important customer." Presto next argues that it declined to respond to U.S. Merchants' January 11, 2019 letter inviting a dialogue around design changes because it viewed the letter as

"unreasonable" and a "threat," but Presto ignores the extensive portions of U.S. Merchants' letter that identified many of the same obvious deficiencies in Presto's Lanham Act claims that led to the Court's decisions disposing of those claims.

Presto's attempt to diminish the discovery record is similarly not credible. Presto first suggests that the discovery U.S. Merchants obtained through motion practice was unimportant. Presto argues, incorrectly, that U.S. Merchants "did not use any [parts] drawings in this case once they were produced." Not true. The record is replete with citation to Presto parts drawings. These documents—which Presto only produced after it was ordered to by this Court—were some of the most important in this case. Among other things, they demonstrated the changing nature of Presto's claimed trade dress. Presto next argues that U.S. Merchants was on the "losing side" of certain discovery disputes. Again, not true. Presto cites orders disposing of *U.S. Merchants'* motions, which U.S. Merchants was forced to bring in response to Presto's discovery conduct. To the extent the Court denied any part of these motions, the denial was attributable to Presto's concessions on the record (Dkt. 140), narrowing of the discovery Presto was ordered to provide (Dkts. 177, 455), or the Court's decision not to grant *U.S. Merchants'* request for fees associated with its successful motions. (Dkts. 177, 455.)

U.S. Merchants is likewise entitled to an award of its costs, including reasonable attorneys' fees incurred in connection with Presto's copyright infringement claims that were dismissed prior to trial. Presto does not dispute that U.S. Merchants prevailed on these claims. Presto argues that an award of fees is inappropriate here because Presto survived summary judgment on the claim it later voluntarily dismissed, and its

3

"gamesmanship" around dismissal was a function of Presto's desire to "ease the burden on all involved in this case." Presto's conduct and the Court's disposition of these claims is clear. The Court should award U.S. Merchants its reasonable attorneys fees.

## ARGUMENT

**I.      THE COURT SHOULD DESIGNATE THIS CASE EXCEPTIONAL AND AWARD U.S. MERCHANTS ITS REASONABLE ATTORNEYS' FEES FOR DEFENDING AGAINST PRESTO'S BASELESS LANHAM ACT CLAIMS.**

**A.      The Court Should Not Defer Ruling on U.S. Merchants' Motion.**

Presto seeks to avoid its day of reckoning by arguing that the Court should defer ruling on U.S. Merchants' motion until after an appeal. No such delay is warranted. The parties proposed, and the Court adopted, a streamlined approach to the parties' fees motions. (Dkts. 744, 746). The Court should decline Presto's request to abandon this approach.

Presto offers no valid reason to stay adjudication of U.S. Merchants' motion. There are, however, several reasons to proceed.

*First,* the Court's ruling on U.S. Merchants' motion may itself impact the scope of issues on appeal. The Advisory Committee Notes to the 1993 Amendments to Federal Rule of Civil Procedure 54 are instructive:

> In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case.... Prompt filing [of a claim for attorney fees] affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

4

Here, the Court's decision as to whether to designate this case exceptional or award fees under the Copyright Act may itself be appealed. And it is the Court's amended judgment—after adjudication of *all* post-trial and post-judgment motions[1]—that will inform the scope of any appeal. It makes no practical sense to delay ruling on one (of several) post-trial motions pending appeal.

