# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| National Presto Industries, Inc., <br><br> Plaintiff, <br><br> v. <br><br> U.S. Merchants Financial Group, Inc., d/b/a Greenmade, <br><br> Defendant. | Case No. 18-CV-3321 (SRN/LIB) <br><br><br> **MEMORANDUM, OPINION, AND ORDER** |

John S. Artz and Christopher Mitchell, Dickinson Wright PLLC, 350 South Main Street, Suite 300, Ann Arbor, Michigan 48104; Yafeez Sohil Fatabhoy, Franklin M. Smith, and Andrea L. Arndt, Dickinson Wright PLLC, 2600 West Big Beaver Road, Suite 300, Troy, Michigan 48084; and Jeffer Ali and Nicholas S. Kuhlmann, Patterson Thuente Pedersen, P.A., 80 South 8th Street, Suite 4800, Minneapolis, Minnesota 55402, for Plaintiff.

Christopher K. Larus, Ellen Levish, Emily Jean Tremblay, Jessica Lee Gutierrez, and William E. Manske, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant U.S. Merchants Financial Group, Inc., d/b/a Greenmade's ("Defendant" or "U.S. Merchants") Motion for Judgment as a Matter of Law or in the alternative for a New Trial or Remittitur [Doc. 758], Plaintiff National Presto Industries, Inc.'s ("Plaintiff" or "Presto") Motion for a Permanent Injunction [Doc. No. 754], both U.S. Merchants' and Presto's Motions for Attorney Fees [Doc. Nos. 753, 762], and both parties' Bills of Costs [Doc. Nos. 751, 756]. All parties oppose their counterparty's

motions.  For the reasons set forth below, the Court respectfully denies the motions before it and awards costs in the amount of $18,204.06 to Presto and $44,463.63 to U.S. Merchants.

## I.   BACKGROUND

The Court refers interested parties to the record before this Court, including the Court's previous Findings of Fact and Conclusions of Law. (*See* "FOFCOL" [Doc. No. 589].)  However, a broad summary of the facts of the parties' dispute highlighting facts relevant to these motions is provided below.

### A.   Facts

Presto, a longstanding consumer-goods manufacturer, sells a parabolic electric heater under the brand name "HeatDish." (FOFCOL 5, ¶ 4.)  For most of the past 30 years, Presto has exclusively sold the HeatDish parabolic electric heater to Costco Wholesale Corporation ("Costco").  (FOFCOL 5, ¶ 4; 70, ¶ 232.)  Presto's President and CEO is Ms. Maryjo Cohen. (FOFCOL 5, ¶ 5.)  U.S. Merchants is a company that manufactures and distributes a variety of consumer products and packaging solutions to retailers, including Costco.  (FOFCOL 6, ¶ 6.)  U.S. Merchants was founded in the early 1980s and is co-owned by Mr. Jeff Green and his wife, Marie.  (FOFCOL 6, ¶ 7.)  U.S. Merchants also does business under the trademark "Greenmade."  (FOFCOL 7, ¶ 11.)

The HeatDish was developed by Presto in the late 1980s, with its first model released in 1989. (FOFCOL 7–8, ¶¶ 13-16.)  The HeatDish design was tweaked repeatedly over the years, with new design features added and/or removed and at least ten models of the HeatDish released since 1989. (FOFCOL 9–10, ¶¶ 18-20.)  An instruction manual is included in the box with each HeatDish.  (*See* Jury Trial Tr. [Doc. No. 734] 83:4–6.)  The

version of the HeatDish manual that Presto alleged infringes on its copyright was a manual released with the 1995 version of the HeatDish (the "1995 Manual").  Previously at issue, before Presto dismissed its claim,[1] was an allegation of copyright infringement as to the manual released with the 2016 version of the HeatDish (the "2016 Manual").[2]

In 2017, Costco began searching for a new supplier of a parabolic electric heater, seeking improvements over the design of the HeatDish, and at a better value.  (Jury Trial Tr. 320:2-6).   In April 2017, Gary Ojendyk, a former employee of Costco, contacted Mr. Green informing him that Costco was seeking a new supplier of parabolic electric heaters. (*Id.* 318:3-319:10).   Mr. Green subsequently contacted Mahesh Tanwani, a business contact in East Asia, to inquire about parabolic heaters generally.  (*Id.* 323:24-324:4).  On May 2, 2017, Mr. Tanwani sent an email to Mr. Green confirming that a Mercury brand[3] parabolic heater sample would be delivered that day, and included the heater packaging and instruction manual.  (Ex. P-162.)  Mr. Green responded that he had received the sample but that he needed a "better copy of the instruction and the information on the heater," as what was sent was illegible.  (*Id.*)

---

[1] As discussed *infra*, Presto stipulated to dismissal of its claim as to the 2016 Manual. (*See* Doc. No. 648).  The claim was dismissed on December 29, 2022.  (*See* Doc. No. 650).

[2] Jury trial exhibits were coded as either "P" for Plaintiff or "D" for Defendant, followed by an exhibit number.  The 1995 Manual is in the jury trial record as Ex. P-481. The 2016 Manual is in the record as Ex. P-64.  The initial published version of the Heat Machine's manual (the "Heat Machine Manual") is in the record as Ex. D-270.

[3] Another brand of parabolic heater not at issue in this litigation.

Mr. Green and U.S. Merchants also obtained several samples of the HeatDish.  (Jury Trial Tr. 325:6-25.)  On May 5, 2017, Mr. Green sent Mr. Tanwani a hyperlink to Costco's product webpage for the HeatDish, saying that Mr. Ojendyk had instructed him to forward the link and that "any product Costco reviews will need to have all the features" of the HeatDish.  (Ex. P-161.)  Mr. Green also instructed U.S. Merchants general manager, Larry Khemlani, to send boxed samples of the HeatDish (which included a copy of the operating manual) to U.S. Merchants' overseas manufacturer. Between one and five samples of the Heatdish were sent.  (Jury Trial Tr. 325:11-25; 332:1-333:20.)  When asked under oath, Mr. Green could not say which models of the HeatDish had been sent to the manufacturer by U.S. Merchants.  (*Id*. at 333:7-10.)

By the middle of November 2017, U.S. Merchants had completed a working version of its parabolic heater.  In an email exchange between Mr. Green, Mr. Ojendyk, and Robert Calder (Mr. Ojendyk's business partner), the parties discussed various needed improvements to the design of U.S. Merchants' heater by comparison to the HeatDish.  (*See* Ex. P-21.)  Mr. Calder noted that U.S. Merchants' factory in China "[had] samples of the competitive heater."  (*Id*.)  The product continued in development, and Costco eventually purchased a version of The Heat Machine for sale in a limited test market during the 2018-2019 heater season.  (FOFCOL 34, ¶ 106.)

On May 7, 2018, Mr. Green ordered approximately 10,000 units of The Heat Machine for delivery to Costco.  Mr. Tanwani instructed Mr. Green that he needed artwork for the packaging as well as warranty information and an instruction manual as soon as possible.  (*See* Ex. D-269.)  With respect to the manual, Mr. Green responded that he did

not have "any idea on how to do this" and asked that Mr. Tanwani work with the factory to produce one. (*Id.*) Mr. Tanwani worked with the factory and provided a draft of the instruction manual on May 14, 2018. (*Id.*) Mr. Green then provided the draft manual to certain employees at U.S. Merchants, including firm Vice President Denis Karpeles, telling them, "Let's review the attachments as well as the items below, to make sure that everything is well covered on the box, instruction manu[a]l and limited warranty." (Ex. P-8.) Mr. Green then affirmed to Mr. Tanwani that he would "review both the sticker and the instructions, and will com[m]ent back to you tomorrow or Wednesday with any changes." (Ex. D-269.)