*Second*, contrary to Presto's argument, courts around the country have recognized that the mere presence of an appeal is not a sufficient basis for staying consideration of a motion for attorney's fees. *See, e.g., Prism Techs., LLC v. McAfee, Inc.*, 2013 WL 571789, at *1–2 (D. Neb. Feb. 13, 2013) (denying motion to stay consideration of fees motion pending appeal); *Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175, at *3 & n.2 (D.N.J. Mar. 26, 2015) (same); *Scanner Techs. Corp. v. Icos Vision Sys. Corp.*, N.V., 2007 WL 3284028, at *2 (S.D.N.Y. Nov. 1, 2007) (same); *Kushner v. Buhta*, No. 16-CV-2646 (SRN/SER), 2019 WL 1417434, at *4 (D. Minn. Mar. 29, 2019) (Nelson, J.) (denying motion to stay consideration of taxation of costs). Rather, as one district court stated, "the usual course is for the Court to consider attorneys' fees promptly after the merits decision rather than stay a motion for attorneys' fees until resolution of the appeal." *Lugus*, 2015 WL 1399175, at *3 & n.2; *see also Prism*, 2013 WL 571789, at *1–

---

[1] Presto's request to defer ruling on U.S. Merchants' motion is overtly self-serving. Presto makes no suggestion that *its* fees request (Dkts. 753, 755), which faces a similar procedural posture, should be deferred pending appeal. If anything, Presto's fees request faces an even greater prospect of being mooted. Presto's fees request may be mooted by U.S. Merchants' Motion for Judgment as a Matter of Law, or Alternatively a New Trial or Remittitur (Dkts. 758, 759). It may also be mooted by any subsequent appeal of the Court's amended judgment.

2 ("the standard practice in such cases is to decide fee and cost issues without delay"). Presto provides no compelling reason to diverge from this usual course. Presto does not explain how its appeal to the Eighth Circuit is likely to impact the Court's analysis of whether Presto's conduct justifies an award of attorneys' fees. Notably, Presto does not argue that its appeal can erase the harm caused by Presto's discovery abuses and other litigation misconduct. And Presto provides no argument as to why it is likely that the Eighth Circuit will overturn this Court's various rulings disposing of Presto's claims.

> **B.    The Totality of the Circumstances, Including Presto's Efforts to Drive U.S. Merchants Entirely From the Parabolic Heater Market, the Objective Unreasonableness of its Claims, and its Vexatious Discovery Conduct Justifies an Award of Attorneys' Fees.**

The Court may designate this case exceptional if Presto's claims "lacked merit, had elements of an abuse of process claim, and [Presto's] conduct unreasonably increased the cost of defending against the suit." *Mountain Mktg. Grp., LLC, v. Heimerl & Lammers, LLC*, No. 14-CV-846 (SRN/BRT), 2016 WL 2901735, at *2 (D. Minn. May 18, 2016). As detailed in U.S. Merchants' opening brief, each factor is present here.

> **1.    Presto's *post hoc* effort to recast its efforts to misuse its alleged trademark and trade dress rights is belied by the trial record.**

Presto clearly expressed its goals in this suit—that U.S. Merchants "cease the manufacture, sale and/or offer for sale **of any parabolic heater**." (*See* Bench Tr.[2] at 211:10-212:2; D-1160 (emphasis added).) Presto made this demand even after the

---

[2] The trial exhibits cited herein refers to trial exhibits in the Trial Transcripts. (*See* Dkts. 732 to 736.) Quotations to the Trial Transcripts are referred to as "Jury Tr. at ___" for the jury trial completed in February 2023 and "Bench Tr. at ___" for the bench trial completed in April 2022.

6

dismissal of the majority of its Lanham Act claims at summary judgment. (Ex. D-1160.) Unable to rebut the undisputed record, Presto attempts to dilute the significance of its actions. This effort is not credible.