On May 25, 2018, Mr. Green received a revised version of the Heat Machine Manual from U.S. Merchants' art department, and sent it to Mr. Tanwani approximately eight hours later. (Ex. P-18.) While Mr. Green initially testified that U.S. Merchants' review was only for "grammatical errors [and] layout," a comparison of the 1995 Manual, the first draft of the Heat Machine Manual, and the second draft of the Heat Machine Manual noted two changes to the prose. (Jury Trial Tr. at 353:1-361:2.) Both changes removed phrases that were identical to phrases in the 1995 Manual and replaced them with similar but substantively different phrases.[4] In response, Mr. Green said he believed these

---

[4] Both phrases at issue were included on the manuals' covers. The phrase "Warmth you can feel almost instantly...without first heating the entire room." is written on the cover of the 1995 Manual and the first draft of the Heat Machine Manual. The cover of the published Heat Machine Manual issued with the product instead read "Pinpoints heats. Focuses warmth on you instead of the entire room." Similarly, while the phrase "Feels like three times the heat, costs a third less to operate" is written on the cover of the 1995 Manual

changes were introduced by Mr. Karpeles because he thought it "read better." (Jury Trial Tr. at 360:15-18.)   However, at the same time, the Heat Machine Manual continued to include language that was inaccurate as to The Heat Machine's specifications, and that was identical to the 1995 Manual, but which was not included in the 2016 Manual.[5]   As with certain other products that U.S. Merchants has a hand in producing, The Heat Machine's packaging and manual included a Greenmade logo. (*See* Exs. P-63 and D-270; Jury Trial Tr. at 466:13-467:22.)

Beginning in September 2018, U.S. Merchants began to receive boxes of The Heat Machine from their overseas manufacturer, which were then sent to Costco for sale. As discussed in Section I.B, *infra*, Presto filed a complaint initiating this lawsuit against U.S. Merchants on December 4, 2018. (*See* Compl. [Doc. No. 1].) U.S. Merchants was not served with the complaint but was informed by Costco that they had been sued. (Jury Trial Tr. at 396:2-15.) Mr. Green testified at trial that while he did not recall the "exact date" on which he learned that U.S. Merchants had been sued, he became aware "shortly after Costco received [the complaint]," and affirmed that it was within a matter of days. (*Id.* at 445:2-12.) After becoming aware of Presto's lawsuit, U.S. Merchants did not temporarily cease selling The Heat Machine with the existing manual while evaluating the claim of

---

and the first draft of the Heat Machine Manual, the published Heat Machine Manual instead reads "Feel 3X Warmer." (*See* Exs. P-8, P-63, and P-481.)

[5] For instance, both this draft of the Heat Machine Manual and the 1995 Manual included the instruction to "[w]rap the cord around the base pedestal and store heater in dry location[,]" even though The Heat Machine includes a cord wrap on the bottom of the heater. (Jury Trial Tr. at 342:18-345:9.)

infringement.  Rather, Mr. Green testified that his initial response was to obtain a copy of the complaint, discuss the lawsuit with counsel, and instruct U.S. Merchants' employees to investigate whether and how the manual was copied.  (*Id.* at 396:16-397:16.)

On December 12, 2018, U.S. Merchants' employee Barbara Trejo provided Mr. Green with a side-by-side comparison of the instructions of the Heat Machine Manual and the 2016 Manual, which showed significant similarities in the text.  (*See* Ex. P-132.)  For instance, Ms. Trejo's email points out that the 2016 Manual contains the following language:

> How the parabolic heater can help save energy…
>
> The parabolic reflector focuses heat output, like a satellite dish concentrates TV signals, so it requires less energy than convention election heaters to deliver all the warmth you'll want…
>
> A parabolic heater coupled with other conservation measures will help save energy in your home. For example, energy savings may be realized by keeping the thermostat on your central heating system at a lower than normal setting and thereby decreasing the average room temperature. Personal comfort can be maintained at these lower room temperatures by using a parabolic heater.

(*Id.*)  Meanwhile, the Heat Machine Manual contained the following language:

> How the "Parabolic Heater" can help save energy…
>
> The parabolic reflector focuses heat output, like a satellite dish concentrates TV signals, so it requires less energy than convention election heaters to deliver all the warmth you will want…
>
> A "parabolic heater" coupled with other conservation measures will help save energy in your home. For example, energy savings may be realized by keeping the thermostat on your central heating system at a lower than normal setting and thereby decreasing the average room temperature. Personal comfort can be maintained at these lower room temperatures by using a parabolic heater.

(*Id.*)   Ms. Trejo's email also points out that both the 2016 Manual and the Heat Machine's box use the specific phrases "It feels like three times the heat" and "costs a third less to operate."  (*Id.*)   As Green conceded at trial, the 2016 Manual included a 2016 copyright notice.  (Jury Trial Tr. at 447:13-448:7.)

Despite Ms. Trejo's email to Mr. Green, U.S. Merchants continued sending its remaining inventory to Costco, and took no steps to stop any shipment of The Heat Machine with the allegedly infringing manual.  (Jury Trial Tr. at 461:14-17.)   On January 11, 2019, U.S. Merchants sent a letter to Presto stating that U.S. Merchants was confident that it was not infringing on Presto's intellectual property but that it would be willing to discuss possible changes to The Heat Machine's design and/or manual.  (*See* Ex. D-68.) U.S. Merchants also raised "serious concerns" that Presto's marketing of the HeatDish as being "UL compliant" was false advertising.  (*Id.*)

On January 24, 2019, with only a few weeks remaining in the "heater season" and with only approximately one week remaining of shipments to Costco, U.S. Merchants replaced the manuals in their remaining inventory of The Heat Machine with a revised draft.  (*See* Ex. D-113; Jury Trial Tr. at 453:16-462:10.)   During the time period between U.S. Merchants' notice that the manuals contained allegedly copied language and the replacement of the original Heat Machine Manual, approximately 50 percent of U.S. Merchants' stock of Heat Machines for the 2018-2019 season were shipped.  (*See* Ex. P-59; Jury Trial Tr. at 460:14-18.)   Moreover, the revised Heat Machine Manual continued to include some language that was identical language to the 1995 Manual.  (Jury Trial Tr. at 462:11-466:6.)

8

In the autumn of 2019, U.S. Merchants began selling a new version of The Heat Machine with a new manual, which is not alleged to infringe on Presto's copyright. (*See* Ex. D-123; Jury Trial Tr. at 339:19-341:1.)

### B.     Procedural History

Presto filed an eleven-count complaint initiating this lawsuit against U.S. Merchants on December 4, 2018. (*See generally* Compl.)  Counts I through V and VIII alleged violations of the Lanham Act, 15 U.S.C. §§ 1125, for trade dress and trademark infringements as well as unfair competition. (Compl. 14–26, ¶¶ 36-97; 30–31, ¶¶ 122-31.) Count VI alleged copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, for infringing copyrights with respect to both packaging and instruction manuals. (Compl. 26–29, ¶¶ 98-115.)  Count VII alleged tortious interference with prospective business relations. (Compl. 29–30, ¶¶ 116-21.)  Count IX alleged common law unfair competition. (Compl. 32–33, ¶¶ 132-39.)  Counts X and XII alleged violations of Minnesota's state consumer protection statutes. (Compl. 33–35, ¶¶ 140-61.)

The parties filed cross-motions for summary judgment, and on June 18, 2021, the Court granted in part and denied in part U.S. Merchants' Motion for Summary Judgment and denied Presto's Motion for Summary Judgment. (Summ. J. Order [Doc. No. 335] 86–87.)  Specifically, the Court granted summary judgment in favor of U.S. Merchants and dismissed Counts II–V and VIII. (*Id*. at 86.)  The Court also granted summary judgment in favor of U.S. Merchants as to Presto's packaging copyright infringement claim in Count VI. (*Id*.)  The Court granted partial summary judgment in favor of U.S. Merchants on Counts IX, X, and XI, to the extent that the allegations relied on the dismissed trade dress

and packaging copyright claims. (*Id.* at 86–87.) The Court denied summary judgment to U.S. Merchants as to Counts I and VII, as to the instruction manual copyright claims in Count VI, and as to Counts IX, X, and XI to the extent that the allegations relied on the surviving trade dress and copyright claims. (*Id.* at 87.)

After briefing, the Court determined that Presto had a right to a jury trial on Count VI, and that Counts I, VII, IX, X, and XI would be submitted to the Court by way of a bench trial. (Trial Right Order [Doc. No. 356] 9.)

A bench trial was held over six days on April 21, 22, and 25–28, 2022. (*See* FOFCOL 4.) The Court issued its Findings of Fact, Conclusions of Law, and Order on August 18, 2022, in which it entered judgment in favor of U.S. Merchants on Counts I, VII, IX, X, and XI. (FOFCOL 92.)