Presto admits, as it must, that it never served U.S. Merchants with its Complaint, and that it provided its Complaint only to Costco. (Presto Opp. Br. at 13.) Presto suggests, however, that its intent was for Costco to act "as a mediator." (*Id.* at 14.) There is nothing in the record to support this argument.[3] The undisputed record establishes that Costco was "looking to replace Presto's HeatDish" heater for a variety of reasons, including the product's declining sales, Presto's insistence on certain in-store merchandising practices, and Presto's refusal to agree to changes to the HeatDish program. (*See* Dkt. 589 ¶¶ 57-71.) "Costco advised Presto during the spring of 2017 that it would not be purchasing the HeatDish for certain Arizona warehouse locations in the upcoming 2017-2018 heater season." (*Id.* ¶ 67 (citing Bench Tr. at 204:22-25; Ex. P-501 at 1).) "Presto was also advised that Costco may be testing a different heater product in those locations." (*Id.* (citing Bench Tr. at 205:13-18; Ex. P-501 at 1).) Presto sought to avoid this competition, and it achieved its goal. "In response to the lawsuit, Costco elected not to purchase U.S. Merchants' The Heat Machine brand heater, as originally designed, after the 2018-2019 heater season." (*Id.* ¶ 125 (citing Bench Tr. at 684:15-20).)

---

[3] Presto's reading of Ms. Cohen's trial testimony is strained, at best. Ms. Cohen expressly states that Presto sent its Complaint to Costco because Costco is "an important customer, and we wanted them to be aware that there was an issue." (Jury Tr. 131:5-18.) The documentary evidence around Presto's communications with Costco suggests Presto told Costco (and Costco understood) Presto would send a cease and desist letter to U.S. Merchants. (Ex. P-56.) No such letter was sent.

Presto admits receipt of U.S. Merchants' January 11, 2019 letter that identified obvious legal and factual deficiencies in Presto's Lanham Act and Copyright Act claims. (Presto Opp. Br. at 15; *see also* Ex. D-68; Bench Tr. at 1037:18-1039:18.) Presto also acknowledges its failure to respond. (*Id.*) Presto argues that it did not respond to U.S. Merchants' January 11, 2019 letter because it viewed the letter as "completely unreasonable." (Presto Opp. Br. at 15.) Presto blatantly ignores, however, the extensive portions of U.S. Merchants' January 11, 2019 letter that concern Presto's Lanham Act and Copyright Claims—the claims that are the subject U.S. Merchants' instant motion.[4] Presto's suggestion that it was "completely unreasonable" for U.S. Merchants to request from Presto "a detailed list of the [design] changes National Presto believes are appropriate" or deposit copies of Presto's allegedly infringed instruction manuals is simply not credible.[5] (*See* Ex. D-68.) Nor was it "unreasonable" for U.S. Merchants to identify the numerous deficiencies in Presto's claims. As detailed extensively in U.S.

---

[4] Ms. Cohen's testimony refers to the portion of U.S. Merchants' January 11, 2019 letter that identifies safety issues with Presto's then-current grille design. Costco later identified these same concerns (Ex. D-58), and Presto changed its grille design. Regardless, the safety issues associated with Presto's now-discontinued grille design have nothing to do with Presto's meritless pursuit of the claims to which U.S. Merchants' motion is directed.

[5] Ms. Cohen's self-serving suggestion that U.S. Merchants' request for deposit copies was "absurd" should be viewed in conjunction with Ms. Cohen's acknowledgment that Presto stopped selling the product that included its 1995 instruction manual in 1997. (Jury Tr. at 195:14-17.) Presto presented *no evidence* at trial to demonstrate how U.S. Merchants could have obtained a copy of this 1995 manual at the time Presto filed suit. Even in this litigation, Presto never produced a complete deposit copy of its 1995 instruction manual. (U.S. Merchants Opening Br. at 21, fn. 13.)

Merchants' opening brief, many of these deficiencies were echoed in the Court's decisions disposing of Presto's claims. (*See* U.S. Merchants Opening Br. at 8-16.)

Presto cites no case supportive of its position that the Court should discount evidence of its anticompetitive motives in this case. If anything, Presto's cited cases counsel the opposite.