On December 28, 2022, prior to the start of the jury trial on the copyright claims, the parties jointly stipulated to dismissal of Presto's copyright infringement claim regarding the 2016 Manual. (Stipulation [Doc. No. 648].) A jury trial was held from February 6–9, 2023, on Presto's surviving Count VI claim regarding the 1995 Manual only. On February 9, 2023, the jury found in favor of Presto and awarded Presto $150,000 in statutory damages for U.S. Merchants' copyright infringement. (Verdict [Doc. No. 728].)

On March 20, 2023, Presto filed a post-judgment motion requesting a permanent injunction and an award of attorney's fees following the jury's finding of copyright infringement with respect to the 1995 Manual. (Presto Mot. [Doc. No. 753].) On the same day, U.S. Merchants filed two simultaneous motions. U.S. Merchants moved this Court to overturn the jury verdict and enter judgment as a matter of law in favor of U.S. Merchants

on Count IV, or in the alternative to order a new trial or a conditional remittitur.  (U.S. Merchants New Trial Mot. [Doc. No. 758].)   Additionally, U.S. Merchants moved this Court for an "exceptional case designation" under the Lanham Act and for an award of attorney's fees on the Lanham Act and copyright infringement claims.  (U.S. Merchants Fees Mot. [Doc. No. 762].)  Additionally, both parties seek their costs, (Presto Bill of Costs [Doc. No. 751]; U.S. Merchants Bill of Costs [Doc. No. 756]), and both lodge objections to the other party's accounting (U.S. Merchants Costs Objs. [Doc. No. 755]; Presto Costs Objs. [Doc. No. 778]).  The issues were fully briefed, and following a motion hearing on July 10, 2023, the Court took the matter under advisement.

## II.   DISCUSSION

### A.   U.S. Merchants' Motion for Judgment as a Matter of Law, a New Trial, and Remittitur

As noted, U.S. Merchants renews its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or, alternatively, moves for a new trial under Rule 59(a)(1)(A).

### 1.   Legal Standards of Review for Motions for Judgment as a Matter of Law, a New Trial, and Remittitur

Federal Rule of Civil Procedure 50(b) provides that a party may renew a motion for judgment as a matter of law within 28 days after entry of judgment, and may include an alternative request for a new trial under Rule 59. A renewed motion for judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis" to return the verdict that it reached. *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017) (citing Fed. R. Civ. P. 50(a)(1)). "Judgment as a matter of

law is only appropriate when no reasonable jury could have found for the nonmoving party." *Monohon v. BNSF Ry. Co.*, 17 F.4th 773, 780 (8th Cir. 2021) (quoting *Southern Wine & Spirits of Nev. v. Mountain Valley Spring Co.*, 646 F.3d 526, 533 (8th Cir. 2011)).

The law imposes a heavy burden on a party seeking to interfere with a jury verdict. *Bavlsik*, 870 F.3d at 805.  The factors applicable to such a motion "reflect[ courts'] hesitancy to interfere with a jury verdict," and therefore require a trial court to:

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*Id.* (citations omitted).  In other words, the Court does not need to agree with the jury's evaluation of the facts, and it is irrelevant whether the Court "might have reached a different result from the jury." *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 803 (8th Cir. 1994) (citations omitted).  Rather, the Court must only evaluate whether *any* reasonable jury could have reached the result it did based on the evidence presented on the record at trial. *See Monohon*, 17 F.4th at 780; *see also Walsh v. Nat'l Comp. Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) ("A jury verdict will not be set aside unless there is a complete absence of probative facts to support a verdict.")

When a party moves for a new trial under Rule 59, the court may order a new trial only "to prevent injustice or when the verdict strongly conflicts with the greater weight of the evidence." *Maxwell v. Baker, Inc.*, 160 F.R.D. 580, 581 (D. Minn. 1995).  This standard is read by the Eighth Circuit to allow a new trial only where granting a new trial is necessary

to "prevent a miscarriage of justice." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). A "trial court may not grant a new trial simply because the trial court would have found a verdict different from the one the jury found." *Id*. Motions for a new trial are generally disfavored. *See Keller Farms, Inc. v. McGarity Flying Serv.*, LLC, 944 F.3d 975, 984 (8th Cir. 2019).

Finally, it is within the trial court's discretion to enter a remittitur of damages where the damages awarded are excessive. *See Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 66 (1966). A district court "should grant remittitur only when the award is so excessive as to shock the court's conscience." *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir. 1996) (citing *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir. 1994)).

### 2.  Analysis

Each of Presto's and U.S. Merchants' claims are discussed *infra*, in turn. Broadly, however, the fundamental question before the Court is whether the jury, in light of the jury instructions given at trial, could reasonably infer from the evidence that U.S. Merchants copied the 1995 HeatDish instruction manual (in whole or in part), and whether U.S. Merchants' infringement was willful.

### a.  U.S. Merchants' Alleged Waiver of Arguments

Presto argues that U.S. Merchants waived its argument as to whether U.S. Merchants "copied" the 1995 Manual by failing to include language that "copying" is equivalent to authorship in either its proposed jury instructions or trial brief. (Opp. Br. [Doc. 780] at 5–9.) U.S. Merchants argues that it has consistently asserted that, although

the 1995 Manual may have been copied, it did not copy the 1995 Manual and proving that U.S. Merchants copied the manual is a necessary element of Presto's claim. (Reply Br. [Doc. No. 783] at 2–4.) As it had made this argument all along, its defense is not waived. (*Id.*)

Presto's waiver argument is unavailing. Presto cites *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 830–31 (8th Cir. 2019), for the principle that a defendant waives a defense not specifically pled. But unlike in *Klingenberg*, where the defendant raised an entirely new affirmative defense after the issuance of a pretrial order, U.S. Merchants' argument is not new. Rather, U.S. Merchants has consistently argued that it did not copy the 1995 Manual. Here, U.S. Merchants argues that no reasonable jury could have found that U.S. Merchants engaged in conduct meeting the legal standard for "copying" the 1995 Manual, and thus an essential element of Presto's claim has not been proved. This is consistent with its prior briefing and argument before the Court. As such, the Court finds that U.S. Merchants' argument is not waived.

### b. Whether U.S. Merchants' "Copied" the Instruction Manual

To establish that a defendant copied a protected work, a plaintiff must show that (i) the defendant had access to the work and (ii) there is "substantial similarity" between the two works. *See Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941-42 (8th Cir. 1992). The plaintiff can establish access by showing that the defendant had an opportunity to view or to copy his work. *Id.* (internal citations omitted). However, where the similarity between the two works is "so striking as to preclude any possibility of independent creation, access may be inferred." *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1142 n. 3

(8th Cir. 1989) (citing *Ferguson v. Nat'l Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978)), *cert. denied*, 493 U.S. 994 (1989).

The parties do not seriously dispute whether copying occurred.  There are striking and undisputed similarities—with large swathes of text and specific turns of phrase copied verbatim—between the 1995 Manual and Heat Machine Manual which alone may imply access.  Moreover, U.S. Merchants has no explanation for how the striking similarities between the 1995 Manual and U.S. Merchants' manual could have come about other than through copying.  (*See* Jury Trial Tr. 337:21-339:9.)

Rather, the parties dispute whether there is sufficient evidence in the record to find U.S. Merchants legally responsible for any copying that occurred.  U.S. Merchants argues that the record includes no evidence from which a reasonable jury could conclude that *U.S. Merchants itself*, rather than its overseas manufacturer, copied the 1995 Manual.  (Mov. Br. [Doc. No. 759] at 8–14; Reply Br. 6–9.)  U.S. Merchants argues that as Presto only claimed that U.S. Merchants was liable for copying the 1995 Manual, rather than for distribution, agency, or authorization of the manual, Presto failed to prove that U.S. Merchants performed the volitional acts necessary to find U.S. Merchants liable for direct copying.  (*Id.*)  Presto argues that the evidence in the record establishes that the similarities between the 1995 Manual and Heat Machine Manual are so substantial that both access and copying can be inferred, that there is a reasonable possibility that U.S. Merchants accessed the 1995 Manual directly before it was copied, and that making changes to and issuing the Heat Machine Manual with the Greenmade trademark renders U.S. Merchants liable.  (Opp. Br. at 9-20.)