In *Mountain Mktg. Grp.,* the plaintiffs sought to enforce *registered* marks that were entitled to a presumption of validity. *Mountain Mktg. Grp., LLC*, 2016 WL 2901735, at *2-3. In addition, the plaintiffs "previously had some success pursing other alleged infringers." *Id.*, at *4. And there was "no evidence that [the plaintiffs] brought their infringement claims against [the defendant] in bad faith." *Id.* This case presents a stark contrast. Presto sought to enforce *unregistered* trade dress rights, meaning it faced the burden of demonstrating the existence of any trade dress rights in the first place. And unlike *Mountain Mktg. Grp.,* here, there is no evidence that Presto claimed it had any trade dress rights in its product design, packaging, or point-of-sale display prior to Costco buying heaters from U.S. Merchants. (*See* Dkt. 589 ¶ 41 ("Presto never informed Costco that it had any trade dress rights in the HeatDish."); ¶ 39 ("Presto never sought to register any trade dress in any model of its HeatDish brand parabolic electric heater."))

Presto's other cited cases are also distinguishable. In *Healthmate Int'l, LLC v. French*, the court determined that the defendant's rejection of a "global settlement" did not support the plaintiff's fee request because, among other things, the plaintiff "obtained less relief at trial than it would have received in any of its settlement demands." No. 15-0761-CV-W-BP, 2017 WL 4987651, at *2 (W.D. Mo. Oct. 31, 2017). The court in

9

*Nursery Decals & More, Inc. v. Neat Print, Inc.* similarly declined to fault a losing party for failing to "accept a settlement it found insufficient." No. 3:19-CV-2606-B, 2022 WL 1913081, at *4 (N.D. Tex. June 3, 2022). Presto's conduct in this case goes beyond a simple refusal to settle. Presto's demand that U.S. Merchants agree to "cease the manufacture, sale and/or offer for sale of any parabolic heater" reflects a motivation to maintain a lawsuit for anticompetitive reasons. Presto's demand was an unreasonable effort to obtain relief far beyond that which Presto could have ever obtained in this case.

### 2. Presto's Lanham Act claims were meritless from the outset.

U.S. Merchants identified the clear deficiencies in Presto's Lanham Act claims at the outset of this case. (*See* Ex. D-68.) Despite the obvious deficiencies in these claims identified by U.S. Merchants, Presto made no concessions nor withdrew a single claim through fact and expert discovery. Presto devotes the bulk of its opposition brief to an identification of "some evidence" it alleges support its (failed) claims. (*See* Presto Opp. Br. at 5-13.) Presto applies the wrong standard and ignores the throughline between U.S. Merchants' early identification of deficiencies in Presto's claims, the Court's summary judgment order, and the Court's Findings of Facts and Conclusions of Law.

Presto repeatedly suggests that it need only identify "some evidence" in the record supportive of its Lanham Act claims to avoid an exceptional case designation. (*See* Presto Opp. Br. at 5, 9 (citing *Scott Fetzer Co. v. William*, 101 F. 3d 549, 555 (8th Cir. 1996).) Presto is wrong. As the Eighth Circuit has observed, the applicable standard is set out by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness*:

10

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020) (citing *Octane Fitness, LLC v. ICON Health & Fitness*, 572 U.S. 545, 554 (2014)). Under *Octane Fitness,* courts consider "a 'nonexclusive' list of 'factors,' including … objective unreasonableness (both in the factual and legal components of the case)." *Id.* The determination as to whether a case is exceptional involves a "case-by-case exercise" of discretion, "considering the totality of the circumstances." *Octane Fitness,* 572 U.S. at 545. The Court should decline Presto's invitation to abandon any assessment of the "objective unreasonableness" of its Lanham Act claims (and litigation conduct) under a "totality of the circumstances" framework in favor of Presto's self-serving identification of "some evidence" allegedly supportive of its claims.

The "objective unreasonableness" of Presto's Lanham Act claims derive in large part from the fact that the deficiencies in its claims were apparent from the outset of this case. As detailed in U.S. Merchants' opening brief, U.S. Merchants identified the numerous deficiencies in Presto's Lanham Act claims early in this case. (U.S. Merchants Opening Br. at 8 (citing Ex. D-68).) These deficiencies are echoed in the Court's rulings following summary judgment and trial. (U.S. Merchants Opening Br. at 8-13 (citing Dkts. 335, 589).) Presto ignores the throughline between U.S. Merchants' early identification of deficiencies in Presto's claims and the Court's rulings. More, Presto's

11

identification of "some evidence" supportive of its claims relies principally on attorney argument.