In addition to the requirements that a claim for copyright infringement establish ownership of a valid copyright and unauthorized copying, a claim for direct copyright infringement must "allege volitional conduct on the part of the defendant." *Parker v. Google, Inc.*, 242 Fed. Appx. 833, 837 (3rd Cir. 2007); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004); *Bwp Media United States v. T & S Software Assocs.*, 852 F.3d 436, 440 (5th Cir. 2017) (finding that "every circuit to address this issue has adopted some version of…the volitional-conduct requirement.")  The volitional-conduct requirement "stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).  As such, a volitional act is an act which "causes in some meaningful way an infringement." *Stross v. Realty Austin, LLC*, Case No. 1:20-cv-01071-RP, 2021 WL 2942399 at *3 (W.D. Tex. July 13, 2021) (citing *Bwp Media*, 852 F.3d at 440 n.1).  Still, the defendant does not need to know that it is infringing when it engages in a volitional act, as "copyright infringement is a strict liability violation and intent is not a required element of the claim." *Fair Isaac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110, 1117 (D. Minn. 2020) (citing *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1931)).

U.S. Merchants' argument that the evidence is insufficient to show that it engaged in the volitional act of copying is unavailing.  A reasonable jury could find that U.S. Merchants engaged in volitional conduct when it edited the first draft of the Heat Machine Manual to change formatting, art, and the manual's language to make it "read better."  Even if the overseas manufacturer performed most of the drafting of the Heat Machine Manual,

U.S. Merchants substantively edited it, added its own formatting, art, and creative spin to the language of the manual, and then issued it under its own brand, Greenmade.  Where courts have found that the defendant did not meet the volitional-conduct requirement for direct copying, the defendant's conduct was wholly passive.  *Compare*, *e.g.*, *Sid Avery & Assocs. v. Pixels.com, LLC*, Case No.: CV 18-10232-CJC(JEMx), 2021 WL 736258 at *3 (C.D. Cal. Feb 24, 2021) (holding that the defendant's online photo marketplace did not engage in volitional conduct when it did not select what images were uploaded for sale, direct what was bought or sold, but only controlled the code facilitating transactions, prohibited infringing conduct, and removed infringing works and contributors from their website as quickly as possible) *with Dish Network v. Fraifer*, Case No. 8:16-cv-2549-TPB CPT, 2021 WL 6690278 at *14 (M.D. Fla. Dec. 13, 2021) (holding that where the defendant distributor of television set-top boxes guided customers towards infringing conduct through its system's use of "encoders," which transformed otherwise unviewable infringing content into formats suitable for streaming over the internet, defendant had engaged in a volitional act and directly infringed on the plaintiff's copyrights).

U.S. Merchants' citation to *Airframe Systems, Inc. v. L-3 Communications Corp.*, 658 F.3d 100, 106-07 (1st Cir. 2011) to argue that the defendant must "actually cop[y] the work as a factual matter," is inapposite.  The First Circuit in that case held that infringement could not be proven absent any evidence of similarity to a valid copyright, and never analyzed the issue of what kind of a volitional act is required to establish direct copying. *Id.*  The First Circuit does not impose a requirement that the defendant personally draft all of a copied text in order to "copy" the original work under copyright law.

Finally, U.S. Merchants argues that Presto's invocation of U.S. Merchants' editing of drafts of their manual and distribution of their manual with their heater is improper, as Presto did not timely raise an argument for distribution liability. This argument is academic. In the instant case, a reasonable jury could infer that U.S. Merchants played a substantive role in producing the copyrighted work. Whether or not Presto timely raised a distribution-liability argument is of no import, as a reasonable jury could have found that U.S. Merchants participated in directly copying the Heat Machine Manual on the facts presented to it.

As a reasonable jury could have found—on the facts presented and guided by the jury instructions—that U.S Merchants directly copied the 1995 Manual when it edited, approved, and issued the Heat Machine Manual, the jury's verdict stands. As such, the Court denies U.S. Merchants' motion for judgment as a matter of law or for a new trial on this point.

### c. Willfulness

U.S. Merchants argues that the record does not support the jury's finding that its infringement of Presto's copyright was willful for four reasons: (1) a lack of evidence that U.S. Merchants copied the 1995 Manual (Mov. Br. 15–17; Reply Br. 9–12); (2) U.S. Merchants had no way of knowing that it had infringed on any copyright; (3) once U.S. Merchants was made aware of the specific alleged infringement, it requested but did not receive copies of the allegedly infringed-upon work; and (4) U.S. Merchants revised its instruction manual and replaced the allegedly infringing manual in its remaining inventory. (*Id*.) Presto argues that U.S. Merchants is not entitled to judgment as a matter of law or a

new trial because U.S. Merchants continued to distribute copies of the Heat Machine Manual after being informed that said activity constituted infringement, and that U.S. Merchants' revised Heat Machine Manual still infringed and contained protectible material. (Opp. Br. 20–25.)

Under copyright law, "willful" infringement constitutes infringement with "knowledge that an act constitutes an infringement, rather than mere purposeful performance of an action without knowledge of whether it is an infringement." *RCA/Ariola Intern., Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988). "Courts have found willful infringement when, for example, a defendant engages in infringing activity after receiving warning that the activity constitutes infringement and from the fact of a defendant's default." *Adventure Creative Group, Inc. v. CVSL, Inc.*, 412 F.Supp.3d 1065, 1073 (D. Minn. 2019) (internal citations omitted).

U.S. Merchants' argument largely relies on the assumption that "there is no evidence that U.S. Merchants copied Presto's 1995 instruction manual." (Mot. Br. at 15.) As discussed *supra*, the Court will not overturn the jury's finding that the evidence supported a reasonable inference that U.S. Merchants participated in copying the 1995 Manual. For the same reasons, the Court will also not overturn the jury's finding of willfulness. The jury considered facts including that: (1) large portions of the text of the Heat Machine were identical to the 1995 Manual; (2) U.S. Merchants changed the language of the draft manual in ways that reduced how closely the language of the Heat Machine Manual matched the 1995 Manual; and (3) U.S. Merchants included language in the Heat Machine Manual that did not match its product's specifications (suggesting that it came

from elsewhere).  Together, these facts could lead a reasonable jury to conclude that U.S. Merchants understood it was copying protected material and chose to do so anyway—the essence of willful infringement.

Moreover, even presuming that U.S. Merchants' conduct before being notified that it infringed was not willful, a reasonable jury could find that U.S. Merchants' conduct after being informed that it had infringed demonstrates willfulness.  As discussed *supra*, U.S. Merchants was notified that it had allegedly infringed Presto's copyright within a few days of December 4, 2018, and became aware through an evaluation by one of its employees that it was using copied language on December 12, 2018, but continued to sell its product and did not replace any manuals in its remaining stock of Heat Machines until January 24, 2019.  During this time period, which covered nearly the full remainder of the 2018-2019 "heater season," U.S. Merchants shipped approximately 50% of its total inventory for the 2018-2019 season.   While the defendant's delay in *Adventure Creative Group* was admittedly more egregious than in the instant case, a reasonable jury could still find willfulness.  No injustice would be prevented by a lengthy new trial, nor do the damages shock the conscience.  Accordingly, the jury's verdict stands, and the Court denies U.S. Merchants' motion for judgment as a matter of law or a new trial on the issue of willfulness.

### d.  Statutory Damages

The Copyright Act allows parties to elect statutory damages at any point in time prior to the entry of final judgment.  *See* 17 U.S.C. § 504(c).  If a plaintiff requests that a jury decide the amount of statutory damages, then the jury must determine the actual amount of statutory damages owed under the Act.  *Feltner v. Columbia Pictures Tv*, 523

U.S. 340, 355 (1998)). "A plaintiff can recover statutory damages even though it did not submit evidence regarding actual damages, such as lost profits[,]" as even for "uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of deterrence.]" *Capitol Records Inc.*, 680 F. Supp. 2d 1045, 1051-52 (citing *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996)), *vacated on other grounds by* 692 F.3d 899 (8th Cir. 2012); *see also Wilson v. Nat'l Bikers Roundup Inc.*, C/A No.: 3:15-4862-MGL-SVH, 2017 WL 9275157 at *3 (D.S.C. May 12, 2017) ("The amount of statutory damages awarded to a plaintiff within the range provided does not depend on actual damages.").

### i. Judgment As a Matter of Law

U.S. Merchants argues that it is entitled to judgment as a matter of law on the question of statutory damages, as Presto did not identify "any evidence, argument or calculation of statutory damages during the course of discovery." (Reply Br. at 12.) While Presto may elect statutory damages at any time prior to the entry of final judgment, U.S. Merchants argues, the negative consequences of its belated election are that Presto should be prohibited from introducing evidence related to statutory damages. (*Id*. at 12-13.) Presto argues that as it disclosed its claims for statutory damages from early on in the case and was not required to elect statutory damages prior to the entry of final judgment, statutory damages are necessarily available. (Opp. Br. at 25-26.)