Presto acknowledges, as it must, that all but one of its Lanham Act claims were dismissed on summary judgment. (Presto Opp. Br. at 9-12.) Presto argues, however, that it presented "some evidence" to support its claims, and that the Court "agreed" its claims "were supported by some evidence." (Presto Opp. Br. at 10-12.) Presto is wrong on both accounts. As support for the proposition that it presented "some evidence" in support of the claims the Court dismissed at summary judgment, Presto relies exclusively on its *brief* filed in opposition to U.S. Merchants' summary judgment motion. (*Id.* (citing Dkt. 298).) Unsurprisingly, then, the alleged "evidence" Presto contends supported its dismissed claims is really attorney argument—much of which the Court rejected. As but one example, Presto argues here that it supplied evidence of distinctiveness via "Presto's [packaging] exclusivity in Costco's stores." (Presto Opp. Br. at 10.) The Court conclusively rejected this "evidence" at Summary Judgment: "Presto offers no support for the proposition that its position as Costco's exclusive supplier of parabolic heaters means that Presto's packaging trade dress had attained secondary meaning."[6] (Dkt. 335 at 50-51.)

---

[6] Examples of Presto's failure to present evidence supportive of its Lanham Act claims are legion. Another example: Presto argues in its opposition brief that that it presented evidence that its point-of-sale display is distinctive. (Presto Opp. Br. at 10.) The Court found the opposite: "a display featuring a sample of the product is 'dictated by the nature of the product'," and "Presto's display appears to be a mere 'refinement' of other product displays." (Dkt. 335 at 53-54.) Importantly, U.S. Merchants also identified this deficiency in its January 11, 2019 letter to Presto. (Ex. D-68 at 2-3.)

U.S. Merchants prevailed against Presto's "weak" product design trade dress claim at trial (Count I). While the Court allowed Presto's product design trade dress claim to survive summary judgment, the Court correctly observed that "many of the elements of Presto's claimed trade dress appear to be standard fare." (Dkt. 335 at 32.) Here, too, Presto ignores the throughline between U.S. Merchants' early identification of deficiencies in Presto's claims, the Court's summary judgment order, and the Court's Findings of Facts and Conclusions of Law. Presto makes much of the fact that its product design trade dress claim survived summary judgment. (Presto Opp. Br. at 5.) Presto cites (again) this Court's decision in *Mountain Mktg. Grp.* and argues that survival of summary judgment "strongly suggests a case is not exceptional." (*Id.* (citing *Mountain Mktg. Grp.,* 2016 WL 2901735, at *3-4).) Once again, Presto fails to engage with the facts or analysis of *Mountain Mktg. Grp.*, which are distinguishable. In *Mountain Mktg. Grp.*, the plaintiff sought to enforce *registered* marks, which afford a presumption of validity. *Mountain Mktg. Grp.,* 2016 WL 2901735, at *3-4.[7] Here, Presto initiatied this lawsuit with no existing or identifiable rights in its product design. It then failed to prove, as a threshold matter, that it had *any* rights in its product design.

This case turned on Presto's failure to prove its product design had acquired secondary meaning. And Presto's evidence on this issue was always weak. *Cf. Mountain*

---

[7] Presto's citation of *Fair Isaac Corp. v. Experian Info. Sols. Inc.* is flawed for similar reasons. 711 F. Supp. 2d 991 (D. Minn. 2010), *aff'd*, 650 F.3d 1139 (8th Cir. 2011). That case also concerned claims premised on *registered* marks, and the plaintiff explained its failure to provide a secondary meaning survey on the grounds that it "reasonably believed" no survey was necessary "because [its] registration created a presumption" of validity. *Id.* at 1010-1011.