Here, the parties agree that Presto was allowed to elect statutory damages. As discussed in the jury instructions, the parties agreed that Presto suffered no actual damages.

(*See* Jury. Instrs. [Doc. No. 724] at 12).  The cases cited by U.S. Merchants are inapposite, as they all concern situations in which there was some link (with the relevant damages theory undisclosed during discovery) between alleged actual damages and statutory damages, necessitating further discovery.  *See Ketab Corp. v. Mesriani Law Group*, CV 14-07241-RSWL-MRWx, 2016 WL 5921767 at *1-3 (C.D. Cal. Mar. 18, 2016); *Agence France Presse v. Morel*, 293 F.R.D. 682, 684-85 (S.D.N.Y. 2013); *Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F.Supp.3d 883, 886-89 (N.D. Cal. 2021).

The parties further agree that there is no link in this case between actual damages and statutory damages.  Moreover, the evidence considered by the jury on the issue of statutory damages is the same evidence considered for the purpose of determining whether U.S. Merchants infringed at all, and if so whether its infringement was willful. Unlike in the cases cited by U.S. Merchants, no discovery or additional evidence was needed for the jury to determine damages within the statutory range.  As such, U.S. Merchants is not entitled to judgment as a matter of law on this issue.

### ii.  A New Trial or Remittitur on Statutory Damages

U.S. Merchants argues that it is entitled to a new trial or remittitur on the issue of statutory damages as there were no actual damages to Presto from U.S. Merchants' infringement; Presto did not present evidence on most of the factors that the jury was instructed to consider; Presto did not demonstrate actual (let alone willful) copying of the 1995 Manual; and U.S. Merchants took subsequent remedial action to avoid further infringement.  (Mot. Br. at 18-20; Reply Br. at 13-15.)  Presto argues that no connection to actual damages is necessary; the jury's award is supported by the evidence and tied to the

factors in the jury instructions; and U.S. Merchants' other arguments have already been considered and dismissed.  (Opp. Br. at 25-30.)

As an initial matter, for the reasons discussed *supra* at Section II(A)(ii)(2), U.S. Merchants' arguments as to whether it copied the 1995 Manual are unavailing.

As discussed *supra*, statutory damages do not require any connection to actual damages.  *See Cass County Music Co.*, 88 F.3d at 643.  The jury was advised that it could consider the following factors in determining the "just amount of statutory damages to award":

> [(1)] Defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright; [(2) t]he effect of Defendant's copyright infringement activity; [(3) t]he willfulness of Defendant's conduct; [(4)] Defendant's innocence; [(5) w]hether profit or gain from the alleged infringement was established; [(6) t]he harm to Plaintiff from the alleged infringement; [(7) t]he value of the copyright; [(8) t]he need to deter Defendant and other potential infringers; and [(9) a]ny mitigating circumstances.

(*See* Jury. Instrs. at 11-12).  While the jury's considerations include harm to the plaintiff, there was no categorical bar on a reasonable jury granting high statutory damages even in the absence of actual damages.

The issue is whether a reasonable jury could have, based on the record, reasonably awarded the maximum amount of statutory damages in this case.  The jury could have reasonably determined on the facts before it that U.S. Merchants' infringement was willful, and it failed to remedy its infringement in a timely way.  Therefore, a reasonable jury could have concluded that a harsh penalty is necessary to deter U.S. Merchants—a significant firm in the consumer-goods manufacturing and marketing sector—and other firms like it

from infringing in a similar manner in the future. The jury's decision does not cause a miscarriage of justice or constitute an award so excessive so as to countenance remittitur. As such, U.S. Merchants is not entitled to a new trial or remittitur.

### B.        Presto's Motion for a Permanent Injunction

Presto seeks a broad permanent injunction protecting its copyright in the 1995 Manual from future infringement.   In cases concerning the Copyright Act, when considering whether to grant a permanent injunction, the movant must show entitlement to a permanent injunction by demonstrating: (1) irreparable harm; (2) that legal remedies are inadequate to compensate for any injury; (3) that the balance of hardships favors the moving party; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Considering the factors for a permanent injunction, Presto argues that it should be granted a permanent injunction as: (1) it has actually succeeded on the merits; (2) it will suffer irreparable harm in the absence of permanent injunctive relief as the lack of a permanent injunction would constitute a forced license of the 1995 Manual, particularly given U.S. Merchants' alleged continued infringement; (3) the balance of harms favors Presto; and (4) the public interest is best served by upholding the copyright.  (Pl. Injunctive Relief Br. [Doc. 755] 2–10.)

 U.S. Merchants argues that Presto's request for a "broad" injunction is procedurally improper, as (1) U.S. Merchants stopped using its old manual years ago; (2) Presto does not propose any specific activity to be enjoined; (3) Presto dismissed its claim of infringement as to the 2016 Manual; and (4) Presto has never alleged that U.S. Merchants'

current manual infringes its copyright.  On the merits of the injunction, U.S. Merchants argues that: (1) there is no irreparable injury as Presto was not injured by the infringement; (2) legal remedies are not inadequate; and (3) the balance of harms does not favor Presto. (Def's. Injunctive Relief Br. [Doc. 777] 5–16.)

Presto's request for an injunction is denied.  U.S. Merchants states that it has not distributed its at-issue manual for several years and has been distributing new iterations of its heaters with a revised manual since 2019.  (Def's. Injunctive Relief Br. 6.)  While Presto raises the specter of infringement in the future, it has never claimed infringement with respect to U.S. Merchants' more recent manuals.  (*See, e.g.,* Pretrial Conf. Tr. [Doc. 537] 20:8–22:2.)  Injunctive relief requires that the alleged harm to be enjoined be more than a speculative threat.  *See*, *e.g.*, *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir. 1979) ("[T]he speculative nature of the threatened harm support[s] the denial of injunctive relief.").

Moreover, the parties here agreed, and the jury found, that there were no actual damages for U.S. Merchants' infringement of Presto's copyright to the 1995 Manual.  This makes Presto's claim for any real harm in the future—let alone irreparable harm—speculative.  The balance of harms also favors U.S. Merchants, whose enterprise would face far more immediate disruption from an injunction than Presto would from the lack of one.  As such, the Court respectfully denies Presto's motion.

**C.**  **U.S. Merchants' Motion to Designate This Case As An Exceptional Case Under the Lanham Act and Award Attorneys' Fees**

Pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, a district court may award reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a); *see Safeway Transit LLC v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020). The prevailing party requesting fees has the burden of proving that the case is "exceptional" within the meaning of the Act by a preponderance of the evidence. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (holding that preponderance of the evidence is the proper burden for similar fee-shifting language in the Patent Act, and noting the standard is true of "comparable fee-shifting statutes" and is "generally applicable in civil actions"); *also Verisign, Incorporated v. XYZ.COM LLC*, 891 F.3d 481, 485 (4th Cir. 2018) (holding that a preponderance of evidence standard applies to § 1117(a) based on *Octane Fitness*); *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd*, 839 F.3d 1179, 1181 (9th Cir. 2016) (same). "Exceptional" within the meaning of the Lanham Act, means what it is generally understood to mean, that is "uncommon, not run-of-the-mill." *Safeway Transit LLC*, 954 F.3d at 1182 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)). An exceptional case is one that stands out from others, either with respect to the substantive strength of a party's litigating position, or to the unreasonable manner in which the case was litigated. *Id*. (citing *Octane Fitness*, 572 U.S. at 554); *also Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 346 (8th Cir. 2018).

To determine whether a case is exceptional under the Lanham Act, a district court "may consider a nonexclusive list of factors." *Safeway Transit LLC*, 954 F.3d at 1182 (internal quotations omitted). These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. (quoting *Octane Fitness*, 572 U.S. at 554). Exceptional cases under the Lanham Act might include cases where attorney conduct, while not necessarily independently sanctionable, is willfully and deliberately unlawful or otherwise justifies an award of fees.[6] *Id*.; *also First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 771 (8th Cir. 2012). "Because the statute states that the court 'may' award attorney's fees in exceptional cases, the district court retains discretion as to the award of attorney's fees even if it finds a case to be exceptional." *Safeway Transit LLC*, 954 F.3d at 1183 (quoting *First Nat'l Bank in Sioux Falls*, 679 F.3d at 771).