13

*Mktg. Grp.,* 2016 WL 2901735, at *5 ("Plaintiff's infringmenet claims, although unsuccessful, were not unusually weak.") U.S. Merchants told Presto at the outset of this case that the product features Presto identified as its protectible trade dress were functional, "inherent aspects of *any* parabolic heater." (Ex. D-68 at 3-4.) At summary judgment, the Court observed that Presto's secondary meaning evidence "overall appears weak." (Dkt. 335 at 28.) Despite the Court's Summary Judgment Order, Presto maintained that its trade dress included features of the product that this Court recognized as "standard fare." (Dkt. 453 at 10; *see also* Dkt. 589 ¶ 202.) Moreover, Presto continued to demand that U.S. Merchants "cease the manufacture, sale and/or offer for sale **of any parabolic heater**." (*See* Bench Tr. at 211:10-212:2; Ex. D-1160 (emphasis added).) Presto presented no legal theory to support such a broad anticompetitive result.

U.S. Merchants was forced to proceed to trial to defend its right to compete. After trial, the Court ruled that Presto "failed to prove by a preponderance of the evidence that the HeatDish ha[d] acquired secondary meaning." (Dkt. 589 ¶ 239.)

### 3. Presto's characterization of the discovery record is inaccurate.

Presto does not substantively engage with U.S. Merchants' detailed documentation of Presto's litigation tactics in U.S. Merchant's opening brief. (*See* U.S. Merchants' Opening Br. at 4-6.) Instead, Presto argues that U.S. Merchants presents only "carefully selected discovery disputes," and that U.S. Merchants "was on the losing side" of certain discovery disputes. (Presto Opp. Br. at 18.) Neither is true.

The discovery record—which is chronicled at length in U.S. Merchants' opening brief—presents a clear picture of Presto's "shifting sands" approach to its trade dress

14

contentions. (U.S. Merchants Opening Br. at 17-21.) Presto has no substantive response to this presentation. Presto offers, instead, a self-serving statement about the evidentiary weight of the Presto parts drawings it was ordered to produce. (Presto Opp. Br. at 18.) And on this issue, Presto is just wrong. It is untrue that U.S. Merchants "did not use any [parts] drawings in this case once they were produced." (*Id*.) Presto parts drawings were central to U.S. Merchants' expert analysis in this case. (*See, e.g.,* Dkt. 227 (Jobin Report) at ¶¶ 101-130; Bench Tr. 915:3-920:15, 936:2-8 (Jobin discussing use of Presto parts drawings in analysis).) Many Presto parts drawings were offered and accepted into evidence at trial. (*See, e.g.,* Exs. D-151, D-170, D-184, D-165, D-175, D-184.) And this Court cited both Mr. Jobin's trial testimony and admitted parts drawings extensively in its Findings of Fact and Conclusions of Law. (*See, e.g.,* Dkt. 589 at ¶¶ 149-159.)

Presto's suggestion of equivalence between the parties' litigation conduct—its argument that U.S. Merchants was on the "losing side" of certain discovery disputes—is also inaccurate. Presto cites the Court's orders on **U.S. Merchants'** motions to compel for the proposition that U.S. Merchants was on the "losing side" of discovery disputes. (Presto Opp. Br. at 18-19.) True, U.S. Merchants did not prevail on every aspect of every motion to compel it filed. But this fact does not somehow excuse Presto's conduct. If anything, the fact that U.S. Merchants was forced to routinely file motions to compel demonstrates the unreasonableness of Presto's discovery approach. More significantly, Presto ignores the background (and in some cases the actual text) of the orders it cites. This is telling. U.S. Merchants did not, for instance, "lose" its motion to compel Presto to respond to certain contention interrogatories, as Presto suggests. (Presto Opp. Br. at 19

15

(citing Dkt. 140).) The Court denied that aspect of U.S. Merchants' motion to compel (Dkt. 140) after it credited Presto counsel's "unequivocal" confirmation that U.S. Merchants' redesigned heater was not "an accused product" in this case. (*See* Dkt. 145 (March 9, 2020 Hearing Tr.) at 57-58.) U.S. Merchants likewise did not "lose" its motion to compel Presto to de-designate certain Presto documents in this case. (Dkt. 152; Presto Opp. Br. at 19 (citing Dkt. 177).) The Court ordered Presto to de-designate the subject documents; it denied U.S. Merchants' request for attorneys' fees associated with having to bring the motion.[8] (Dkt. 177.)