---

[6]     Presto argues, both in its briefing ([Doc. No. 779] at 11) and at oral argument (Tr. at 92) that a finding that at least "some evidence" in the record supports the non-prevailing party's claims precludes a finding that the action was substantively unreasonable. That standard flows from the Eighth Circuit's former requirement that an exceptional case be "groundless, unreasonable, vexatious, or pursued in bad faith." *See Scott Fetzer Co. v. William*, 101 F.3d 549, 555 (8th Cir. 1996) (holding that a case cannot be "groundless" if at least "some evidence in the record" supports the non-prevailing party's position). Because the former standard was overruled by the Supreme Court in *Octane Fitness* and appears to no longer be relied upon by the Eighth Circuit (*see, e.g.*, *Safeway Transit*, 954 F.3d at 1182; *Sturgis Motorcycle Rally*, 908 F.3d at 346), this Court finds that the proper standard is simply whether the case stood out with respect to the substantive strength of the litigating positions or by unreasonable litigation behavior. *See Pocket Plus, L.L.C. v. Runner's High, L.L.C.*, 579 F. Supp. 3d 1082, 1088 (N.D. Iowa 2022) (citing cases and finding that *Octane Fitness* overruled the "groundless, unreasonable, vexatious, or pursued in bad faith" standard).

U.S. Merchants argues that this case is exceptional and justifies an award of reasonable attorney's fees under the Lanham Act on three grounds.  First, U.S. Merchants argues that Presto's motivation justifies the award, because Presto's stated objective in the case was to force U.S. Merchants out of the parabolic electric heater market altogether.  Second, U.S Merchants argues that Presto's litigation tactics, including failing to serve the initial complaint, rejecting or ignoring efforts toward a resolution, resisting or delaying discovery, and taking a "shifting sands" approach to substantive claims, were unreasonable, costly, and made this case exceptional.  Finally, U.S. Merchants contends that this case is exceptional due to the substantive lack of merit of Presto's trade dress claims, evidenced by the fact that this Court ultimately found for U.S. Merchants on every Lanham Act claim.

Presto argues in response that its motivation in bringing this case was to protect its legitimate intellectual property rights, and that taking a hard stance and rejecting settlement offers does not make a case extraordinary.  Presto also argues that discovery delays and disputes are not uncommon or rare in litigation.  Finally, Presto argues that its Lanham Act claims had merit, noting that Count I survived the summary judgment stage and that there was at least some evidence in the record to support its other claims.

The record before the Court does not support a finding that this is an "exceptional" case.  The Court acknowledges that Presto employed some aggressive and unnecessary litigation tactics and that the Lanham Act claims were relatively weak.  That said, there is not sufficient evidence in the record for the Court to find the case was frivolous, objectively unreasonable, involving willfully unlawful attorney conduct, or otherwise deserving of an

"exceptional case" designation. The Court found sufficient evidence of a fact issue for Count I to survive summary judgment, and although it dismissed the other Lanham Act counts at summary judgment, such a dismissal does not render the claims "objectively unreasonable." The Court also does not find that the litigation tactics displayed here on their own render this case rare or exceptional. *See Safeway Transit*, 954 F.3d at 1183 (upholding the denial of attorney's fees despite aggressive litigation tactics and discovery abuses).

### D.    Parties' Cross Motions for Attorney Fees for Copyright Infringement

Both U.S. Merchants and Presto have moved the Court for an award of reasonable attorney's fees relating to the copyright infringement claims (Count VI of the Complaint). Presto alleged in Count VI that U.S. Merchants committed copyright infringement by directly copying portions of the 1995 Manual, the 2016 Manual, and of Presto's 2018 packaging. The Court found for U.S. Merchants at summary judgment with respect to the 2018 packaging, the parties stipulated to dismissal with prejudice with respect to the 2016 instruction manual, and a jury found in favor of Presto at trial with respect to the 1995 instruction manual.

17 U.S.C. § 505 provides that in any civil action for copyright infringement, "the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." The Supreme Court has interpreted this statute to mean that "prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510

U.S. 517, 534 (1994); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208 (2016) ("§ 505 confers broad discretion on district courts.").

When considering whether to make an award under § 505, district courts must make a decision "based on the totality of circumstances in a case." *Kirtsaeng*, 579 U.S. at 203. Fee awards under § 505 should not be routine or awarded automatically or by default, and are only to be awarded after a court has considered and weighed the relevant factors. *Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C.*, 9 F.4th 961, 965 (8th Cir. 2021). Courts consider a range of factors, none of which are controlling. *See Kirtsaeng*, 579 U.S. at 208. Courts must give "substantial weight" to the objective reasonableness of a party's litigating position, and take into account "all other relevant factors," including "frivolousness, motivation, compensation, and deterrence." *Designworks Homes*, 9 F.4th at 964; *see also Fogerty*, 510 U.S. at 534; *Kirtsaeng*, 579 U.S. at 210.

### 1.     The 1995 Manual

Presto asks the Court for an award of reasonable attorney's fees with respect to litigation over the 1995 instruction manual.  Presto argues that U.S. Merchants took objectively unreasonable litigation positions, positions that ultimately increased Presto's legal fees, in its defense against the 1995 instruction manual copyright infringement claim. Presto asserts that U.S. Merchants' denial of infringement was objectively unreasonable, based on the evidence submitted at trial.  Presto also argues that U.S. Merchants' 17 U.S.C. § 411(b) defense challenging the accuracy of Presto's copyright registration was objectively unreasonable because this Court found that in its summary judgment order Presto's copyright registrations were valid.  (*See* Summ. J. 67.)  U.S. Merchants responds

that Presto mischaracterizes its argument—U.S. Merchants' denial of infringement is based on its theory of liability, not on similarities or differences between the two manuals. U.S. Merchants also asserts that its § 411(b) defense was objectively reasonable because evidence in the record provides at least some support for the argument that Presto was aware of inaccuracies in its copyright registration.

A losing party's argument is objectively reasonable if serious or colorable arguments could be made in support of its position. *See Live Face on Web, LLC v. Renters Warehouse, LLC*, No. 17-cv-2127, 2019 WL 1097493, at *3 (D. Minn. Mar. 8, 2019). The Court finds first that its summary judgment order did not preclude U.S. Merchants from challenging Presto's copyright at trial. As the Court noted, "on each element of its instruction manual claim . . . genuine factual disputes also preclude summary judgment in Presto's favor." (Summ. J. 79–80.) Presto prevailed on this claim by a preponderance of the evidence, with a sufficient record for the Court to uphold the jury verdict. While the evidence was sufficient for a reasonable fact finder to infer that U.S. Merchants committed copyright infringement, U.S. Merchants easily raised colorable arguments in support of its defense, both as to its liability and as to the validity of the copyright itself. U.S. Merchants' litigating position was therefore not "objectively unreasonable."

Presto asks the Court to consider other factors in favor of an award of § 505 attorney's fees; specifically, that U.S. Merchants' infringement was willful, that U.S. Merchants did not make a good faith attempt to avoid infringement, and that a grant of fees would promote the purposes of the Copyright Act by encouraging parties to pursue actions even when the actual damages at stake are small. U.S. Merchants argues that the evidence

is insufficient to establish willfulness, that U.S. Merchants made good faith efforts to resolve the lawsuit on multiple occasions, and that awarding fees in this matter would not meaningfully promote the purposes of the Copyright Act.

This is not a case where the purposes of the Copyright Act would be meaningfully served by an award of attorney's fees.  A finding of willful infringement alone cannot compel an award of fees, as such an interpretation contravenes the discretion vested in the district court by the Copyright Act.  *See Designworks Homes*, 9 F.4th at 964–65 (holding that the decision to award fees is discretionary and must be made on a case-by-case basis considering the totality of the circumstances).  Presto has not established that U.S. Merchants acted in bad faith or with an improper motive such that the deterrence of future bad conduct is necessary.  Further, despite Presto's agreement that it could not prove actual damages in this case, Presto pursued and achieved a maximum statutory award.  The Court, having considered all relevant factors, finds that totality of the circumstances does not weigh in favor of a grant of attorney's fees, and respectfully denies Presto's motion.