## II. THE COURT SHOULD AWARD U.S. MERCHANTS ITS REASONABLE ATTORNEYS' FEES FOR DEFENDING AGAINST PRESTO'S BASELESS PACKAGING COPYRIGHT CLAIM AND FOR PRESTO'S GAMESMANSHIP CONCERNING DISMISSAL OF ITS 2016 INSTRUCTION MANUAL CLAIM.

Presto acknowledges, as it must, that U.S. Merchants prevailed on both Presto's packaging copyright claim and its 2016 instruction manual claim. More, Presto does not

---

[8] Presto's citation to the Court's order at Docket No. 455 is similarly unsupportive of its arguments. The background surrounding this order is detailed in U.S. Merchants' opening brief. (U.S. Merchants Opening Br. at 20.) Before trial, U.S. Merchants learned that Presto had begun selling a revised version of its parabolic electric heater, U.S. Merchants requested that Presto supplement its discovery responses. Presto refused; motion practice followed. The Court ordered Presto to supplement its discovery responses to address its revised parabolic electric heater. (Dkt. 455.) The Court permitted Presto to not supplement certain, specific discovery requests, and it denied U.S. Merchants' (alternative) request for an adverse instruction and fees. Presto's failure to timely supplement its discovery to account for the sale its revised parabolic electric heater significantly impacted this case. It caused U.S. Merchants to incur yet further discovery expense, including review of over 1,100 new documents, supplementation of an expert report, and the preparation and defense of an expert deposition. (*See generally* Dkt. 455.) It also delayed trial. Given the time needed to complete supplemental expert reports and depositions, the Court postponed trial until April 2022. (Dkt. 500.)

substantively dispute the conduct that forms the core of U.S. Merchants' request for fees. Presto advances two arguments against an award of fees: (1) its defeated copyright claims were "objectively reasonable," and (2) it dismissed its 2016 instruction manual claim to "streamline the jury trial." (Presto Opp. Br. at 20-24.) Neither argument militates against an award of fees.

      **A.**    **Presto's Packaging Claim Was Not "Objectively Reasonable," and the fact that Presto's 2016 Instruction Manual Claim Survived Summary Judgment Does Not Excuse Its "Gamesmanship"—the Focus of U.S. Merchants' Fee Request.**

As detailed in U.S. Merchants' opening brief, Presto's defeated copyright claims should be viewed in the context of this entire case. Like Presto's Lanham Act claims, Presto's copyright claims concern aspects of U.S. Merchants' product offering—its packaging and an instruction manual—that U.S. Merchants changed years ago. And like Presto's Lanham Act claims, Presto pursued its copyright claims without regard to the cost or time to U.S. Merchants (or the Court).

The Court properly dismissed Presto's claim for infringement of its product packaging copyright (Registration No. VA 2-127-830) at summary judgment. Presto argues that the Court nonetheless "acknowledged that Presto satisfied several elements of the claim." (Presto Opp. Br. at 23.) Presto misstates the import of the Court's findings at summary judgment on the question of whether Presto's packaging claim, overall, was "objectively reasonable." The fact that the Court determined, at summary judgment, that Presto held a valid registration in its packaging says nothing about the merits of Presto's infringement allegations overall. Indeed, the Court determined that little of Presto's

packaging was entitled to copyright protection. (Dkt. 335 at 71 (finding several of the components of Presto's claimed packaging copyright "appear to be to be stock elements which cannot serve as a basis for an infringement claim.")) As to whether U.S. Merchants copied constituent elements of Presto's packaging that are original, Presto's failure of proof was even more glaring. The Court observed that the layout of the parties' packaging "differs substantially," that the parties' packaging utilized different color schemes, listed different product features, and arranged text and photographs differently. (Dkt. 335 at 77-79.) Presto's claim that U.S. Merchants' infringed Presto's product packaging copyright was not "objectively reasonable."