### 2.    The 2016 Manual and the 2018 Packaging

U.S. Merchants asks the Court for an award of reasonable attorney's fees for successfully defending against Presto's copyright infringement claims with respect to the 2016 Manual and the 2018 packaging.  U.S. Merchants points out that both claims were dismissed prior to trial despite lengthy litigation, suggesting that Presto's position with respect to both was objectively unreasonable.  U.S. Merchants notes that the parties only arrived at the stipulated dismissal of the 2016 Manual claim after what this Court described as "gamesmanship" on the part of Presto and that the Court previously indicated it would

entertain a fees motion stemming from the claim.  (*See* Oct. 19, 2022 Tr. [Doc. No. 645] 30–32.)  U.S. Merchants also argues that Presto's tactics and delays throughout discovery warrant a fee award in this case.

Presto argues that failing to succeed on a claim does not in and of itself render a claim objectively unreasonable, and notes that its claim with respect to the 2016 Manual survived summary judgment.  Presto argues that its motivations were grounded in a legitimate desire to protect its intellectual property rights, and that an award of attorney's fees would not further the aims of the Copyright Act.

First, the Court does not find that Presto's arguments were "objectively unreasonable" such that they support an award of attorney's fees.  Presto points to evidence in the record for both claims that at least supports a finding that Presto's arguments were "colorable." *See Live Face on Web*, 2019 WL 1097493, at \*3.  Dismissal at the summary judgment stage does not necessarily render an argument unreasonable, the question is whether the claim was "colorable and not baseless." *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987).  U.S. Merchants does not argue that the 2018 packaging claim lacked merit for any reason other than the Court's summary judgment ruling, and the Court agrees with Presto that the claim, though weak, was not "baseless." *See id*. (upholding a denial of a defendant's request for attorney's fees for claims defeated at summary judgment).  As for the stipulated dismissal, U.S. Merchants argues that the stipulated dismissal with prejudice should function as a dismissal on the merits.  The Court notes that at the hearing on the 2016 Manual, the Court specifically stated that while it

would entertain a fee motion related to Presto's actions, because of the unnecessary delay and gamesmanship engaged in by Presto, it nonetheless reserved that issue for another time.

## III.   COSTS

Under Federal Rule of Civil Procedure 54(d), a prevailing party is "presumptively entitled to recover all of its costs." *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 554 (8th Cir. 2022) (quoting *in re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005)); Fed. R. Civ. Pro. 54(d)(1). However, costs are limited to enumerated categories of expenditure set out by statute. *See* 28 U.S.C. § 1920. The Local Rules and the District's Bill of Costs Guide further explain which costs are taxable. *See* D. Minn. LR 54.3; D. Minn., Off. of the Clerk of Ct., *Bill of Costs Guide* (July 2021), *available at*: https://www.mnd.uscourts.gov/bill-costs.

"District courts have substantial discretion in awarding costs under Rule 54(d)." *S&H Farm Supply*, 25 F.4th at 554 (quoting *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006); *Lochridge v. Lindsey Mgmt. Co., Inc.*, 824 F.3d 780, 783 (8th Cir. 2016) ("Notwithstanding th[e] presumption, the word 'should' [in Rule 54(d)(1)] makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court.") (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 377 (2013)). The losing party bears the burden of overcoming the presumption that expenses allowed by Section 1920 are not taxable. *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015).

### A.     Presto's Bill of Costs

Presto seeks $29,700.58 in costs for filing fees, copies of depositions and court records, and witness travel fees. (Pl.'s Bill of Costs 1, 3–4.)

U.S. Merchants objects to three aspects of Presto's request. First, it argues that Presto is not entitled to its appellate filing fee, as it has not yet prevailed on the claims appealed. (Def.'s Objs. 1–2.) Second, it asserts that Presto failed to file an invoice and explanatory affidavit relating to the certified deposition copy for Jeff Green. (Def.'s Objs. 2.) Third, U.S. Merchants contends that the Court should award Presto only one-sixth of its requested deposition costs to reflect that U.S. Merchants prevailed on five counts at the bench trial and Presto on one count at the jury trial. (Def.'s Objs. 3–4.)

In response, Presto withdraws its request for the appellate filing fee. (Pl.'s Costs Resp. [Doc. No. 785] 2 n.1.) It argues that U.S. Merchants' request for apportionment between the bench and jury trials lacks precedent and that the deposition costs are recoverable because the testimony was necessary for its copyright claim. (Pl.'s Costs Resp. 3–4.) In addition, Presto maintains that apportionment is inappropriate because U.S. Merchants' designations and motions practice required Presto to review the entire deposition transcripts. (Pl.'s Costs Resp. 4.) As for Mr. Green's deposition, Presto submitted an invoice and explanation of the costs with its Response. (*See* Pl.'s Costs Resp. 4–5; Second Fatabhoy Decl. [Doc. No. 786], Ex. 2.)

U.S. Merchants' first and second objections can be easily resolved. Presto has withdrawn its request for the appellate filing fee, rendering the issue moot. And although

it should have submitted the invoice and explanation for Mr. Green's deposition with Mr. Fatabhoy's first declaration, the Court finds both sufficient to justify the cost.

U.S. Merchants' request for apportionment of deposition costs, on the other hand, requires greater elaboration.  The Court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  The relevant inquiry "is whether the depositions reasonably seemed necessary at the time they were taken."  *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363. (8th Cir. 1997).  Presto seeks the costs of procuring certified deposition copies for Barbara Trejo, Robert Calder, Jeff Green, Jan Tanner, Costco and Lester Cox, Larry Khemlani, and Gary Ojendyk. (Pl.'s Bill of Costs 3–4.)  U.S. Merchants requests apportionment because all of these individuals testified at both the bench trial and the jury trial.

While "there is no rule requiring courts to apportion costs according to the relative success of the parties[,]" *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1348 (Fed. Cir. 2006), "[w]here each of the parties has prevailed on one or more of its claims, defense or counterclaims, the district court has broad discretion in taxing costs." *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1282 (8th Cir. 1980).  Some courts in this Circuit invoke this discretion to reduce cost awards in cases with mixed outcomes, while others reject such an approach.  *Compare Langel v. Ark. Found. for Med. Care*, No. 4:17-cv-00496 (KGB), 2022 WL 2392545, at *3 (E.D. Ark. July 1, 2022) (slip copy) (reducing award to one-fourth of defendant's initial request where the court dismissed two of plaintiff's claims with prejudice but declined to exercise supplemental jurisdiction over two remaining state law claims), *Noon v. City of Platte*

*Woods*, No. 20-cv-06124 (SRB), 2021 WL 4497854, at *2 (W.D. Mo. Sept. 30, 2021) (awarding one-third of defendants' requested costs where it prevailed on one claim but two remaining state claims continued to be litigated in state court), *and Gierer v. Rehab Med., Inc.*, No. 4:14-cv-1382 (CAS), 2018 WL 1397532, at *2 (E.D. Mo. Mar. 20, 2018) (awarding defendant one-fourth of its costs where it succeeded on one claim in the initial phase of litigation, but the court had yet to decide plaintiff's remaining three claims in second phase of litigation), *with Hoffmann Brothers Heating & Air Conditioning, LLC v. Hoffmann Air Conditioning and Heating, LLC*, No. 4:19-cv-00200 (SEP), 2023 WL 2681994, at *24–25 (E.D. Mo. Mar. 29, 2023) (slip copy) (awarding costs only to defendant because, "while both sides prevailed on certain claims," the defendant prevailed on the claims that "were the gravamen of this lengthy litigation" and won a larger judgment*), Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F. Supp. 2d 998, 1024 (D. Minn. Mar. 31, 2009) (declining to make each party bear their own costs or order apportionment where plaintiff did not succeed on every claim at trial), *and Tanner v. City of Sullivan*, No. 4:11-cv-1361 (NAB), 2013 WL 3287168, at *2 (E.D. Mo. June 28, 2013) (awarding only plaintiffs their costs, despite defendants prevailing on two counts at trial, because plaintiffs won a larger judgment).

The Court's research has not uncovered any cases with a procedural posture resembling the instant case—where one party prevailed on all claims tried at the bench trial, and the other party prevailed on the sole claim tried to the jury. Although National Presto won a monetary judgment, U.S. Merchants defeated the bulk of the claims that proceeded to trial (not to mention the claims dismissed at summary judgment). Moreover,

the bench trial lasted six days, (*see* Minute Entries for Bench Trial [Doc. Nos. 551, 555, 558, 563, 564, 568]), and the jury trial four days, (*see* Minute Entries for Jury Trial [Doc. Nos. 721, 722, 723, 725]), resulting in greater expense to U.S. Merchants. *See Scientific Holding Co., Ltd. v. Plessey Inc.*, 510 F.2d 15 (2d Cir. 1974) (awarding costs to defendant who lost on counterclaim but defeated plaintiff's claim after "three weeks of trial, 16 witnesses, over 1,800 pages of testimony and more than 100 exhibits").