The fact that Presto's 2016 instruction manual claim survived summary judgment is not ultimately determinative of U.S. Merchants' fee request. As Presto acknowledges, courts consider several "nonexclusive factors" when making a fee-shifting decision. (Presto Opp. Br. at 19-20.) These nonexclusive factors include "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). Presto voluntarily dismissed (with prejudice) its 2016 instruction manual claim. The manner with which Presto litigated this claim—its motivation, its objective unreasonableness in discovery and around dismissal of its claims—counsels a fee award. Presto's argument is ultimately an argument about the breadth of any fee award, not whether a fee award is merited. As to Presto's 2016 instruction manual claim, U.S. Merchants requests fees for Presto's "gamesmanship" around dismissal of that claim. The Court already indicated it would "entertain any fee

motion" concerning that conduct. (Dkt. 645 (October 19, 2022 Hearing Tr.) at 30-32.) U.S. Merchants' motion is directed to this issue, not a broader request for fees as to the entirety of litigation concerning Presto's 2016 instruction manual claim.

> **B.  Presto Forced U.S. Merchants (and the Court) to Expend Unnecessary Time and Resources to Effectuate Presto's Strategic Withdrawal of its Infringement Claim for Alleged Copyright Infringement of its 2016 Instruction Manual.**

Presto engaged in what the Court correctly identified as "gamesmanship" around dismissal of its 2016 instruction manual claim. (Dkt. 645 (October 19, 2022 Hearing Tr.) at 30-32.) Presto now argues that its voluntary dismissal "made further proceedings easier," and that it could have "simply maintained its claim—despite that it would have only increased the proofs at trial, increased the time required of the jury, and yet [would] have impact on the recovery Presto could have obtained." (Presto Opp. Br. at 24.) These arguments only support U.S. Merchants' fee request. Presto's stipulated dismissal of its 2016 instruction manual claim with prejudice *did* streamline issues, which is precisely why U.S. Merchants proposed such a stipulation in the first place. (Dkt. 597-2.) The fact that Presto made the strategic choice to remove an independent claim from trial says nothing about its "gamesmanship" around the effectuation of that decision. There is no "irony" here. It is abundantly clear from the parties' exchanges on this issue (and their submissions to the Court) that Presto's "intent" was to effectuate its trial strategy without the consequence of a dismissal with prejudice. It forced U.S. Merchants and the Court to expend considerable time and resources only to arrive at the result U.S. Merchants proposed when Presto first informed the Court it no longer intended to pursue its claim.

(Dkt. 645 (October 19, 2022 Hearing Tr.) at 30-32.) The Court should award U.S. Merchants' its fees.

## CONCLUSION

U.S. Merchants' fee request is substantiated, reasonable, and justified under applicable law. This Court should find Presto's numerous failed Lanham Act claims exceptional and order that U.S. Merchants is entitled to recover its costs, including reasonable attorneys' fees, incurred in defending against these meritless claims pursuant to 15 U.S.C. § 1117(a). The Court should also award U.S. Merchants its costs, including reasonable attorneys' fees, incurred in defending against Presto's meritless copyright infringement claims resolved prior to trial pursuant to 17 U.S.C. § 505.

Respectfully Submitted,

Dated: May 10, 2023   **ROBINS KAPLAN LLP**

*/s/ William E. Manske*
Christopher K. Larus (#0226828)
CLarus@robinskaplan.com
William E. Manske (#0392348)
WManske@robinskaplan.com
Travis K. Waller (*pro hac vice*)
TWaller@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

*Attorneys for Defendant*