Under these circumstances, the Court will exercise its discretion and require the parties to share the burden of the overlapping deposition costs. Each party's request for the deposition copies for Ms. Trejo, Mr. Calder, Mr. Green, Ms. Tanner, Mr. Cox (personally and as Costco's designated representative), Mr. Khemlani, and Mr. Ojendyk will be reduced by half. *See Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 999 (N.D. Cal. 2009) (reducing defendants cost award for bench trial by half where they only partially succeeded at subsequent jury trial). Thus, the Court will award Presto $10,991.52 in deposition costs.[7]

Adding the other costs requested, the Court awards Presto a total of $18,204.06 in costs.[8]

---

[7] ($2,648.50 + $3,941.20 + $3,708.20 + $2,193.65 + $4,009.94 + $1,971.50 + $3,510.05) / 2 = $10,991.52.

[8] Depositions ($10,991.52) + (Filing Fee) $400 + (Pro Hac Vice Fees) $600 + (Jury Trial Fees) $5,958.63 + (Witness Fee) $253.91 = $18,204.06.

**B.  U.S. Merchant's Bill of Costs**

U.S. Merchants seeks $54,105.75 in costs for deposition transcripts, hearing transcripts, and daily bench trial transcripts.  (Def.'s Bill of Costs; Manske Decl. [Doc. No. 757] ¶ 7–13.)

Presto objects, first, that U.S. Merchants has provided an insufficient and conclusory explanation of its need for expedited "Hourly" and "Realtime" bench trial transcripts. (Pl.'s Objs. 4–5.)  Similarly, it next argues that U.S. Merchants has not explained the necessity of the hearing transcripts for use at trial. (Pl.'s Objs. 6–7.)  Lastly, National Presto asserts that U.S. Merchants' request for expedited deposition fees is inadequately justified. (Pl.'s Objs. 7–10.)  In particular, Presto objects to taxation of deposition costs for Douglas Frederick, who was not a trial witness.  (Pl.'s Objs. 10.)

For its part, U.S. Merchants contends that the complexity of the case renders its request for hourly bench trial transcripts appropriate, as exemplified by the additional briefing required during trial and its reliance on those transcripts for its closing argument and motion for judgment as a matter of law.  (Def.'s Cost Resp. [Doc. No. 781] 2–3.)  It maintains that the hearing transcripts were necessary to track Presto's litigation positions and keep abreast of the Court's rulings.  (Def.'s Cost Resp. 3–4.)  As for the depositions, U.S. Merchants argues that the expedited costs were necessary due to the tight scheduling of the depositions and the vagaries of remote recording technology.  (Def.'s Cost Resp. 5–6.)  And it urges that Mr. Frederick's deposition need not be used at trial for its costs to be taxable.  (Def.'s Cost Resp. 6–7.)

Trial and hearing transcripts are taxable when they are "necessary for use in the case and the requesting party explains why the trial or hearing transcript was necessarily obtained."  D. Minn., *Bill of Costs Guide* at 5.  The explanation is all the more important when a party requests the costs of expedited transcripts, which are generally *not* taxable if "produced solely for the convenience of counsel."  *Id.* at 6; *McDowell v. Safeway Stores, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) (per curiam) ("Before awarding such costs, the court should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case.").  The Court agrees with U.S. Merchants that the complexity of the bench trial and the contemporaneous briefing required by the Court justify the taxation of costs for expedited trial transcripts.  *See Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 431 (8th Cir. 2017).

With respect to the hearing transcripts, the Court agrees that some of these costs were necessary.  For example, the Court ordered additional briefing from the parties at the September 21, 2022 status conference in response to Presto's shifting litigation position and request for interlocutory appeal.  (*See, e.g.*, Sept. 21, 2022 Status Conf. Tr. [Doc. No. 607] at 7:19–24, 8:14–22, 9:22–12:4 (attempting to clarify which claims National Presto intended to pursue at the jury trial and ordering briefing on multiple issues).)  In addition, U.S. Merchants has satisfactorily explained the continued relevance of the March 9, 2020 discovery hearing.  (*See* Def.'s Cost Resp. 4.)  As the December 21, 2021 hearing ultimately resulted in the delay of the bench trial, and the April 7, 2022 pretrial hearing confirmed important trial details, the Court will grant those costs as well.  (*See* Dec. 21, 2021 Hearing Tr. [Doc. No. 526]; Apr. 7, 2022 Pretrial Conf. Tr. [Doc. No. 537].)

However, the Court declines to tax costs for the transcripts from the December 14, 2019 discovery hearing and the September 21, 2020 expert exclusion hearing because their use appears to be solely for the convenience of counsel.

Lastly, as explained above, the Court will reduce U.S. Merchants' deposition costs request by half for Ms. Trejo, Mr. Calder, Mr. Green, Ms. Tanner, Mr. Cox, Mr. Khemlani, and Mr. Ojendyk.  The Court agrees with Presto that U.S. Merchants has not shown its expedited "Rough Transcript" costs were necessary—with the exception of Mr. Ross, who was deposed during trial.  But the complex nature of the suit and the close scheduling of the depositions merit the award of Realtime transcription costs.  *See Abt Sys., LLC v. Emerson Elec. Co.*, No. 4:18-cv-0024 (SRC), 2020 WL 1675709, at *1 (E.D. Mo. Apr. 6, 2020) (awarding Realtime transcription costs but declining to award costs for expedited transcripts).  As for Mr. Frederick, witnesses do not need to testify at trial for deposition costs to be taxable.  *Zotos*, 121 F.3d at 363.  After the discussed deductions, the Court awards U.S. Merchants $30,653.59 in taxable deposition costs.[9]

---

[9] Michael Berge/Randy Lieble ($3,918 – $348.25 = $3,569.75) + Alfredo Bustamante (($1,033.00 – ($382.50 / 2)) / 2 = $841.75) + Robert Calder (($2,089.20 - $392.70) / 2 = $848.25) + Michael Chase ($1,857.75 - $173.25 = $1,684.50) + Maryjo Cohen ($4,761.85 - $658.00 = $4,103.85) + Lester Cox (($1,231.45 + ($103.95 - $21.70)) / 2 = $1,149.20) + Carl Degen ($908.50 - $189.75 = $718.75) + Elizabeth Demaree/Colin Severson ($2,843.80 - $273.00 = $2,570) + Doug Frederick/Colleen Hawkins ($2,463.75 - $200.20 = $2,263.55) + Jeff Green (($1,570.20 - $334.95) / 2 = $617.63) + Michael Jobin ($1,396.50 - $272.25 = $1,124.25) + Larry Khemlani (($835.50 - $132.00) / 2 = $351.75) + Thomas Maronick ($2,733.15) + Jeff Morgan ($3,060.35 - $288.75 = $2,771.60) + Gary Ojendyk (($1,758.05 - $316.80) / 2 = $720.63) + David Ross ($1,713.15) + Jan Tanner ($961.65 / 2 = $480.83) + Lawrence Tienor ($2,372.85 - $227.85 = $2,145) + Barbara Trejo (($774.50 – $282.50) / 2) = $246) = $30,653.59 Total Deposition Costs

Therefore, in total, the Court awards U.S. Merchants $44,463.63 in taxable costs.[10]

## IV.   CONCLUSION

Accordingly, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion for a Permanent Injunction and for Attorney Fees [Doc. No. 753] is **DENIED**;

2.   Defendant's Motion for Judgment as a Matter of Law, or in the Alternative for a New Trial or Remittitur [Doc. No. 758] is **DENIED**;

3.   Defendant's Motion for Attorney Fees [Doc. No. 762] is **DENIED**;

4.   Plaintiff is awarded $18,204.06 in costs; and

5.   Defendant is awarded $44,463.63 in costs.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: November 17, 2023                    s/ *Susan Richard Nelson*
                                            SUSAN RICHARD NELSON
                                            United States District Judge

---

[10] Total fees requested ($54,105.75) – Reduced Deposition Transcript Costs ($9,168.06) – Reduced Hearing Transcript Costs ($474.06) = $44,463.63